**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>Alexey Kondratiev, et al.,<br><br>   Defendants. | No. CV-23-01186-PHX-DLR<br><br>**ORDER** |

   Pending before the Court is Plaintiffs Oleg Boyko and Finstar-Holding LLC's motion for an ex parte temporary restraining order ("TRO") as to Defendant Alexey Kondratiev and non-party NameCheap, Inc. (Doc. 2.) The Court ordered Plaintiffs to provide a supplemental memorandum on its authority to grant an ex parte TRO against NameCheap. (Doc. 8.) The memorandum was filed, and the Court grants the TRO in part.

**I. Background**

   Boyko is an international investor and Chairman of Finstar Financial Group, which is an international private equity and investment advisory firm established in 1996. (Doc. 2-3 at 1-2.) Investors choose to trust their money with Finstar on the basis of Boyko's reputation as a successful investor and entrepreneur. Finstar owns the federally registered trademark consisting of the name "Oleg Boyko." (Doc. 2-4 at 2-3.) In 2015, Boyko directed the creation of the website https://oleg-boyko.com/, which provides reputational and biographical information to existing and potential customers of Finstar.

In separate litigation in Canada, Kondratiev cross-claimed against the plaintiff there and added Finstar and Boyko as cross-defendants. (*Id.* at 3.) Kondratiev attacked Boyko's reputation, and the court eventually dismissed the claims against Boyko and Finstar, entering a cost award against Kondratiev for vexatious litigation. (*Id.* at 4.)

Kondratiev thereafter registered the domain name <olegvboyko.website> (the "Domain") with domain registrar NameCheap. (*Id.*) The Domain's content includes disparaging information about Boyko, including the same false allegations that he made in the Canada lawsuit. (*Id.*) Moreover, some of these allegations were previously published on another website and were found to be false and defamatory by a Latvian court. (*Id.* at 5.)

Plaintiffs attempted to track down the individual behind the Domain using the WHOIS database, but Kondratiev had registered the Domain under a different name and address. (*Id.*) Thereafter, all contact information for the Domain disappeared from the WHOIS database. (*Id.*)

At this, Plaintiffs filed a motion for TRO, seeking to enjoin Kodratiev and NameCheap, requiring that they freeze the Domain and prevent its transfer. (Doc. 2.)

**II. The Temporary Restraining Order**

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in its favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another, although all

elements still must be met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

First, success on the merits. Plaintiffs present three claims: cybersquatting and in rem cybersquatting under 15 U.S.C. § 1125 and cyberpiracy under 15 U.S.C. § 8131. The Court begins with the cybersquatting claim.

A defendant commits cybersquatting under § 1125 when "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010). Plaintiffs have shown that Kondratiev registered a domain name identical—save for the middle initial—to Boyko's legal name, which is a federally registered trademark owned by Finstar Holding. (Doc. 2-4 at 2, 4.) It is also reasonable to infer from the content of the Domain that Kondratiev intends "to tarnish or disparage" the Boyko mark (*id.* at 4), satisfying the third element. § 1125(d)(1)(B). Plaintiffs are likely to succeed on this claim.

Plaintiffs also raise a cyberpiracy claim under § 8131. Because the requested relief under the cybersquatting claim is the same as under the cyberpiracy claim, the Court declines to conduct a full likelihood-of-success analysis. *See also Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) ("[I]t is sufficient that the Court finds that Plaintiff is likely to succeed on [one of its] claims.").[1]

Second, the likelihood of irreparable harm. The Ninth Circuit requires an

---

[1] The Court notes, however, that cyberpiracy requires showing that the defendant had "the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party." 15 U.S.C. § 8131 (emphasis added); *see also Cazorla v. Hughes*, No. CV 14-02112 MMM (CWx), 2014 WL 12235425, at *14 (C.D. Cal. Apr. 7, 2014) (comparing the intent required for a violation of 15 U.S.C. § 1125 with the intent required for a violation of § 8131). Plaintiffs have not mentioned a sale or attempted sale or a chance of a sale. Besides, under the facts presented, it is not clear to the Court—despite Plaintiffs' use of the word "clearly"—whether Kondratiev is seeking to sell the Domain to Plaintiffs or a third party, or whether Kondratiev is merely acting with malice to harm Boyko and with no intent to sell the Domain.

evidentiary showing "sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Plaintiffs have presented evidence that the content of the website includes false statements tending to damage the reputation of Boyko. This satisfies the irreparable harm requirement. *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) ("'Evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm,' so long as there is concrete evidence in the record of those things." (citing *Herb Reed*, 736 F.3d at 1250) (alterations in original)).

Third, the balance of equities. Entering a TRO would protect Plaintiffs' intellectual property rights, and any hardship to Kondratiev would be limited to refraining from cybersquatting and cyberpirating. What's more, this hardship might be temporary if, in response to this TRO, Kondratiev appears and persuades the Court that this order should not later convert to a preliminary injunction. The balance of hardships weighs in favor of granting the TRO.

Lastly, the public interest in avoiding confusion between marks will be served by the entry of a TRO. *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1038 (C.D. Cal. 2010).

All factors favor entry of a TRO.

**III. Issuing a TRO *Ex Parte***

A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating its allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court may waive the bond "when it concludes there

- 4 -

is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

Plaintiffs substantiated their allegations of irreparable harm with an affidavit by Oleg Stolyar, counsel to both Plaintiffs. (Doc. 2-2.) Stolyar argues that if Kontratiev received notice, he would likely "cause the registration for the Defendant Domain Name to be transferred to another registrar located outside of the United States and this Court's jurisdiction." (Doc. 2-2 at 2.) The Court agrees that notice should not be required in this instance.

