ALEXEY KONDRATIEV
3045 16th Sideroad,
King City, Ontario L7B1A3
Canada

*Pro Se Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, et al.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Alexey Kondratiev, et al.<br><br>　　　　Defendants. | No. CV-23-01186-PHX-DLR<br><br>**DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

　　　　Defendant Alexey Kondratiev ("Kondratiev"), while acting on behalf of himself only, requests this court to adjourn the motion in order to cross-examine the witnesses Mr. Stolyar, Mr. Boyko, and Mr. Tyndik. Kondratiev asserts that the witnesses misrepresented facts and one of them, Mr. Tyndik, committed perjury. Kondratiev believes that it is impossible to prepare to respond to such voluminous motion on such a short notice.

　　　　Alternatively, Kondratiev requests that the court deny the motion based on the submitted evidence and arguments.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Plaintiffs claim that Kondratiev registered domain <olegvboyko.website> in order to extort the Plaintiffs. The Plaintiffs request a Preliminary Injunction Order requiring NameCheap, Inc. to transfer the ownership of the domain to themselves.

Kondratiev asserts that the Plaintiff obtained a Temporary Restraining Order though fraudulent misrepresentation and perjury, and is now trying to obtain a Preliminary Restraining Order whilst relying on the same fraudulent evidence.

Kondratiev denies that he registered domain <olegvboyko.website> with NameCheap, Inc., having ownership of such domain, or being a creator of content contained therein. In accordance, Kondratiev also denies that he somehow profited from such web site, possessed intentions to sell it, or carried the intent to utilize it for malicious means.

Kondratiev denies all allegations contained in the Complaint and puts the Plaintiffs to strict proof thereof.

Kondratiev asserts that this Honorable Court does not have jurisdiction over this matter as neither himself nor the Plaintiffs reside or have any business interests in the Court's jurisdiction.

### II. STATEMENT OF FACTS

The Declarations of Mr. Stolyar, Mr. Boyko, and Mr. Tyndik contain false facts

that cannot be proven, facts that are based on conjecture, and facts that are deliberately misinterpreted.

On July 20, 2023, Kondratiev contacted the counsel for the Plaintiffs via letter in which he requested cross-examinations of the witnesses whose declarations were included with the motion.

In order to expedite the matter, Kondratiev requested the availabilities of these witnesses for the week of Monday, July 24, 2023. Alternatively, Kondratiev requested the Plaintiffs' consent to adjourn the motion in order to conduct examinations. Plaintiffs' counsel replied on July 26, 2023, writing:

> We're in receipt of your July 20, 2023 Letter. However, we disagree with the contents of your letter, and do not believe you have any legal authority to demand depositions of witnesses at this stage of the case. We also cannot communicate with the Court, or set forth legal positions, on your behalf.

On July 27, 2023, the counsel for Plaintiffs brought a motion re-set the hearing without notifying Kondratiev and without notifying the court that Kondratiev had requested an adjournment in order to cross-examine the witnesses.

### A. Boyko and Finstar

Plaintiffs state in their motion record:

> "Boyko is a well-known international investor, philanthropist, and Chairman of Finstar Financial Group ("Finstar Financial"), an international private equity firm that was established in 1996. See concurrently filed Declaration of Oleg Boyko ("Boyko Decl")pp. 2-3.
> Finstar Financial manages more that $2 billion of assets and has a diversified investment footprint in more than 30 countries, including United States. Investors who choose to invest their money with Finstar Financial do so primarily based on Boyko's reputation as a successful investor and entrepreneur. See concurrently filed Declaration of Alexey Tyndik ("Tyndik Decl.") p. 5. Thus, Boyko's name is inherently and inextricably associated with and linked to Finstar

3

*Financial. Id."*

Contrary to the above statement, the web site in question, <olegvboyko.website>, contains links to the official web sites of the governments of Canada and Australia which list Mr. Boyko as a sanctioned individual.

In Canada, Mr. Boyko is listed as a sanctioned person under the *Special Economic Measures (Russia) Regulations* which prohibit persons in Canada and Canadians outside Canada from engaging in any activity related to any property of these listed persons or providing financial or related services to them. The Regulation states, in part:

> Sanctions related to Russia were imposed under the *Special Economic Measures Act* in order to respond to the gravity of Russia's violation of the sovereignty and territorial integrity of Ukraine, and grave human rights violations that have been committed in Russia. On March 17, 2014, the *Special Economic Measures (Russia) Regulations* ("the Regulations") came into force.[1]

In Australia, Mr. Boyko is sanctioned under their *Russia sanctions regime*, which applies similar restrictions.

Please see further below more information about Mr. Boyko's connections to organized crime, corrupt Russian government officials and state security services.

**B.      Kondratiev litigation in Canada**

Mr. Tyndik states in his Declaration, in paragraph 11, that:

> "During the Canada Lawsuit, Kondratiev repeatedly accused Mr. Boyko of alleged criminal conduct and engaged in efforts to injure Mr. Boyko's business reputation, in order to extort a monetary payment from Boyko. Kondratiev's meritless claims against Mr. Boyko, as well as the other cross-defendants in the Canada Lawsuit, were ultimately dismissed."

