ALEXEY KONDRATIEV
3045 16th Sideroad,
King City, Ontario L7B1A3
Canada

*Pro Se Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Oleg Boyko, et al. | No. CV-23-01186-PHX-DLR |
|---|---|
| Plaintiffs, | |
| v. | **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDJEMENT** |
| Alexey Kondratiev, et al. | |
| Defendants. | |

**TABLE OF CONTENTS**

|   | Description | Page |
|---|---|---|
| I | Introduction | 1 |
| II | Defendants Statement of Undisputed facts and the Argument | 1 |
|   | A. The Plaintiffs' claim for relief is barred by the doctrine of laches | 1 |
|   | B. Declaration of Mr. Tyndik is replete with false statements and misrepresentation | 4 |
|   | C. Mr. Kondratiev did not register and never owned the domain olegvboyko.website | 8 |
|   | D. Plaintiffs deliberately misrepresent the facts and evidence in order to confuse the court. | 12 |
| III | Conclusion | 16 |

**LIST OF AUTHORITIES**

- American Diabetes Ass'n v. Friskney Family Trust, LLC, 177 F. Supp. 3d 855, 878 (E.D. Pa. 2016)

- In re Mushroom Transp. Co., Inc., 382 F.3d 325, 337 (3d Cir.2004)

- Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 206 (3d Cir.2002)

- Santana Products, Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 135

- Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assur. Co., 943 F.Supp. 509 (E.D.Pa.1996)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Defendant Alexey Kondratiev denies all allegations related to his registration and ownership of the domain olegvboyko.website as well as all allegations of committing perjury and violating Court order. Mr. Kondratiev further denies that he acted in bad faith with an intent to profit from the Boyko Mark.

As set forth below, the evidence indisputably shows that: (i) the claim for relief is barred by the doctrine of laches; (ii) the Plaintiffs' witness has misrepresented facts and committed perjury; (iii) the domain olegvboyko.website belongs to a person who is not a party to this litigation.

**A. The Plaintiffs' claim for relief is barred by the doctrine of laches**

Contrary to the Plaintiffs' statement that the existence of the allegedly infringing domain, olegvboyko.website, was discovered by Mr. Boyko "on or about July 14, 2020" as per paragraph 21 of the Complaint (EFS Doc. 1 at page 5), evidence shows that Mr. Boyko was aware of the domain as early as October 2, 2019, a date on which he commenced legal action regarding the same domain in the Gagarin Court of Moscow, Russia. Ex. A, DE2. These Court documents further indicate that Mr. Boyko requested a Notary Public to certify the contents of the olegvboyko.website as evidence on August 21, 2019, well before October 2, 2019. Ex. A at page 6, DE7.

Mr. Kondratiev's phone number was readily available on public record around the time Mr. Boyko would have learned about the existence of the allegedly infringing domain. One of the documents on the olegvboyko.website, titled "Affidavit of Alexey Kondratiev,"

contained Mr. Kondratiev's number. This document has been indexed by Google search engine on May 8, 2019, with a copy stored on through the Internet Archive website (www.archive.org). The document showing the search results for "(416)456-9875" is attached as Ex. B, DE10.

Although the Plaintiffs refused to produce the Moscow court records on account of the request being as a perceived "fishing expedition," it is important to note that Mr. Boyko brought forward no less than seven legal actions or appeals in Moscow Courts regarding the olegvboyko.website. Request #3 in the Defendant's Second Set of Requests for Production sought to obtain these records. Ex. C at page 7, DE19. As a result, Mr. Kondratiev had to instead rely on publicly available information about these actions, from which it appears that Mr. Boyko has never claimed the rights to the domain name in Russian courts.

Separately in 2019, Mr. Boyko launched a legal action in Riga, Latvia against the website www.kompromat.lv for its reposting of information from olegvboyko.website. The Plaintiffs refused to produce the originating court documents in this legal action in response to Requests #1 and #2 in the Defendant's Second Set of Requests for Production. Ex. C at page 7, DE19.