As for the bond, it does not appear that Kontratiev would lose revenue earned directly from the Domain, as it is not a commercial website. The Court determines that a minimal bond of $100 is appropriate.

**IV. The propriety of issuing a mandatory TRO as to a non-party**

In addition to Kontratiev, Plaintiffs ask the Court to require non-party NameCheap to "provisionally transfer ownership" of the Domain to Plaintiffs, "suspend public access to any and all websites at that domain, and disable anyone other than Plaintiffs from transferring or making any changes to that domain." (Doc. 2-1.) The motion for TRO did not address the Court's authority to issue a mandatory TRO as to a non-party, and so the Court ordered Plaintiffs to provide a supplemental memorandum explaining why the Court had authority to issue a TRO as against a non-party. (Doc. 8.)

The memorandum did not satisfy the Court that it has authority to issue a mandatory TRO as to NameCheap. For starters, the memorandum, attempting to ground the Court's authority under Federal Rule of Civil Procedure 65, offered a string cite of unpublished, mostly out-of-circuit cases for the proposition that a Court may issue a TRO as to a non-party domain registrar like NameCheap. (Doc. 12 at 2.) But these cases either granted the TRO without analyzing whether the court had authority to issue it against a non-party, or are otherwise distinguishable from this case. Plaintiffs' leading case, *Orchid Labs Inc. v. Anonymous Ultimate Licensee of Sale-Orchid.Com*, No. CV-18-00582-PHX-DJH, 2018 U.S. Dist. LEXIS 250142, at *1-2 (D. Ariz. May 4, 2018), granted a TRO against a non-

party without analysis of the court's authority to do so. The cases cited in footnote 1 of the memorandum suffer from the same absence of analysis regarding the propriety of entering an ex parte TRO against non-parties. The other case Plaintiffs cite above the line is *Dish Network, L.L.C. v. Dima Furniture, Inc.*, 2019 U.S. Dist. LEXIS 101098, *24-25 (D. Md. June 17, 2019), in which a magistrate judge recommended granting a TRO as to non-party domain registrars who were previously given notice of the request sought in the TRO and did not object to it. *Dish Network* is therefore distinguishable from the present case where Namecheap has received no notice as to the relief sought by Plaintiffs. The cases cited by Plaintiffs do not persuade the Court that it has the authority to enter an ex parte TRO against Namecheap in this instance.

The memorandum also explains that a TRO might bind a non-party if the non-party has notice of the TRO and yet acts in concert with a defendant violating the TRO. (Doc. 12 at 4.) But this explanation implicitly acknowledges that, at present, there is no reason to believe NameCheap is acting in concert or participation with Kondratiev in the commission of wrongdoing, and Plaintiffs do not explain why or how the Court has authority require NameCheap to affirmatively act now merely because it is possible NameCheap could in the future act in a way that facilitates a hypothetical violation of the TRO by Kondratiev.

This Court previously has rejected the argument that domain registrars necessarily act in concert or participation with a client who uses a domain to commit intellectual property violations. *See Fornix Holdings LLC v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2022 WL 992546, at *2 (D. Ariz. Apr. 1, 2022). This Court also issued TROs binding domain registrars in cases where those registrars were named as defendants for the purpose of obtaining injunctive relief. *See, e.g.*, *Avvo Inc. v. Chang Liang*, No. CV-16-00892-PHX-DLR, 2016 WL 8738247, at *2 (D. Ariz. Apr. 4, 2016). Plaintiffs' supplemental memorandum does not persuade the Court to chart a different course.

Second, the memorandum's suggestion that the All Writs Act might give the Court authority in this context is unpersuasive. Courts generally make use of the All Writs Act when federal law enforcement has sought the aid of private entities in the investigation of

criminal conduct. *E.g.*, *Forbes Media LLC v. United States*, 61 F.4th 1072, 1075 (9th Cir. 2023). Plaintiffs have given the Court no reason to expand this precedent, nor does the Court find cause to.

The Court therefore declines to issue an ex parte TRO as to non-party NameCheap.

**IT IS ORDERED** that Plaintiffs' motion for an ex parte TRO (Doc. 2) is granted in part. Defendant Alexey Kondratiev, his agents, servants, employees, and attorneys, and any other person or entity, acting in active concert with him or under his direction, with notice of this Order shall be enjoined from taking any actions to transfer the <olegvboyko.website> domain name from its current registrar, NameCheap, Inc., to any other registrar.

**IT IS FURTHER ORDERED** that Plaintiffs shall deposit a $100.00 cash bond with the Clerk of the Court by **July 19, 2023**.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve a copy of this Order, the complaint, and all papers filed in support on Defendants by **July 19, 2023** and file proof thereof with the Court.

**IT IS FURTHER ORDERED** that the motion for temporary restraining order is converted to a motion for preliminary injunction. Defendants shall file a response by **August 2, 2023**, and Plaintiffs may file a reply by **August 9, 2023**. The parties shall appear for a preliminary injunction hearing at **9:30 AM on August 15, 2023** before Judge Douglas L. Rayes in Courtroom 606, 401 West Washington Street, Phoenix, AZ 85003. The parties shall jointly notify the Court by **August 9, 2023** whether the hearing will be oral argument or an evidentiary hearing.

//
//
//
//
//
//

      **IT IS FURTHER ORDERED** that, for good cause, the Court extends the duration of the TRO through **August 16, 2023** to accommodate the briefing and hearing schedule. This TRO dissolves on **August 17, 2023** unless ordered otherwise.

      Dated this 14th day of July, 2023.

                                                        Douglas L. Rayes
                                                        United States District Judge