---

[1] https://laws-lois.justice.gc.ca/eng/regulations/SOR-2014-58/index.html

While Kondratiev repeatedly stated under the oath that he witnessed Mr. Boyko to commit criminal acts and sometimes was his accomplice, the accusations of extortions from Mr. Boyko made by the witness are false and amounts to perjury. Kondratiev denies such accusations intends to impeach Mr. Tyndik as a witness. *See* concurrently filed Declaration of Alexey Kondratiev("Kondratiev Decl.") ¶ 35.

Mr. Tyndik falsely states that Kondratiev's claims were "meritless," but no Canadian Court, or any other court, has ruled that Kondratiev's claims against Mr. Boyko or other "cross-defendants" were meritless.

In paragraph 10 of his declaration, Mr. Tyndik states that:

> *In 2015, Kondratiev also added Mr. Boyko as a cross-defendant to that litigation, claiming $10 million in damages against Mr. Boyko (the "Canada Lawsuit")*

This statement is false, Mr. Boyko was never added as co-defendant to "Canada Lawsuit" and such is evident through public records of the action.

Kondratiev asserts that this so-called "Canada Lawsuit" was brought against him in 2008 by the Brazilian corporation Arcadia Participacoes Ltda which was jointly owned by Finstar and Mr. Boyko. Arcadia Participacoes Ltda was dissolved immediately after the commencement of the legal action, resulting in Kondratiev counterclaiming against various corporations and individuals who worked for Mr. Boyko and had directed Arcadia Participacoes Ltda in initiating the legal action. The fact that Arcadia Participacoes dissolved sometime in late 2008 didn't prevent the lawyers for the corporation to pursue this action until 2021 when the action was finally dismissed for

delay. *Id.* ¶¶ 18-28.

While there were significant costs awarded against Kondratiev, he is currently suing his former counsel Michael Wright whose alleged negligence resulted in the counterclaim against Boyko's corporations and associates being dismissed altogether with Arcadia Participacoes Ltda's action. The legal action against the former counsel bears Superior Court of Ontario file number CV-19-620388 and it is currently in the pleadings stage.

On February 20, 2021, Kondratiev obtained sworn testimony from Boyko's former associate, Ilya Surkov. Mr. Surkov was told by Mr. Boyko that the Arcadia Participacoes Ltda legal action was in retaliation against Kondratiev for starting his own business. Here is an excerpt from his Affidavit, *Id.* ¶ 36 and Ex. G ¶ 6:

> *6. When I asked Mr. Boyko about the situation with Mr. Kondratiev, his response was that Mr. Kondratiev had "disrespected him by starting his own business" and that he "will not tolerate such behaviour". He went on to say that he "will ruin Mr. Kondratiev's life at whatever cost it might require".*

Mr. Surkov also corroborated the fact that Mr. Boyko is well-connected with Russian organized crime and state security services, *Id.* ¶ 36 and Ex. G ¶ 8:

> *8. During my business interactions with Mr. Boyko, I learned that he is well connected with Russian organized crime groups that extend into Russian government and state security services. I further learned of Mr. Boyko's money laundering activities for Russian government officials.*

On December 4, 2020, Kondratiev obtained a written statement from his former employee and a witness in the so-called Canada Lawsuit, Russel Jurney. Mr. Jurney lives in the United States and stated that around December 2010 to January 2011 he received a

threatening phone call from Mr. Boyko regarding Mr. Jurney being a witness in this legal action. Mr. Jurney stated that he contacted FBI and provided a formal statement about this event to an agent. His full statement is available as Exhibit H in Kondratiev Decl. *Id.* ¶ 36 and Ex. H.

### C.     Alleged domain registration

In paragraph 13, Mr. Tyndik states:

> *On or about August 23, 2017, after his Canada Lawsuit against Mr. Boyko was dismissed, Kondratiev registered the domain name <olegvboyko.website> (the "Defendant Domain Name") with registrar NameCheap, Inc. ("NameCheap").*

This statement is false on two issues. First, neither any of Kondratiev litigations were dismissed before August 23, 2017, nor they were dismissed shortly after. Second, Mr. Tyndik states that Mr. Kondratiev personally registered the domain although he could not have been a direct witness of such act had it occurred, therefore his theory that it involved Mr. Kondratiev must be false and based on conjecture. Kondratiev vigorously denies such fact, especially on the account that he has never met Mr. Tyndik.

In paragraphs 14 -15, Mr. Tyndik states under the oath that Kondratiev committed certain acts but provides absolutely no corroborating evidence or the source of such information. This information must be based on conjecture on the account that Mr. Tyndik and Kondratiev have never met.

Further statements by Mr. Tyndik in his declarations are false, misleading, are based on conjecture, or are contradicted by the public records.

7

Kondratiev asserts that the dispute regarding the contents of <olegvboyko.website> is irrelevant since this legal action is for cybersquatting and not for defamation, but the Court should be aware of such content because it provides a clear background of the Plaintiffs' intentions.