Evidence presented by the Plaintiffs shows an application for a United Service mark comprised of the name "Oleg Boyko" on February 28, 2020. Ex. 10 at page 2, COE202. This application only occurred many months after which Mr. Boyko would have first been made aware of the olegvboyko.website based on his previous litigations in Russia and Latvia. As a result, Mr. Kondratiev believes that Mr. Boyko had only made such an

application to extend his statute of limitations and to obtain the allegedly infringing domain through a 15 U.S.C. § 1125 complaint. Further review of relevant case law suggests that the burden of proof currently rests with the Plaintiffs to demonstrate that a delay in commencing litigation related to the alleged unauthorized use of the "Oleg Boyko" mark was excusable and did not prejudice the plaintiff:

*American Diabetes Ass'n v. Friskney Family Trust, LLC, 177 F. Supp. 3d 855, 878 (E.D. Pa. 2016) ("Laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2) prejudice to the defendant. In re Mushroom Transp. Co., Inc., 382 F.3d 325, 337 (3d Cir.2004). The Third Circuit has generally followed the traditional practice of "borrowing the most analogous statute of limitations from state law" to determine whether the defense of laches may be properly invoked (i.e., whether a plaintiff has exhibited inexcusable delay). Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 206 (3d Cir.2002). Once the analogous state statute of limitations expires for a Lanham Act cause of action, the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice." Santana, 401 F.3d at 138. In order to rebut this presumption, the plaintiff has the burden of proving both that the delay was excusable and that it did not prejudice the defendant. Id. at 139.")*

In other words, the Plaintiffs have been aware of the existence of olegvboyko.website since at least August 21, 2019, yet waited for almost four years to file their Complaint against the Defendants on June 27, 2023. When pressed on this discrepancy by Mr. Kondratiev, the Plaintiffs acted in ways to mislead the Court about the discoverability of underlying cause of action.

3

Based on the foregoing, Defendants requests this Court to apply a three year statutory limitation and deny this motion for laches.

**B. The Declaration of Mr. Tyndik is replete with false statements and misrepresentation**

The Plaintiffs continue to rely on the Declaration of Mr. Tyndik dated May 14, 2024, which is replete with false statements and misinterpretations. These claims will be examined in detail in this section.

With respect to Mr. Kondratiev's litigation history in Canada, Mr. Tyndik claims:

> a. *On December 21, 2016, Justice E. Stewart of the Ontario Superior Court of Justice issued an order dismissing Kondratiev's claims against Mr. Boyko in the Kondratiev-Boyko Canada Lawsuit as "doomed to fail" and "an abuse of process." A true and correct copy of the above-referenced order is attached hereto as Exhibit 16. On June 1, 2017, the Court of Appeal on Ontario* ***affirmed the Ontario Superior Court of Justice's dismissal and the finding of abuse of process***[1]. *A true and correct copy of the above-referenced order is attached hereto as Exhibit 17. Ex.8 p17*. Ex. 8 at page 5, ¶ 17a, COE184.

While Mr. Tyndik's references to Justice E. Stewart' order are correct, the statement about the Court of Appeal's decision has been described opposite to what it truly was. The Court of Appeal did not affirm the decision of Justice E. Stewart to dismiss the claim, but, in fact, reversed her decision. The appeal of Justice E. Stewart's order was thus allowed,

---

[1] All emphasis herein is added, unless otherwise indicated.

as clearly written in paragraph 7 of Reasons for Decision. Ex 17 at page 7, COE 289: "*Accordingly, we allow the appeal to the extent that we set aside the motion judge's order with respect to para. 39 of the statement of claim.*"

The fact that the legal action against Boyko was not dismissed by the Court of Appeal on June 1, 2017 is further corroborated by the Order of Master Josefo dated January 24, 2019 that sets the timetable for consolidation of the "Arcadia-Kondratiev Canada Lawsuit" with the "Kondratiev-Boyko Canada Lawsuit." Particularly, it set the deadline for "*Service of motion record in respect of paragraph 39 of the statement of claim and consolidation of Toronto SCJ action no. CV-15-537434 commenced by the defendants/plaintiffs by counterclaim against Oleg Boyko*" as May 31, 2019. Ex. D at page 3, DE24.

The Plaintiffs list five attorneys in this case, however, it appears that none of them investigated Mr. Tyndik's claim that the "Kondratiev-Boyko Canada Lawsuit" was dismissed by the Ontario Court of Appeal.