**D.     Content of the alleged website**

Kondratiev has examined <olegvboyko.website> and provided its contents in his Declaration. *Id.* ¶ 36 and Ex. A, B, C, D.

Any reference to a Court decision in Latvia regarding a separate web site not identical to <olegvboyko.website> is irrelevant. The following information discussed in this section is not subject to the ruling by the Latvian Court.

The Plaintiffs' intent appears to be to suppress public access to the information that is cross-linked at the web site in question. The web site links to public resources containing unfavourable information about Mr. Boyko, knowledge of which, would presumably impact his business dealings.

The web site contains the links to public resources which outline Mr. Boyko's connections to Russian organized crime and corrupt government officials. The veracity of such content is corroborated by Kondratiev's Declaration, witnesses, and further evidentiary material. *Id.* ¶ 36 and Ex. G

Particularly, the web site begins with a link to partially declassified *"Report of the Select Committee on Intelligence United States Senate on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election",* which, in Volume V, page 645, contains the following paragraph:

> "[Redacted] Additionally, as of 2017, Geovanis served on the Supervisory Board of 4Finance, a company based in Latvia that is controlled by Russian oligarch Oleg Boyko (citation 4201). Boyko has concerning ties to the Russian government, to Russian intelligence and security services, and to organised crime. [Redacted] (citation [Redacted]). Moldovan press has reported that Boyko was involved in a Kremlin-backed foreign election influence operation there. (citation 4203)"[2]

Then, the website provides a link to full text and an excerpt from the email of the U.S. Associate Deputy Attorney General Bruce Ohr dated December 05, 2016, which links Mr. Boyko to the following entities and individuals:

> "Linked with: Trump Tower, Agalarov
> Who/what: Finstar, Finstroy, Olbi Concern, Ritzio Entertainment, National Credit Bank, Polnamon, Omteks. EvrazHolding until 2004. Alleged links with Orekhovo and Solntsevo crime groups; Fashion TV stockholder; mystery US partner; prostitute honey-traps; partner Belotserkovskiy and Miss Universe; Hollywood film producer (money laundering?). Friends in Russian government and special services. Finstar sold Trump Tower apt 63AB, used in Nahman-Trincher gambling ring, to Elena Trincher.
> Source/cites/notes: 10Jun16Report"

Then, the website has several links to news articles that provide more information about Trump Tower apartment 63AB that Mr. Boyko owned and its connection to Nahman-Trincher gambling ring. Here are the names of the articles:

> *Russian Tycoon Finds Politics Good Business* - The New York Times
> *Venture Capital on Twitter: Trump personally sold 63A-B to Oleg Boiko*
> *Trump Tower House Arrest For Racketeer*
> *Tall tales from Trump Tower: Gangsters, poker, spying, the Russians are coming*
> *Under Trump, Witness Protection has been infiltrated by the Russian Mafia*
> *House of Trump, House of Putin*
> *Racketeering Trump Tower Resident Moves Back in under House Arrest*
> *Robert C. Williams "Useful Assets" - Page 21*
> *Seth Hettena "Trump / Russia: A Definitive History" - Page 114*

---

[2] Page 645
https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf

*Luke Harding "Collusion: Secret Meetings, Dirty Money, and How Russia Helped Donald Trump Win"*

Further down, the website has a link to unclassified "*Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities*"[3] where, in "*Appendix B: List of Oligarchs*", Mr. Boyko is listed under number 17 as a potential target for the US sanctions. *Id.* ¶ 4 and Ex. E

Mr. Boyko registered his trademark "Oleg Boyko" three years after discovering the web site <olegvboyko.website>, apparently to claim this web site's name because of its high rank in Google searches. Mr. Boyko states that he discovered the allegedly infringing web site in 2017. (Boyko Decl. ¶ 6). He then registered his trademark in 2020 seemingly for the sole purpose of claiming this web site's domain name to instead populate it with favourable information about himself. Tyndik Decl. ¶ 7.

### III.   ARGUMENT

The Plaintiffs have not produced any evidence that Kondratiev was somehow involved in the alleged cybersquatting and they provided no evidence that Kondratiev has done anything that falls into jurisdiction of this Court.

Kondratiev believes that this motion and the legal action against him is brought by Mr. Boyko in bad faith, has no merit, and is intended to harass the Defendant and to

---

[3] https://www.clearytradewatch.com/wp-content/uploads/sites/410/2018/01/US-Treasury-CAATSA-241-Report-Unclassified-January-29-2018.pdf

deplete his financial resources.

The key witness in this motion is unreliable and should be impeached.

**IV.    CONCLUSION**

The Defendant Alexey Kondratiev requests that this motion be adjourned in order to allow Kondratiev to cross-examine the witnesses on their Declarations. Or, in alternative, to dismiss the motion altogether based on provided evidence.

DATED this 31st day of July 2023

By: s/ Alexey Kondratiev

Pro Se *Defendant*