Mr. Tyndik further misrepresented the decision of Associate Justice Josefo dated August 31, 2021, by stating:

> *b. On September 23, 2021, Associate Justice J. Josefo of the Ontario Superior Court of Justice issued an order dismissing Kondratiev's **cross-claims** against, among other defendants, Finstar LLC, in the Arcadia-Kondratiev Canada Lawsuit.* Ex. 8 at page 5, ¶ 17b, COE184.

Quite to the contrary, Associate Justice Josefo dismissed the whole action including Arcadia's claims against Mr. Kondratiev. Specifically, Justice Josefo wrote in paragraph

5

42, inter alia: *"The Registrar accordingly shall dismiss this action for delay."* Ex. 18 at page 13, ¶ 42, COE303. In accordance with Ontario's procedural requirements, the party that initiated the legal action (Arcadia) was responsible for setting the action down for trial. However, Arcadia, a Brazilian corporation, was administratively dissolved in 2015 for its failure to file Brazilian taxes in the preceding five years. This dissolution failed to prevent the Arcadia's lawyers from dragging along that action against Mr. Kondratiev through to 2021.

Without providing any evidence or being a direct witness to the alleged acts, Mr. Tyndik stated under the oath that is was Mr. Kondratiev who "*subsequently populated the website linked to the Domain - https://olegvboyko.website - (the "Infringing Website") with false and disparaging information concerning Mr. Boyko, including the same types of false allegations of "criminality" that Kondratiev unsuccessfully alleged in the Canada lawsuits in order to maliciously injure Mr. Boyko's business reputation*." Ex. 8 at page 6, ¶ 20, COE185.

Mr. Kondratiev denies his responsibility for the content of the website and notes that the website's information about Mr. Boyko's "criminality" comes from the US government and congress sources, particularly:

- an email from Associate Deputy Attorney General Bruce Ohr dated December 5, 2016[2] which ties Mr. Boyko to "*Orekhovo and Solntsevo crime groups*,"

---

[2] https://www.judicialwatch.org/wp-content/uploads/2019/08/JW-v-DOJ-Ohr-comms-production-6-01854-pgs-300-312.pdf

6

"*prostitute honey traps,*" a "*Hollywood film producer (money laundering?),*" "*Friends in Russian government and special services,*" and to the "*Nahman-Trincher gambling ring.*" Ex. E at page 3, DE30.

- a "Report of the Select Committee on Intelligence United States Senate on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election[3]," Volume 5, Page 645, states that "*Boyko has concerning ties to the Russian government, to Russian intelligence and security services, and to organized crime.*" Ex. F, DE32.

- a "Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities[4]" which lists Mr. Boyko as a potential target of the US sanctions under number 17. Ex. G, Appendix B, DE40.

- two countries, Australia[5] and Ukraine[6], that sanctioned Mr. Boyko for his involvement in the war in Ukraine.

In addition to the overwhelming evidence of Mr. Boyko's connections to organized criminal groups, the Mr. Kondratiev obtained a copy of an Interpol Red Notice application based on a Cyprus arrest warrant. Ex. H, DE44. The charges on it assume a maximum

---

[3] https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf
[4] https://www.clearytradewatch.com/wp-content/uploads/sites/410/2018/01/US-Treasury-CAATSA-241-Report-Unclassified-January-29-2018.pdf
[5] https://www.legislation.gov.au/Details/F2022L00568
[6] https://sanctions.nazk.gov.ua/sanction-person/1974/

7

penalty of ten years imprisonment. According to a January 30, 2024 article in the Cyprus Times, Mr. Boyko has been avoiding arrest for over four years with the Attorney General of Cyprus having been accused of corruption and collaboration with Mr. Boyko. EX. I at page 3, DE49.

Mr. Tyndik's decision to misrepresent the fact that Mr. Kondratiev's lawsuit against Mr. Boyko was not dismissed appears to have been done so to support his false theory in Ex. 8 at page 6, ¶ 19, COE185: "*On or about August 23, 2017 - shortly after the dismissal of the Kondratiev-Boyko Canada Lawsuit was affirmed - Kondratiev registered the domain name <olegboyko.website> (the "Domain" or "Infringing Domain) with the registrar NameCheap, Inc. ("NameCheap").*" Mr. Tyndik presents this allegation as a fact despite having no direct knowledge nor witnessing that which he describes, all while failing to make avail any corroborating evidence.

With respect to this evidence of Mr. Tyndik's perjury and willful misrepresentation of his manager, Mr. Boyko, the Defendant requests that Mr. Tyndik be impeached as an unreliable witness and his testimony dismissed from further consideration by the Court.

**C. Mr. Kondratiev did not register and never owned the domain olegvboyko.website**

According to evidence presented by the Plaintiffs, as obtained from NameCheap, Inc. in the response to Plaintiffs' subpoena, the owner of the domain olegvboyko.website, as known to the registrar NameCheap, Inc., is Bei Wang, 123 Shanxi lu, Shanghai, Shanghai, email: billyzodiac100@gmail.com, account number 1333064. Ex. 4, COE122. According to the same documents produced by Name Cheap, Inc., Bei Wang registered the

domain name olegvboyko.website on August 23, 2017 using the email billyzodiac100@gmail.com. Ex. 4, COE100-101. While registering the domain name, Mr. Wang put contact the email as annaleerapu@gmx.com and phone number as +1 4164569875. Ex. 4, COE99.

Defendant Mr. Kondratiev asserts that the listing of public record contact information, such as the email account of annaleerapu@gmx.com and phone number of +1 4164569875, does not make the owner of the email account an owner of the domain nor does it make the owner of the phone number an owner of the domain. Public contact information is optional during domain registrations with no verification necessary to authenticate the owners of either the email or phone number.

No evidence has been presented to show that the domain olegvboyko.website had been transferred from Mr. Wang to any other person and it reasonable to believe that he still owns it. The Plaintiffs further failed to provide evidence disproving Mr. Wang's existence and instead pre-emptively chose to assert it was an alias for Mr. Kondratiev. Plaintiffs also produced a file generated by Google in response to a subpoena regarding the Google account billyzodiac100@gmail.com. This file contains the meta data of an account that belongs to Mr. Wang showing around twenty thousand messages in his mailbox from approximately 2014 to 2023, including email addresses for his contacts. Ex. K at page 2, ¶ 10, DE66-67. Out of those twenty thousand emails, the Plaintiffs could not find any connection to Mr. Kondratiev. Based on the evidence, it appears that Mr. Wang is a real person and therefore not an alias for Mr. Kondratiev.

The Plaintiffs failed to demonstrate any of their attempts to contact or otherwise

9

locate Mr. Wang. Plaintiffs instead jumped to the conclusion that since the contact phone number in the public registry belongs to Mr. Kondratiev, it must have been Mr. Kondratiev himself who registered the domain using the email address billyzodiac100@gmail.com. This supports Mr. Kondratiev's repeated denials under oath with respect to his alleged ownership of this account and the domain. Ex. K at page 2, ¶ 12, DE67.

The Plaintiffs further allege that various accounts that contained the name Anna Lee belong to Mr. Kondratiev because his credit card and PayPal accounts were used for payment to various internet services not related to the domain itself. Mr. Kondratiev denied under oath that those accounts belong to him and also denied that he made those payments himself.

While there is an explanation as to why Mr. Kondratiev had no knowledge that his credit card was used without his knowledge, the Defendant finds it irrelevant to this matter. There is absolutely no evidence that any of the people behind the email addresses that reference the Anna Lee name were ever the owners of the domain olegvboyko.website.

The Plaintiffs allege that Bei Wang and Anna Lee are the aliases for Mr. Kondratiev based on the circumstantial evidence that annaleerapu@gmx.com might have been used by Mr. Kondratiev, which is denied by Mr. Kondratiev himself. Such allegations are contravened by the same evidence presented by the Plaintiffs. The evidence shows that on or about August 23, 2018, NameCheap received a request to renew the domain from a third party, requiring NameCheap to confirm this renewal with domain owner, Bei Wang. The following email was sent by the NameCheap representative to Bei Wang (Ex. 4, COE102):

*Hello,*

*We are contacting you since we have received a request to renew the domain olegboyko.website from Anna.*

*Please get back to us if you have any objections against renewal of this domain. If we do not hear from you within 24 hours, we will proceed with the renewal.*

*If renewal is processed,* **the domain will remain in your account and Anna will not be able to manage it**. *Also, you will not be charged for the renewal.*

*Thank you.*

Bei Wang did not respond to the NameCheap's email and so the domain was renewed. The evidence shows that such correspondence and renewals also occurred in 2019, 2020 and 2023 with no objections by Mr. Wang.

The evidence also shows, that on August 30, 2023, Anna Lee contacted NameCheap via web messaging and stated, inter alia (Ex. 4, COE118):

- at 5:00:03 GMT "**I don't own this domain**, but want to pay for it, can you generate the invoice for 3 years?".
- at 5:05:41 GMT "**but I don't own it**, I just want to pay"
- at 5:11:25 GMT "I want to pay for the **domain that doesn't belong to me**"

It is also worthy to note that the email address from which renewals were made is different from the email listed in the public record. The domain records show the contact email as annaleerapu@gmx.com, but the account which requested the renewal was annalee_rapu@gmx.com. It is nonsensical that Mr. Kondratiev, allegedly acting as Anna Lee, would then contact NameCheap from an email account that differs from the one

11

publicly listed for the website.

It also becomes evident from the 2023 renewal messages that Anna is not the owner of the domain nor will become an owner of the domain by paying for renewal. The Plaintiff's argument that Mr. Kondratiev is both Anna Lee and the owner of the domain, which Mr. Kondratiev repeatedly denies, falls apart when considering why he would then contact NameCheap from a separate email account under an alleged alias for renewal. From the evidence presented by the Plaintiffs, it also becomes clear that Bei Wang and Anna Lee are different people.

On August 28, 2023, Anna Lee wrote the following to NameCheap about Mr. Wang: "*The domain belongs to a person who is deceased, so I don't have his credentials, but it is important that the domain stays up.*" Ex. 4, COE108.  The Defendant already stated under oath that he had never met nor spoken to Mr. Wang, and is thus unable to confirm or deny that he is deceased.

**D. Plaintiffs deliberately misrepresent the facts and evidence in order to confuse the court.**

In section II.E, the Plaintiffs baselessly accuse Mr. Kondratiev of violating the Preliminary Injunction order by altering the website under the olegboyko.website domain name. Even if we assume that the changes to website were made by Mr. Kondratiev, which he continues to deny, it is important to note that the Court only banned Mr. Kondratiev from transferring the domain from its current registrar. As written in the order (Doc. 31 at page 5):

*IT IS ORDERED that Plaintiffs' motion for preliminary injunction (Doc. 2)*

12

> *is granted in part. Defendant Alexey Kondratiev, his agents, servants, employees, and attorneys, and any other person or entity, acting in active concert with him or under his direction, with notice of this Order shall be enjoined from taking any actions to transfer the <olegvboyko.website> domain name from its current registrar, NameCheap, Inc., to any other registrar during the pendency of this case, unless otherwise ordered by the Court.*

Based on all gathered evidence, it is not possible for the Defendant to have violated this order. The domain name was never transferred to any other registrant and the ownership of the domain was never changed because it is beyond Mr. Kondratiev control.

In section II.F, the Plaintiffs falsely claim that "*Non-Party Discovery Reveals That Kondratiev Is the Person Behind the "Anna Lee" Alias, and That Kondratiev Registered and Used the Domain.*" Contrary to this allegation, no evidence has been presented to link Mr. Kondratiev to registering the domain or using the name Bei Wang as alias. Even if we assume that Mr. Kondratiev is Anna Lee, which he has explicitly denied, the fact that the name Anna Lee appears in domain public records still does not make Anna Lee an owner of the domain, as further confirmed by NameCheap.

In section II.F.1, the Plaintiffs assert that, "*Cloudflare is the most recent web hosting provider for the Infringing Website.*" This is not true, Cloudflare does not host web sites and it was explained to the counsel for the Plaintiff by Mr. Kondratiev during deposition. This information can be obtained directly from the Cloudflare website.

In section II.F.3, the Plaintiffs falsely state that "*The Namecheap production shows that: the Domain is registered, owned, and controlled by "Anna Lee" (Ex. 4 at COE99).*"

13

This statement is false as Plaintiffs deliberately conflate the "Registrant contact" information with the Registrant. It is clear from the User Info on page of Ex. 4, COE122 that the registrant is known as Bei Wang of Shanghai, who put Anna Lee's name for the contact information alongside Mr. Kondratiev's phone number. The fact that such information appears on the public record does not make Anna Lee nor Mr. Kondratiev owners of the domain.

In section II.F.4 the Plaintiffs state:

> *In other words, the day after this Court granted the Preliminary Injunction against Kondratiev, finding that Plaintiffs were likely to prevail on the cybersquatting claim (ECF 35), Kondratiev re-registered the Domain under his Anna Lee alias. He did so after falsely telling this Court, under penalty of perjury, that he was not the Domain's registrant and had nothing to do with the Infringing Website.*

The above statement is false as there is no record that the domain was re-registered to Anna Lee as well as no evidence that it was re-registered at all. The domain is therefore still owned by Mr. Wang with no changes in ownership since the domain was first registered in 2017. The plaintiffs repeatedly conflate the term "renewed" with "re-registered". As in the previously referenced email to Mr. Wang (Ex. 4, COE102), a NameCheap representative told the domain owner, Mr. Wang, that, "*If renewal is processed, the domain **will remain in your account** and Anna will not be able to manage it.*"

In section II.F.4, the Plaintiffs accuse Mr. Kondratiev of false testimony by relying

14

on circumstantial evidence that Mr. Kondratiev's credit card was used by accounts claiming to be Anna Lee for services other than the registration of the domain name. The Defendant maintains his position that he never used Anna Lee as an alias and was not aware of the payments made with his credit card or PayPal account. It does not imply that those transactions were fraudulent, but that they are irrelevant to the issue of domain ownership and cybersquatting allegations. As a result, Defendant believes that the legal action against him is a fishing expedition as retaliation for the Defendant's legal actions against Mr. Boyko.

In paragraph II.D, the Plaintiffs continue to falsely name Mr. Kondratiev as a registrant of domain. Plaintiffs continue to state that:

- *Kondratiev registered the Domain with a bad faith intent to profit therefrom.*

- *The Domain was registered to disparage and tarnish the reputation of Boyko and the Boyko Mark*

- *The Domain has never been used connection with a bonafide offering of goods or services. Rather, the sole purpose of the Domain has been to tarnish Plaintiffs' business reputation and goodwill.*

During discoveries, the Defendant requested documents to confirm the Plaintiff's allegations, however, the Plaintiffs failed to provide any, instead choosing to rely on Mr. Tyndik's Declaration which is notably replete with perjury.

The Plaintiffs provided no documents in response to the Defendant's First Requests for Production, particularly item numbers from 10 to 21. Ex. J at pages 8-10, DE59-61.

While producing no documents in response to the Defendant's numerous First Requests for Production item numbers listed above, Plaintiffs subsequently produced a document that was in their possession at a time of Mr. Kondratiev's request. Specifically, the Plaintiffs attached a "Decision by Italian Guarantor for the Protection of Personal Data, dated July 6, 2023, with English translation" (Ex. 21 at COE320) to this motion, which was in their possession at the time the request was made as item number 21 in the First Requests for Production. Ex. C at page 7, DE19. The Defendant objects to the selective production of relevant evidence to the Court that was otherwise previously withheld by the Plaintiffs.

**III. Conclusion**

The Plaintiffs registered the trademark "Oleg Boyko" only after learning that the domain olegvboyko.website exists. The Plaintiffs' claim for relief is barred by the doctrine of laches.

The Plaintiffs have not proven that Mr. Kondratiev registered and/or owned the domain olegvboyko.website and instead presented evidence that shows the real owner as Bei Wang of Shanghai, China.

The key witness in this motion is an employee of Mr. Boyko, who is unreliable and should be impeached.

Defendant believes that this motion and the legal action against him is brought by Mr. Boyko in bad faith, has no merit, and is intended to harass the Defendant and deplete his financial resources.

The Defendant Alexey Kondratiev requests that this motion be denied.

DATED this 5th day of June 2024

By:
Alexey Kondratiev
Pro Se *Defendant*

17