TABLE OF CONTENTS FOR EXHIBITS FILED IN SUPPORT OF DEFENDANT'S
RESPONSE MOTION FOR PARTIAL SUMMARY JUDGMENT

| **Exhibit** | **Exhibit title** | **DE #**[1] |
|:---:|:---|:---:|
| A | Statement of Claim in Gagarin Court in Moscow, Russia | DE1 |
| B | Google Search results for (416)456-9875 | DE9 |
| C | Defendant's Second set of Requests for Production | DE12 |
| D | Order of Master Josefo of Superior Court of Justice for Ontario, dated January 24, 2019 | DE21 |
| E | Email from Associate Deputy Attorney General Bruce Ohr | DE27 |
| F | Report of the Select Committee on Intelligence United States Senate on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election (Excerpt) | DE31 |
| G | Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities | DE33 |
| H | Interpol Red Notice application | DE43 |
| I | Cyprus Times article "AG denies corruption charges" | DE46 |
| J | Defendant's First set of Requests for Production | DE51 |
| K | Declaration of Alexey Kondratiev | DE64 |

---

[1] Similarly to Plaintiffs' COE numbering system, the Defendant has adopted a numbering system with letters DE standing for "Defendant's Exhibits." Defendant has stamped unique and sequential numbers in the upper right corner of each page of each exhibit, which numbers are used for pincites where necessary to draw the Court's attention to specific portions within voluminous exhibits.

# Exhibit A

DE2

M - 5942/2019

**В Гагаринский районный суд г. Москвы**

(119049, г. Москва, ул. Донская, д.11, стр.1)

**Заявитель:**

**Бойко Олег Викторович**

(119311, г. Москва, ул. Строителей, д. 13, корп. 5, кв. 8)

**ДЛЯ ИЗВЕЩЕНИЙ И ОТВЕТОВ:**

адвокат **Прохоров Вадим Юрьевич**

(105120, Москва, 2-й Сыромятнический пер., д. 10А; Московская коллегия адвокатов «Межрегион», каб. 308; моб. тел. **(985) 210-79-84)**

**ЗАЯВЛЕНИЕ**
о признании распространенных сведений не соответствующими действительности

(в порядке особого производства – п. 8 ст. 152 ГК РФ, ч. 2 ст. 262 ГПК РФ)

Заявитель, Бойко Олег Викторович, является известным российским предпринимателем, экономистом, продюсером. Развивает успешные проекты в различных секторах российской и международной экономики.

Заявитель является главной Комитета по развитию паралимпийского движения в России Паралимпийского Комитета России https://paralymp.ru/about/structure/committees-and-commissions/, учредителем Фонда поддержки паралимпийского спорта «Параспорт» http://www.parasport.ru/about/.

Наличие чести, достоинства и деловой репутации у граждан и право на их защиту презюмируется действующим законодательством – в том числе положениями ст.ст. 150, 152 Гражданского кодекса РФ, абз. 1 п. 1 Постановления № 3 Пленума Верховного Суда Российской Федерации от 24 февраля 2005 г. «О судебной практике по делам о защите чести и достоинства граждан, а также деловой репутации граждан и юридических лиц» (далее – ППВС от 24.02.2005 г.).

Однако, неизвестными лицами, выступающими анонимно, создана Интернет-страница по адресу: http://olegvboyko.website/ - где распространены сведения, не соответствующие действительности и порочащие честь, достоинство и деловую репутацию заявителя О.В.Бойко (что подтверждается прилагаемым к настоящему Заявлению Протоколом осмотра доказательств (интернет-страницы

BOYKO00000995

DE3

2

http://olegvboyko.website/), составленным и удостоверенным нотариусом г. Москвы С.И.Глуховым, с нотариально удостоверенным переводом – Приложение 1).

**Правовое обоснование Заявления**

В соответствии со статьей 23 Конституции Российской Федерации каждый имеет право на защиту своей чести и доброго имени.

Предусмотренное статьями 23 и 46 Конституции Российской Федерации право каждого на защиту своей чести и доброго имени, а также установленное статьей 152 Гражданского кодекса Российской Федерации право каждого на судебную защиту чести, достоинства и деловой репутации от распространенных не соответствующих действительности порочащих сведений является необходимым ограничением свободы слова для случаев злоупотребления этими правами.

Иски и заявления в суд по делам данной категории вправе предъявить граждане, которые считают, что о них распространены не соответствующие действительности порочащие сведения.

В соответствии с п. 8 ст. 152 Гражданского кодекса РФ:

«**Если установить лицо, распространившее сведения, порочащие честь, достоинство или деловую репутацию гражданина, невозможно, гражданин, в отношении которого такие сведения распространены, вправе обратиться в суд с заявлением о признании распространенных сведений не соответствующими действительности**».

При этом в соответствии с абз. 3 п. 2 ППВС от 24.02.2005 г.:

«**Судебная защита чести, достоинства и деловой репутации лица, в отношении которого распространены не соответствующие действительности порочащие сведения, не исключается также в случае, когда невозможно установить лицо, распространившее такие сведения (например, при ... распространении сведений в сети Интернет лицом, которое невозможно идентифицировать). В соответствии с пунктом 6 статьи 152 Гражданского кодекса Российской Федерации суд в указанном случае вправе по заявлению заинтересованного лица признать распространенные в отношении него сведения не соответствующими действительности порочащими сведениями. Такое заявление рассматривается в порядке особого производства (подраздел IV Гражданского процессуального кодекса Российской Федерации)**».

В соответствии с ч.ч. 1 – 2 ст. 262 ГПК РФ в порядке особого производства суд рассматривает как дела, указанные в пунктах 1 – 11 ч. 1 ст. 262 ГПК РФ, так и другие дела, отнесенные федеральными законами к рассмотрению в порядке особого производства. В данном случае такой нормой федерального закона, относящей данное дело к рассмотрению в порядке особого производства, является

DE5

4

4.    «*Бойко занимался рейдерскими захватами, будучи председателем и акционером Евразхолдинга (с 1998 по 2004)*» (раздел А, стр. 2).

5.    «*Бойко, банк «Национальный Кредит», и его компания OLBI-USA участвовали в отмывании более ста миллионов долларов, полученных мошенническим путём, что привело к краху Бангкокского коммерческого банка в 1994-м. Это в свою очередь привело к возникновению азиатского финансового кризиса в 1998 году*» (раздел А, стр. 2)..

6.    «*Бойко занимался корпоративным рейдерством в США в отношении игорной компании «Cadillac Jack»*» (раздел А, стр. 2)

7.    «*Участие Бойко в финансировании голливудских фильмов является отмыванием денег*» (раздел А, стр. 2).

8.    «*...Заявление особенно иронично, учитывая финансовые мошенничества и отмывание денег, которыми Бойко занимался в то время в то время с ОЛБИ и банком «Национальный кредит»*» (раздел В7, стр. 8 – 9).

9.    «*Бойко и Абрамов вместе организовали захват Нижнего Тагила, приведя его в состояние банкротства, а затем захватив контроль над предприятием; типичный для России прием корпоративного рейдерства с использованием коррумпированных судов. В дальнейшем Абрамов и Бойко повторили эту схему ещё с несколькими предприятиями*» (раздел С1, стр. 10).

10.    «*Будучи директором ОАО «ОЛБИ-Дипломат» Бойко О.В. подписал с г-ном Горшковым договор на покупку и продажу ценных бумаг из чекового инвестиционного фонда «Хранитель». По условиям договора Горшков приобретал акции «ОЛБИ-Дипломат» и с этой целью Бойко получил от Горшкова деньги. Однако сделал он это обманным путём*» (раздел С3, стр. 13).

11.    «*Инвестиции Бойко в фильмы Голливуда через Finstar также являются явным отмыванием денег*» (раздел С6, стр. 17) .

Приведенные выше фрагменты №№ 1, 2, 3, 5, 7, 8, 9, 11 содержат прямые утверждения о нарушении Заявителем О.В.Бойко действующего законодательства и совершении преступлений – что полностью соответствует критерию отнесения рапространенных сведений о Заявителе к **порочащим** в соответствии с п. абз. 5 п. 7 ППВС от 24.02.2005 г.

Приведенные выше фрагменты №№ 4, 6, 10 содержат утверждения о недобросовестности Заявителя О.В.Бойко при осуществлении производственно-хозяйственной и предпринимательской деятельности, нарушении деловой этики и обычаев делового оборота – что полностью соответствует критерию отнесения рапространенных сведений о заявителе к **порочащим** в соответствии с п. абз. 5 п. 7 ППВС от 24.02.2005 г.

Необходимо отметить, что приведенными выше оспариваемыми фрагментами текста с Интернет-сайта http://olegvboyko.website/ отнюдь не исчерпываются распространенные на нем в отношении Заявителя О.В.Бойко не соответствующие действительности порочащие сведения. Однако, в настоящем Исковом заявлении приведены наиболее характерные из них.

Приложенные к настоящему Исковому заявлению документы, которые не являются подлинниками либо надлежащим образом заверенными копиями, будут представлены в виде подлинников либо надлежащим образом заверенных копий в судебном заседании либо в ходе подготовки дела к судебному разбирательству.

Учитывая изложенное и в соответствии с положениями ст.ст. 12, 150 – 152, Гражданского кодекса Российской Федерации, Постановлением № 3 Пленума Верховного Суда Российской Федерации от 24 февраля 2005 г. «О судебной практике по делам о защите чести и достоинства граждан, а также деловой репутации граждан и юридических лиц»

ПРОШУ

Признать не соответствующими действительности следующие порочащие сведения, распространенные в отношении истца Бойко Олега Викторовича в сети Интернет на странице с адресом: http://olegvboyko.website/:

1. «В течение всего этого периода прослеживаются два очевидных момента. Первый – его постоянная склонность быть вовлеченным в незаконную деятельность – в основном финансовые преступления, которая ничуть не уменьшилась со временем».

2. «Его основной корпоративный актив, ОЛБИ, насчитывающий около шестидесяти компаний, был вовлечен в финансовые преступления с использованием схем Понци (*финансовая пирамида), предпринятым «ОЛБИ-Дипломат», а также занимался отмыванием денег».

3. «Крах банка и раскрытие схем Понци привели к возбуждению уголовного дела против Бойко и связанных с ним лиц....обвинение против Бойко остается в его личном деле».

4. «Бойко занимался рейдерскими захватами, будучи председателем и акционером Евразхолдинга (с 1998 по 2004)».

5. «Бойко, банк «Национальный Кредит», и его компания OLBI-USA участвовали в отмывании более ста миллионов долларов, полученных мошенническим путём, что привело к краху Бангкокского коммерческого банка в 1994-м. Это в свою очередь привело к возникновению азиатского финансового кризиса в 1998 году».

6. «Бойко занимался корпоративным рейдерством в США в

BOYKO00000999

отношении игорной компании «Cadillac Jack».

    7.    «Участие Бойко в финансировании голливудских фильмов является отмыванием денег».

    8.    «...*Заявление особенно иронично, учитывая финансовые мошенничества и отмывание денег, которыми Бойко занимался в то время с ОЛБИ и банком «Национальный кредит»».

    9.    «Бойко и Абрамов вместе организовали захват Нижнего Тагила, приведя его в состояние банкротства, а затем захватив контроль над предприятием; типичный для России прием корпоративного рейдерства с использованием коррумпированных судов. В дальнейшем Абрамов и Бойко повторили эту схему ещё с несколькими предприятиями».

    10.    «Будучи директором ОАО «ОЛБИ-Дипломат» Бойко О.В. подписал с г-ном Горшковым договор на покупку и продажу ценных бумаг из чекового инвестиционного фонда «Хранитель». По условиям договора Горшков приобретал акции «ОЛБИ-Дипломат» и с этой целью Бойко получил от Горшкова деньги. Однако сделал он это обманным путем».

    11.    «Инвестиции Бойко в фильмы Голливуда через Finstar также являются явным отмыванием денег».

Приложения:

1. Протокол осмотра доказательств (интернет-страницы http://olegvboyko.website/), составленный нотариусом г. Москвы С.И.Глуховым 21 августа 2019 года – с нотариально удостоверенным переводом.

2. Квитанция об уплате Заявителем государственной пошлины.

3. Копия доверенности на В.Ю.Прохорова.

**Представитель Заявителя О.В.Бойко**
**(по доверенности)**                          В.Ю.Прохоров

02 октября 2019 года

BOYKO00001000

DE8



*07.11.19 10.30*

город Москва

## ГАГАРИНСКИЙ                                         суд
городской
районный                        (наименование суда)

Уголовное
Гражданское,
Административное
дело

7  дело № **2-5855/2019**

По обвинению
иску (заявлению),
административному
исковому
заявлению

по заявлению Бойко Олега Викторовича о признании распространенных сведений не соответствующими действительности

       1 инстанция                                    2 инстанция
Поступило _____          Поступило _____
Рассмотрено _____          Рассмотрено _____

*03.12.19  14.30 р*
*26.12.19  14*

Сдано в архив _____
Архивный номер _____

# 2-5855/2019

BOYKO00001001

# Exhibit B



DE10

Google

(416)456-9875

All | Maps | Images | Shopping | News | More | Tools

About 9 results (0.46 seconds)

45.79.187
http://45.79.187.117 › srci › 416 › mid

### 416-456-98## (Toronto, ON) - The Feed Foundation

**416-456-9875** | (+1 4164569875) in Toronto (ON)More Info ->. 416-456-9829 | (+ ... 416-456-9850 | (+1 4164569850) in Toronto (ON)More Info ->. Recent Feedback ...

CourtListener
https://www.courtlistener.com › docket › boyko-v-kondr...

### Parties for Boyko v. Kondratiev, 2:23-cv-01186

Jun 27, 2023 — Alexey Kondratiev. **(416) 456-9875**. Alexey Kondratiev 3045 16th Sideroad King City, Canada,. olegvboyko.website. Plaintiff. Finstar-Holding LLC.

Oleg Boyko Unmasked
https://www.olegvboyko.website › affidavit PDF

### Affidavit of Alexey Kondratiev

May 8, 2019 — Alexey Kondratiev. Smart Games Canada, Inc. 3045 16th Sideroad. King City, ON L7B1A3. **(416) 456-9875**. Defendants (Plaintiffs by Counterclaim)
11 pages

California Department of Food and Agriculture (.gov)
https://www.cdfa.ca.gov › pdfs › CFM-CertifiedPr... PDF

### Certified Producers by County as of December 1, 2023

Feb 7, 2023 — (442) **456-9875**. 2/3/2023. 2/2/2024. Humboldt. Tulio Guarnieri -. Laura ... (502) **416**-6288. 8/30/2023. 8/29/2024. Humboldt. Reyna C Bonilla. Reyna ...
12 pages

Part Target
https://fsg-53-rivets-fasteners-gasket.parttarget.com › pac...

### Packing and Gasket Materials: 10116952, 10116977, 10116982

5330-01-**416**-0198, Seal, Nonmetallic Strip, End Item Identification: Used on F ... 5330-01-**456-9875**, Packing, Preformed, End Item Identification: F404 engine

Hill Country Portal
https://www.hillcountryportal.com › hillcountryhuntin...

### Hunting & Fishing In Texas (TX) Hill Country

WHITWORTH BROTHERS: 325-**456-9875**; 1000 S Church, Brady, TX 76825. Deer ... **416** Earl Garrett St, Kerrville, TX 78028. HAMMACK'S TAXIDERMY & TANNERY: 830-895 ...

google.ca
https://books.google.ca › books

### Foreign Commerce and Navigation of the United States

United States. Bureau of the Census · 1912 · Commercial statistics
... **456 9,875** 18,552 **416** 34 , 239 24 , 813 110 10,465 31 , 660 8,141 39,253 153 11,883 36 , 145 Hongkong .. 218 1,690 Japan .. 1,130 405 Turkey in Asia . 37 ...

Oleg Boyko Unmasked

Affidavit of Alexey Kondratie

Alexey Kondratiev. Smart Games Ca
L7B1A3. (416) 456-9875. Defendant

Share

## About this result

### Source

www.olegvboyko.website was first

More about this page

### Not personalized

A result is only personalized when
Google Account activity. Learn mor

Privacy settings

Manage personal results

### Your search & this result

- These search terms appear in t
- A term related to your search a
- The result is in English
- This result seems relevant for s Canada

How Search works | L

This is a search result, not an ad. C
labeled with "Sponsored" or "Ad."

Send feedback

OEIS
https://oeis.org › ... ⋮

**b317838.txt**

... **416** 36 417 54 418 72 419 42 420 144 421 50 422 64 423 82 424 56 425 84 426 ... **456 9875**
540 9876 696 9877 592 9878 592 9879 592 9880 632 9881 388 9882 900 ...

 FastPeopleSearch.com
https://www.fastpeoplesearch.com › address › po-box-... ⋮

**People Living at Po Box 15, Three Rivers MA 01080**

(201) **456-9875** · (413) 289-1780 · (413) 283-6970 · (818) 509-1048. AKA: Alias ... (763)
**416**-6517 · (508) 740-9666 · (413) 592-5418. AKA: Alias, Nicknames, ...

ClustrMaps
https://clustrmaps.com › US Persons › C ⋮

**Steven Canady - Public Records**

(702) **456-9875**. View Details · Steven C Canady, age 74. View Details ... (501) **416**-1555. View
Details · Steven Canady · View Details. Joliet. 1526 ...

Canada    |    **L7B 1A3, King, ON** · Based on your places (Home) · Update location

More options in **Quick settings (⚙)**

# Exhibit C

ALEXEY KONDRATIEV
3045 16th Sideroad,
King City, Ontario L7B1A3
Canada

*Pro Se Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Oleg Boyko, et al.

    Plaintiffs,

   v.

Alexey Kondratiev, et al.

    Defendants.

**No. CV-23-01186-PHX-DLR**

**DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION TO THE PLAINTIFF OLEG BOYKO AND FINSTAR HOLDING LLC**

   Pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 34, Defendant Alexey Kondratiev hereby requests that the Plaintiffs Oleg Boyko and Finstar Holding LLC produce for inspection and copying the following documents and things at his residence at 3045 16th Sideroad, Ontario, Canada L7B1A3, in accordance with the Definitions and Instructions set forth below. Responses to these requests must be produced within thirty (30) days after service in accordance with FRCP 34.

**DEFINITIONS**

   Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the FRCP, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1. The term "Answer" means the Answer filed by the Defendant on August 9, 2023, in the above-captioned action (ECF No. 24).

2. The term "Communication(s)" means the transmittal, transfer, offer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise) by any means, and shall include, without limitation, text messages in any format (e.g., SMS, MMS, IMessage, etc.).

3. The term "Complaint" means the complaint filed on June 27, 2023, in the above-captioned action (ECF No. 1).

4. The terms "Concerning," "Reflecting," "Regarding," and "Related To" mean analyzing, describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, pertaining to, made in connection with or by reason of, or derived or arising therefrom, or being in any way legally, logically, or factually concerned with the matter described, referred to, or discussed.

5. The term "Document(s)" is synonymous in meaning and scope to the term "document" as used in FRCP 34, including "writings" and "recordings" as defined in Federal Rule of Evidence 1001. It includes, but it not limited to, all written, printed, typed, recorded or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft versions) in your actual or constructive possession, custody, care or control, including without limitation all writings, correspondence, e-mails, letters, telegrams, notes, mailgrams, cellphone texts, agenda,

memoranda, inter-office communications, reports, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably useable form, computer inputs or outputs, or any other tangible thing. The term "Document(s)" includes not only originals, but also any copies or reproductions upon which notations in writing, print, or otherwise have been made which do not appear in the original.

6. The term "Person" means any individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, including its present and former officers, members, managers, directors, partners, employee, independent contractors, agents, accountants, representatives, and attorneys.

7. The terms "You" and "Your" mean Plaintiffs Oleg Boyko and Finstar Holding LLC, their agents, employees, representations, successors, predecessors, attorneys, and/or anyone acting or purporting to act on his behalf.

**INSTRUCTIONS**

1. You shall produce materials and serve responses and any objections on Defendant within 30 days after service of these requests for production.

2. Pursuant to FRCP 34(b)(2)(B) and (C), if you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. All objections must be noted with specificity. Any ground not stated in a timely objection is waived.

3. With respect to any document withheld on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by FRCP 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Defendant to assess the claim of privilege.

4. In accordance with the FRCP, the scope of discovery sought through these requests for production extends to all relevant and non-privileged materials that might reasonably lead to the discovery of admissible evidence. You should produce all documents available to you or subject to your access or control that are responsive to the requests for production. This includes documents in your actual or constructive possession or control, as well as any non-privileged information in the actual or constructive possession or control of your attorneys, investigators, experts, agents, and any other persons acting on your behalf.

5. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

6. Subject to any Electronically Stored Information order subsequently entered in this case, all documents are to be produced in electronic form pursuant to these instructions. All documents, including emails, should be produced in single page .TIFF format, showing comments and track changes where applicable, with text extract and

database load files containing standard fielded information and metadata. .TIFF images shall be placed in an Images folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an .opt and .dat load files placed in a Data folder. If files are produced in native format, those natively-produced documents should be accompanied by a placeholder and OCR/extracted test file. Each page of a document should be assigned a unique production number (aka Bates number) electronically "burned" onto the image at a location that does not unreasonably conceal or interfere with information on the document. The Bates numbering convention should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a number or set of numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.

7. If there are no documents responsive to a particular request, so indicate in your response.

8. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, as well as describe in full the circumstances surrounding its destruction, loss, or other disposition from your possession or control.

9. These requests for production are continuing in nature, up to and during trial.

Materials sought by these requests for production that become available after you serve your responses must be disclosed to Defendant by supplementary response or responses.

10. Pursuant to FRCP 26(e), you are under a duty to promptly supplement or correct your responses to these requests for production if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you should state this fact in each response. Supplementary answers are to be served upon Defendant as soon as practicable after you receive this new information, but, in any event, no later than 14 days after its receipt.

11. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any document request or any subsection thereof, then in response to the appropriate document request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonably burdensome effort; (b) describe with particularity the efforts made by you or on your behalf to produce such documents, including identification of persons consulted, description of files, records and documents reviewed, and identification of each person who participated in the gathering of such documents, with specification of the amount of time spent and the nature of work done by such person; and (c) state with particularity the grounds upon which you contend the additional efforts to produce such documents would be unreasonably burdensome.

12. The singular shall be read to include the plural and vice versa, the gender of a pronoun (masculine, feminine, or neutral) shall not exclude the other genders, the present

tense shall be read to include the past tense and vice versa, the term "each" shall be read to include the term "every" and vice versa, the term "any" shall be read to include the term "all" and vice versa, and the term "and" shall be read to include the term "or" and vice versa, so as to encompass the broadest possible interpretation for each request.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, including communications, related to Legal action Case No. C30431519, C-3415-19/20 in the Vidzeme District Court in Madona, Latvia.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, including communications, with the web site <www.kompromat.lv>, LLC "PR SOLUTIONS LV" and Leonids Jackobsons.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, including communications, related to the legal action of Mr. Boyko against Google LLC in Moscow, Russia, particularly, but not limited to, the Court file numbers 02-5855/2019 ~ M-5942/2019, 02-5983/2021, 02-0315/2021, 02-4379/2020 ~ M-3761/2020, 33-16027/2023, 33-17819/2022 and 33-27498/2022.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, including communications, that were exchanged with Google LLC regarding <olegvboyko.website>.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, including communications, that were exchanged with any third party regarding <olegvboyko.website>.

Dated January 30, 2024

By: /s/ Alexey Kondratiev
Alexey Kondratiev
*Pro Se Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2024, I served a copy of Defendant's Second Set of Requests for Production on the Attorneys for Plaintiffs Oleg Boyko and Finstar-Holding LLC via electronic mail – from my e-mail address <akondratiev@mac.com> to the following e-mail addresses:

<astolyar@loeb.com>

<dbeddingfield@loeb.com>

<jmargolis@loeb.com>

<amy@fennemorelaw.com>

<bgilmore@fennemorelaw.com>

By: /s/ Alexey Kondratiev
Alexey Kondratiev

# Exhibit D

DE22

Court File No. CV-08-354560

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| MASTER | ) | THURSDAY, THE 24TH |
|--------|---|--------------------|
|        | ) |                    |
| JOSEFO | ) | DAY OF JANUARY, 2019 |

B E T W E E N:

ARCÁDIA PARTICIPAÇÕES LTDA.

Plaintiff/
Defendant to the Counterclaim

- and -

ALEXEY KONDRATIEV and SMART GAMES CANADA, INC.

Defendants/
Plaintiffs by Counterclaim

- and -

EUGENE CHAYEVSKY, ADENILTON CEZAR XAVIER, CADILLAC JACK, INC.,
FINSTAR FINANCIAL GROUP LLC, TILLEY INTERNATIONAL & ASSOCIATES
INC., carrying on business as Tilley Entertainment

Defendants to the Counterclaim

**ORDER**

THIS MOTION, made by Defendants (Plaintiffs by Counterclaim) Alexey
Kondratiev and Smart Games Canada, Inc. (the "Moving Parties"), for an order to set a
new deadline for setting this action down for trial, was heard on January 24, 2019 at the
Court House, 393 University Avenue, Toronto, Ontario, M5G 1E6.

ON READING the Motion Record, Supplementary Motion Record, Factum, and Book of Authorities of the Moving Parties, the Motion Record, Factum, and Book of Authorities of the Responding Parties, Arcadia Participacoes Ltda., Eugene Chayevsky, Adenilton Cezar Xavier, Finstar Financial Group LLC, and Tilley International & Associates Inc. carrying on business as Tilley Entertainment, and the Factum, Book of Authorities, and Transcript Brief of the Responding Party, Cadillac Jack, Inc., and on hearing the submissions of the lawyers for the parties,

1.      **THIS COURT ORDERS** that the parties adhere to the timetable attached at Schedule "A". This timetable is final and shall not be extended further.

2.      **THIS COURT ORDERS AND DIRECTS** that pursuant to Rule 48 the Registrar shall dismiss this action for delay unless the action has been set down for trial or terminated by any means on or before the new deadline for setting the action down for trial, which shall be *pursuant to the applicable option in the attached schedule "A" timetable.*

3.      **THIS COURT ORDERS** that the parties bear their own costs of this Motion.

_____

**Master Josefo**

23641280.1

## SCHEDULE "A"

## TIMETABLE

| | |
|---|---|
| Service of motion record in support of request to amend pleadings in this action ("**Pleading Amendment Motion**") | Defendants/plaintiffs by counterclaim: May 15, 2019 *31* |
| Service of motion record in respect of paragraph 39 of the statement of claim and consolidation of Toronto SCJ action no. CV-15-537434 commenced by the defendants/plaintiffs by counterclaim against Oleg Boyko ("**Boyko Motion**") | Defendants/plaintiffs by counterclaim: May 15, 2019 *31* *return date* *deadline for final ~~disposition~~ of above is ~~gated~~ date of any appeal* *motns (including ~~final disposition~~ of any appeal* *and expiry of any applicable limitation period):* |
| Delivery of further defences | **From final disposition of Pleading Amendment Motion (including the final disposition of any appeal and the expiry of any applicable appeal period):** +30 days for existing parties to action +40 days from service of amended claim on any new defendant based in Canada (outside Ontario) or the US +60 days from service of amended claim on any new defendant based outside of Canada or the US **From final disposition of Boyko Motion (including the final disposition of any appeal and the expiry of any applicable appeal period):** +60 days from service of amended claim on Mr. Boyko outside of Canada or the US |
| Delivery of reply (if any) | +10 days from delivery of last defence |
| Delivery of affidavits of documents and productions | +3 months from delivery of reply |

DE25

| Conduct examinations for discovery | +3 months from delivery of all affidavits of documents |
|---|---|
| Mandatory mediation | +4 months from final examination for discovery |
| Set down deadline | March 30, 2020, peremptory |

If the plaintiffs by counterclaim do not file materials in support of the above-noted motions by the prescribed deadlines, the following deadlines shall apply:

Delivery of affidavits of documents and productions
- Defendants/plaintiffs by counterclaim: June 30, 2019
- Remaining parties: July 31, 2019

Conduct examinations for discovery: September 30, 2019 (subject to above deadlines first being met)

Mandatory mediation: December 30, 2019 (subject to above deadlines first being met)

Set Down deadline: December 31, 2019

All deadlines herein are peremptory on the plaintiffs/ defendants/plaintiffs by counterclaim.

ARCÁDIA PARTICIPAÇÕES LTDA.   -and-          ALEXEY KONDRATIEV et al.                    Court File No. CV-08-354560
Plaintiff/Defendant to the                   Defendants/Plaintiffs by
Counterclaim                                 Counterclaim

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**ORDER**

**BLAKE, CASSELS & GRAYDON LLP**
Barristers & Solicitors
199 Bay Street, Suite 4000
Toronto ON  M5L 1A9

**R. Seumas M. Woods** LSO #30169I
Tel:   416-863-3876
seumas.woods@blakes.com

**Max Shapiro** LSO #60602U
Tel:   416-863-3305
Fax:   416-863-2653
max.shapiro@blakes.com

Lawyers for the Defendant by Counterclaim,
Cadillac Jack, Inc.

23641280.1

# Exhibit E

Obtained via FOIA by Judicial Watch, Inc.

DE28

| | |
|---|---|
| Document ID: 0.7.17531.5872 | |
| From: | Bruce Ohr (b)(6) |
| To: | Ohr, Bruce (ODAG) </o=usdoj/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=ohr, bruce6ca> |
| Cc: | |
| Bcc: | |
| Subject: | |
| Date: | Mon Dec 05 2016 15:47:51 EST |
| Attachments: | ATT00001.txt |
| | WhosWho19Sept2016.xlsx |

Obtained via FOIA by Judicial Watch, Inc.

DE29

| Last Name (English) | First Names (English) | Last Name (Cyrillic) | First Names (Cyrillic) | Linked with | Who/what | Contact info | Sources/cites/notes |
|---|---|---|---|---|---|---|---|
| Abernathy | Frank | Абернати | Франк | Millian | "Spiritual Diplomacy"; anti-Tymoshenko; anti-Svoboda; pro-Yanukovych; shady businesses; Pedry Mining Development Corporation (visa mill) with Millian and Abernathy. | (b)(6) ███████ (same office as Millian??) | 25Jun16 |
| Ablyazov (Abliazov) | Mukhtar | Аблязов | Мухтар | Khrapunov | Ex-BTA bank head, fled in 2009; scandals in multiple countries; in France, may be extradited to Russia or Kazakhstan; Ruslan Tsarni (uncle of Boston Bombers) helped him by testifying on corruption of Nazarbayev son-in-law; co-owned Eurasia Tower with Pavel Fuchs (Tekhinvest); | | 12Feb16Report |
| Abramovich | Roman | Абрамович | Роман | Trump? | Ivanka is a friend of Roman's "wife" Darya Zhukova (whose father has crime ties); Jewish Tolerance Center housed on their Garazh arts building. | | 12Feb16Report |
| Agalarov | Aras (Araz) Iskender ogly | Агаларов | Арас (Араз Искендер оглы, Araz İsgandər oğlu) | Trump | Crocus group; Nobu restaurants in Moscow (with Robert DeNiro); Ikhmet Mukhtarov shot in gangland killing in car of Crocus cofounder Rail Zeynalov; Crocus allegedly invested in Solntsevo Group-controlled bank; coinvested with Telman Ismailov in Cherkizovo market; no-bid contract for Kyrgyz customs posts; first customer for Giorgi Rtskhelidze's and Georgiy Ramishvili's Silk Road Group SA's J.Lo fashion line. Hosted 2013 Miss Universe pageant. | | 14Dec15Report; |
| Agalarov | Emin (Emmin) Arasovich (Arazovich) | Агаларов | Эмин Арасович (Эмин Арас оглы , Emin Araz oğlu) | Trump | B. 1979 Baku; Crocus group First VP; singer; was married to Layla Aliyeva (Azerbaijan president's daughter) 2006-2015; friend of singer Grigory Leps (Lepsveridze), on US Treasury OFAC "Brothers' Circle" blacklist; close to singer Keti (Ketevan) Topuria, daughter of crime figure. | | |
| Akdeniz | Gündüz | Акдениз | Гундуз, Гюндюз | Arif | Together with Musa Çelik, suspected of being the main organizers with Tevfik of the 2010 Savarona yacht orgy | | 17Jun16Report |
| Akhmetov | Rinat | Ахметов | Ринат | Arif, Manafort | Said to co-own Rixos hotels 2005-2006; used Manafort PR 2005-6; accused of money laundering, financial fraud; straddles fence in Ukraine 2014ff; major Donbass employer (coal); supported Party of Regions and its successor, Opposition Bloc | | 14Dec15Report; 14Apr16Report |
| Altshul (Altsoul, Altshoul) | Alexander (Aleksandr, Alex) | Альтшул | Александр | Trump? | Had address in Trump Plaza Panama City; defended Guzman and DMG; from Belarus; alleged mob ties (Canadian lawsuit) | | 12Feb16Report |
| Arif (Arifov, Arifova, Airfova, Aris) | Gulnara (Gioulnara, Gulya, or Julia) | Ариф (Арифова) | Гюльнара, Юлия [check] , Гульнара | Arif | Owned Emmons Realty | | 14Dec15Report |

Obtained via FOIA by Judicial Watch, Inc.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Arif (Arifov) | Tevfik (Tofik, Tevic, Taufik, Tevfic, Tevfi) Murtazayevich | Ариф (Арифов) | Тевфик (Тофик, Тефик) | Trump | Bayrock; Rixos Hotels; Doyen Capital (soccer players, ores, coal, petrol, maritime transport, real estate, financial advice and investing); alleged to be Uzbek mafia don 1990s; linked with Gafur Rakhimov, Salim Abdullayev/Abduvaliyev, Chernoy; organized 2010 yacht orgy for ENRC's Mashkevich. Guests included Kazakh amb. Saudabayev, Telman Ismailov etc. 2005 Birthday guests included crime-linked Kikalishvili, Bure, Shustorovich, Erdogan. An ethnic Meskhetian Turk alleged to have grown up in Soviet Uzbekistan, then to Kazakhstan in the 1990s. Curaçao-based Ravana holding (with sons/brothers Refik, Efendi and Kemal) invests in chrome, coal, petrol, financial advice, investment, according to Football Leaks. Aktyubinsk Chromium Compounds Plant is run by brother Refik. | (b)(6) ████████████ ██████████ 2027 Emmons Ave., Brooklyn (realty co.) | 23Nov15Report; 14Dec15Report; 13Feb16Report; 27May16Report; 17Jun16Report; 24Jun16Report; 9Jul16Report |
| Avrashov | Lee (Leonid Aleksandrovich) | Аврашов | Леонид Александрович | Manafort | Head of Black, Manafort in St Petersburg in 2007. Montfort [Monfort] International Inc.; ConAgra; Skylink Aviation/ Skylink Air and Logistic Support (VP) ; QAM Inc.; Asia Flight Support. Has written reports on espionage, consulted USDA, | see 6Jul16 report for various addresses | 6Jul16Report |
| Bazhayev (Bazhaev) | Musa | Бажаев | Муса | Arif | Ethnic Chechen Moscow developer; Attended 2010 yacht orgy; in semi-disgrace; helped Shumkov [who was found hanging in Moskva-siti's Federation Tower Dec 8 2015] acquire Moscow real estate but later cooled to him. Bazhayev is the largest stake holder in Alliance Oil and Russian Platinum | | 23Nov15Report; _http://www.rospres.com/politics/16741/ |
| Borokhovich (Borokhozich) | Eugene (Euigne, aka Gennady) | Борохович | Евгений/ Геннадий | Arif | Worked with Gulnara Arifova in Emmons Realty; alleged land scam in Texas with Vitaly Zaretsky; with wife Elena, runs the Borokhovich Foundation | | 12Feb16Report |
| Boyko (Boiko) | Oleg Viktorovich | Бойко | Олег Викторович | Trump Tower, Agalarov | Finstar, Finstroy, Olbi Concern, Ritzio Entertainment, National Credit Bank, Polnamon, Omteks. EvrazHolding until 2004. Alleged links with Orekhovo and Solntsevo crime groups; Fashion TV stockholder; mystery US partner; prostitute honey-traps; partner Belotserkovskiy and Miss Universe; Hollywood film producer (money laundering?). Friends in Russian government and special services. Finstar sold Trump Tower apt 63AB, used in Nahman-Trincher gambling ring, to Elena Trincher. | | 10Jun16Report |
| Buryak (Buriak) | Dmitriy (Dmitry, Dmitri, Dmytro) | Буряк | Дмитрий, Дмитро | Trump | DeVision Company; met with Donald Jr. in Kyiv, June 2008 and in NYC; discussed Euro Park hotel project and golf club | | |

# Exhibit F

Excerpt from the partially declassified *"Report of the Select Committee on Intelligence United States Senate on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election",* Volume V, page 645



Additionally, as of 2017, Geovanis served on the Supervisory Board of 4Finance, a company based in Latvia that is controlled by Russian oligarch Oleg Boyko.[4201]  Boyko has concerning ties to the Russian government, to Russian intelligence and security services, and to organized crime.

Moldovan press has reported that Boyko was involved in a Kremlin-backed foreign election influence operation there.[4203]

DE33

# Exhibit G

DE34

### Report to Congress Pursuant to Section 241 of the
### Countering America's Adversaries Through Sanctions Act of 2017
### Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation
### and
### Russian Parastatal Entities

#### January 29, 2018

Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 (CAATSA) requires the Secretary of the Treasury, in consultation with the Director of National Intelligence and the Secretary of State, to submit to the appropriate congressional committees 180 days after enactment a detailed report on senior political figures and oligarchs in the Russian Federation (Section 241(a)(1)) and on Russian parastatal entities (Section 241(a)(2)).  Pursuant to Section 241(b), the report shall be submitted in an unclassified form but may have a classified annex.  This is the unclassified portion of the report.

### Section 241(a)(1) – Senior Foreign Political Figures and Oligarchs in the Russian Federation

As required by Section 241(a)(1)(A) of CAATSA, the Department of the Treasury is providing in this unclassified report a list of senior foreign political figures and oligarchs in the Russian Federation, as determined by their closeness to the Russian regime and their net worth.  For purposes of this unclassified portion of the report, this determination was made based on objective criteria related to individuals' official position in the case of senior political figures, or a net worth of $1 billion or more for oligarchs.

To determine the list of senior political figures, the Department of the Treasury considered the definition in CAATSA Section 241(c)(2), which incorporates by reference the definition of "senior foreign political figure" in section 1010.605, title 31 of the Code of Federal Regulations.  For purposes of this unclassified portion of the report, such names consist of: i) senior members of the Russian Presidential Administration; ii) members of the Russian Cabinet, Cabinet-rank ministers, and heads of other major executive agencies; iii) other senior political leaders, including the leadership of the State Duma and Federation Council, other members of the Russian Security Council, and senior executives at state-owned enterprises.  These individuals are listed in Appendix 1 of this report.

To determine the list of oligarchs, the Department of the Treasury enumerated those individuals who, according to reliable public sources, have an estimated net worth of $1 billion or more.  Those individuals who meet this criterion are listed in Appendix 2 of this report.

The Department of the Treasury is also providing in a classified annex to this report additional information required pursuant to Section 241(a)(1).  The classified annex may include individuals who are not included in Appendices 1 and 2 to this unclassified report, and such persons may hold a position below those included in the unclassified report or have a net worth below $1 billion.

UNCLASSIFIED

This report has been prepared and provided exclusively in response to Section 241 of CAATSA. It is not a sanctions list, and the inclusion of individuals or entities in this report, its appendices, or its annex does not and in no way should be interpreted to impose sanctions on those individuals or entities. Inclusion in this report also does not constitute the determination by any agency that any of those individuals or entities meet the criteria for designation under any sanctions program. Moreover, the inclusion of individuals or entities in this report, its appendices, or its classified annexes does not, in and of itself, imply, give rise to, or create any other restrictions, prohibitions, or limitations on dealings with such persons by either U.S. or foreign persons. Neither does inclusion on the unclassified list indicate that the U.S. Government has information about the individual's involvement in malign activities. Named individuals and entities who are separately subject to sanctions pursuant to sanctions programs established in U.S. law are denoted with an asterisk (*).

### Section 241(a)(2) – Russian Parastatal Entities

CAATSA Section 241(a)(2)-(5) requires a report on Russian parastatal entities, including an assessment of their role in the economy of the Russian Federation; an overview of key U.S. economic sectors' exposure to Russian persons and entities; an analysis of the potential effects of imposing additional debt and equity restrictions on parastatal entities; and the possible impact of additional sanctions against oligarchs, senior political figures, and parastatals on the U.S. and Russian economies.

Russian parastatals have origins in the Soviet Union's command economy. After the dissolution of the Soviet Union, the Russian government conducted large-scale privatization of these entities; in the early 2000s, it began to renationalize large companies. The Russian government has responded to economic shocks, including the financial crisis in 2008 and the imposition of sanctions in 2014, by increasing its role in the economy and ownership of parastatals. As of 2016, Russian parastatals accounted for one-third of all jobs in Russia and 70 percent of Russia's GDP.

For purposes of this requirement, Russian parastatals are defined as companies in which state ownership is at least 25 percent and that had 2016 revenues of approximately $2 billion or more. A list of such parastatals and the required analysis specified in Section 241(a)(2)-(5) are included in the classified annex of this report.

UNCLASSIFIED

## Appendix A: List of Senior Political Figures

### Presidential Administration

| | | |
|---|---|---|
| 1. | Anton Vayno | Head, Presidential Administration |
| 2. | Aleksey Gromov* | First Deputy Head, Presidential Administration |
| 3. | Sergey Kiriyenko | First Deputy Head, Presidential Administration |
| 4. | Magomedsalam Magomedov | Deputy Head, Presidential Administration |
| 5. | Vladimir Ostrovenko | Deputy Head, Presidential Administration |
| 6. | Dmitriy Peskov | Deputy Head, Presidential Administration; Presidential Press Secretary |
| 7. | Vladislav Kitayev | Chief of Presidential Protocol |
| 8. | Andrey Belousov | Aide to the President |
| 9. | Larisa Brycheva | Aide to the President |
| 10. | Vladislav Surkov* | Aide to the President |
| 11. | Igor Levitin | Aide to the President |
| 12. | Vladimir Kozhin* | Aide to the President |
| 13. | Yuriy Ushakov | Aide to the President |
| 14. | Andrey Fursenko* | Aide to the President |
| 15. | Nikolay Tsukanov | Aide to the President |
| 16. | Konstantin Chuychenko | Aide to the President |
| 17. | Yevgeniy Shkolov | Aide to the President |
| 18. | Igor Shchegolev* | Aide to the President |
| 19. | Aleksandr Bedritskiy | Adviser to the President , Special Presidential Representative on Climate Issues |
| 20. | Sergey Glazyev* | Adviser to the President |
| 21. | Sergey Grigorov | Adviser to the President |
| 22. | German Klimenko | Adviser to the President |
| 23. | Anton Kobyakov | Adviser to the President |
| 24. | Aleksandra Levitskaya | Adviser to the President |
| 25. | Vladimir Tolstoy | Adviser to the President |
| 26. | Mikhail Fedotov | Adviser to the President, Chairman of the Presidential Council for Civil Society and Human Rights |
| 27. | Venyamin Yakovlev | Adviser to the President |
| 28. | Artur Muravyev | Presidential Envoy to the Federation Council |
| 29. | Garry Minkh | Presidential Envoy to the State Duma |
| 30. | Mikhail Krotov | Presidential Envoy to the Constitutional Court |
| 31. | Anna Kuznetsova | Presidential Commissioner for Children's Rights |
| 32. | Boris Titov | Presidential Commissioner for Entrepreneurs' Rights |
| 33. | Mikhail Babich | Plenipotentiary Representative to the Volga Federal District |

UNCLASSIFIED

UNCLASSIFIED

| | |
|---|---|
| 34. Aleksandr Beglov | Plenipotentiary Representative to the Northwestern Federal District |
| 35. Oleg Belaventsev* | Plenipotentiary Representative to the North Caucasus Federal District |
| 36. Aleksey Gordeyev | Plenipotentiary Representative to the Central Federal District |
| 37. Sergey Menyaylo* | Plenipotentiary Representative to the Siberian Federal District |
| 38. Yuriy Trutnev | Deputy Prime Minister – Plenipotentiary Representative to the Far Eastern Federal District |
| 39. Vladimir Ustinov | Plenipotentiary Representative to the Southern Federal District |
| 40. Igor Kholmanskikh | Plenipotentiary Representative to the Urals Federal District |
| 41. Aleksandr Manzhosin | Head, Foreign Policy Directorate |
| 42. Vladimir Chernov | Head, Directorate for Interregional and Cultural Ties to Foreign Countries |
| 43. Oleg Govorun | Head, Directorate for Social and Economic Relations with the Commonwealth of Independent States, Abkhazia, and South Ossetia |

**Cabinet of Ministers**

| | |
|---|---|
| 44. Dmitriy Medvedev | Prime Minister |
| 45. Igor Shuvalov | First Deputy Prime Minister |
| 46. Sergey Prikhodko | Deputy Prime Minister and Head of the Government Apparatus |
| 47. Aleksandr Khloponin | Deputy Prime Minister |
| 48. Vitaliy Mutko | Deputy Prime Minister |
| 49. Arkadiy Dvorkovich | Deputy Prime Minister |
| 50. Olga Golodets | Deputy Prime Minister |
| 51. Dmitriy Kozak* | Deputy Prime Minister |
| 52. Dmitriy Rogozin* | Deputy Prime Minister |
| 53. Mikhail Abyzov | Minister for Liaison with Open Government |
| 54. Aleksandr Tkachev | Minister of Agriculture |
| 55. Vladimir Puchkov | Minister of Civil Defense, Emergencies, and Natural Disasters |
| 56. Nikolay Nikiforov | Minister of Communications and Mass Media |
| 57. Mikhail Men | Minister of Construction, Housing, and Public Utilities |
| 58. Vladimir Medinskiy | Minister of Culture |
| 59. Sergey Shoygu | Minister of Defense |
| 60. Maksim Oreshkin | Minister of Economic Development |

UNCLASSIFIED

**UNCLASSIFIED**

| | |
|---|---|
| 61. Olga Vasilyeva | Minister of Education and Science |
| 62. Aleksandr Novak | Minister of Energy |
| 63. Aleksandr Galushka | Minister of Far East Development |
| 64. Anton Siluanov | Minister of Finance |
| 65. Sergey Lavrov | Minister of Foreign Affairs |
| 66. Veronika Skvortsova | Minister of Health |
| 67. Denis Manturov | Minister of Industry and Trade |
| 68. Vladimir Kolokoltsev | Minister of Internal Affairs |
| 69. Aleksandr Konovalov | Minister of Justice |
| 70. Maksim Topilin | Minister of Labor and Social Protection |
| 71. Sergey Donskoy | Minister of Natural Resources and Ecology |
| 72. Lev Kuznetsov | Minister of North Caucasus Affairs |
| 73. Pavel Kolobkov | Minister of Sports |
| 74. Maksim Sokolov | Minister of Transportation |

**Other Senior Political Leaders**

| | |
|---|---|
| 75. Valentina Matviyenko* | Chairwoman, Federation Council |
| 76. Sergey Naryshkin* | Director, Foreign Intelligence Service (SVR) |
| 77. Vyacheslav Volodin* | Chairman, State Duma |
| 78. Sergey Ivanov* | Presidential Special Representative for the Environment, Ecology, and Transport |
| 79. Nikolay Patrushev | Secretary, Security Council |
| 80. Vladimir Bulavin | Head, Federal Customs Service |
| 81. Valeriy Gerasimov | First Deputy Minister of Defense and Chief of the General Staff |
| 82. Igor Korobov* | Chief, Main Intelligence Directorate General Staff (GRU), Ministry of Defense |
| 83. Rashid Nurgaliyev | Deputy Secretary, Security Council |
| 84. Georgiy Poltavchenko | Governor of Saint Petersburg |
| 85. Sergey Sobyanin | Mayor of Moscow |
| 86. Yuriy Chayka | Prosecutor General |
| 87. Aleksandr Bastrykin* | Head, Investigative Committee |
| 88. Viktor Zolotov | Director, Federal National Guard Service |
| 89. Dmitriy Kochnev | Director, Federal Protection Service |
| 90. Aleksandr Bortnikov | Director, Federal Security Service (FSB) |
| 91. Andrey Artizov | Head, Federal Archive Agency |
| 92. Yuriy Chikhanchin | Head, Financial Monitoring Federal Service |
| 93. Aleksandr Linets | Head, Presidential Main Directorate for Special Programs |
| 94. Aleksandr Kolpakov | Head, Presidential Property Management Directorate |

**UNCLASSIFIED**

3

**UNCLASSIFIED**

DE39

| | |
|---|---|
| 95. Valeriy Tikhonov | Head, State Courier Service |
| 96. Aleksey Miller | Chief Executive Officer, Gazprom |
| 97. Igor Sechin* | Chief Executive Officer, Rosneft |
| 98. German Gref | Chief Executive Officer, Sberbank |
| 99. Oleg Belozerov | General Director, Russian Railways |
| 100. Andrey Kostin | Chairman-Management Board, VTB |
| 101. Sergey Chemezov* | Chief Executive Officer, Rostec |
| 102. Oleg Budargin | Chief Executive Officer, Rosseti |
| 103. Boris Kovalchuk | Chief Executive Officer, Inter RAO |
| 104. Aleksey Likhachev | General Director, Rosatom |
| 105. Nikolay Tokarev | Chief Executive Officer, Transneft |
| 106. Andrey Akimov | Chief Executive Officer, Gazprombank |
| 107. Nail Maganov | General Director, Tatneft |
| 108. Vitaliy Savelyev | Chief Executive Officer, Aeroflot |
| 109. Andrey Shishkin | Chief Executive Officer, ANK Bashneft |
| 110. Yuriy Slyusar | Chief Executive Officer, United Aircraft Corporation |
| 111. Nikolay Shulginov | Chief Executive Officer, RusHydro |
| 112. Sergey Gorkov | Chief Executive Officer, Vneshekonombank |
| 113. Sergey Ivanov (Jr) | Chief Executive Officer, ALROSA |
| 114. Roman Dashkov | Chief Executive Officer, Sakhalin Energy |

**UNCLASSIFIED**

### Appendix B: List of Oligarchs

1. Aleksandr Abramov
2. Roman Abramovich
3. Araz Agalarov
4. Farkhad Akhmedov
5. Vagit Alekperov
6. Igor Altushkin
7. Aleksey Ananyev
8. Dmitriy Ananyev
9. Vasiliy Anisimov
10. Roman Avdeyev
11. Petr Aven
12. Yelena Baturina
13. Aleksey Bogachev
14. Vladimir Bogdanov
15. Leonid Boguslavskiy
16. Andrey Bokarev
17. Oleg Boyko
18. Nikolay Buynov
19. Oleg Deripaska
20. Aleksandr Dzhaparidze
21. Leonid Fedun
22. Gleb Fetisov
23. Mikhail Fridman
24. Aleksandr Frolov
25. Filaret Galchev
26. Sergey Galitskiy
27. Valentin Gapontsev
28. Sergey Gordeyev
29. Andrey Guryev
30. Yuriy Gushchin
31. Mikhail Gutseriyev
32. Sait-Salam Gutseriyev
33. Zarakh Iliyev
34. Dmitriy Kamenshchik
35. Vyacheslav Kantor
36. Samvel Karapetyan
37. Yevgeniy Kasperskiy
38. Sergey Katsiyev
39. Suleyman Kerimov
40. Igor Kesayev
41. Danil Khachaturov
42. German Khan
43. Viktor Kharitonin
44. Aleksandr Klyachin
45. Petr Kondrashev

**UNCLASSIFIED**

46. Andrey Kosogov
47. Yuriy Kovalchuk*
48. Andrey Kozitsyn
49. Aleksey Kuzmichev
50. Lev Kvetnoy
51. Vladimir Lisin
52. Anatoliy Lomakin
53. Ziyavudin Magomedov
54. Igor Makarov
55. Iskander Makhmudov
56. Aleksandr Mamut
57. Andrey Melnichenko
58. Leonid Mikhelson
59. Yuriy Milner
60. Boris Mints
61. Andrey Molchanov
62. Aleksey Mordashov
63. Vadim Moshkovich
64. Aleksandr Nesis
65. God Nisanov
66. Aleksandr Ponomarenko
67. Sergey Popov
68. Vladimir Potanin
69. Mikhail Prokhorov
70. Dmitriy Pumpyanskiy
71. Megdet Rakhimkulov
72. Andrey Rappoport
73. Viktor Rashnikov
74. Arkadiy Rotenberg*
75. Boris Rotenberg*
76. Dmitriy Rybolovlev
77. Ayrat Shaymiyev
78. Radik Shaymiyev
79. Kirill Shamalov
80. Yuriy Shefler
81. Albert Shigabutdinov
82. Mikhail Shishkhanov
83. Leonid Simanovskiy
84. Andrey Skoch
85. Aleksandr Skorobogatko
86. Rustem Sulteyev
87. Aleksandr Svetakov
88. Gennadiy Timchenko*
89. Oleg Tinkov
90. Roman Trotsenko
91. Alisher Usmanov

92. Viktor Vekselberg
93. Arkadiy Volozh
94. Vadim Yakunin
95. Vladimir Yevtushenkov
96. Gavril Yushvayev

# Exhibit H

DE44



# Draft Red Notice Application Form

INTERPOL

RED NOTICE

## Person

### Identity particulars

| | |
|---|---|
| Status: | **Wanted** |
| Purpose: | **Arrest** |
| Family name: | **BOYKO** |
| Family name in original script or Chinese Telegraphic Code: | |
| Family name at birth: | |
| Forename(s): | **OLEG** |
| Forename(s) in original script or Chinese Telegraphic Code: | |
| Date of birth: | **28/09/1964**   Sex: Male |
| Place of birth: | Russia |
| Nationalities: | Russia (Confirmed) |
| Caution: | |
| Other: | |

**Attachments**

>> Photographs (0)
>> Fingerprints (0)
>> DNA (0)
>> Dental information (0)

### Aliases

Nicknames:

### Details

| | |
|---|---|
| Marital status: | |
| Father's family name: | |
| Father's forename(s): | |
| Mother's maiden name: | |
| Mother's forename(s): | |
| Occupation: | |
| Languages spoken: | Russian |
| Regions/Countries likely to be visited: | Russia |
| Additional information: | |

### Identity documents

| | Nationality | Type | Number | Date of issue | Expiry date | Issued in (Country) | Region and/or town |
|---|---|---|---|---|---|---|---|
| 1 | Russia | Passport | 4510524951 | | | | |

### Identification material

| | |
|---|---|
| Dental information: | |
| Blood group: | Clothing: |
| Jewellery: | Other personal effects: |

### Physical description

| | |
|---|---|
| Height (cm): | Weight (kg): |
| Eyes: | Hair: |
| Build: | Distinguishing marks and characteristics: |

### Addresses

E-mail addresses:

## Case

### Facts of the case

| | |
|---|---|
| NCB case reference: | CYP/INT/540(257/19)AI |
| | INTERPOL General Secretariat case reference: 2019/68079-1 |
| Offence code(s): | COMMERCIAL FRAUD \| FRAUD \| THEFT |
| Date: | From 01/01/2006 To 31/12/2006   Place: Cyprus |
| Summary in English: | The complainant, Russian National, is the owner of the company ORLANDO HEIGHTS LIMITED. The shareholder of the a/m company is the company FELDMANS MANAGEMENT (OVERSEAS) LTD, which is also the trustee of the complainant. In 2006 the subject convinced the complainant to be a part of a |

construction project as an investor. During their cooperation, between the years 2006 –2012 the subject manage to deceive the representative of the company FELDMANS MANAGEMENT (OVERSEAS) LIMITED, to transfer shares of a company belonging to a company of the complainant to his name in violation of the declaration of trust which was signed by the subject as well as the complainant. Furthermore, during the same time period the subject while he was one of the trustees, by fraud, he manage to dispose property of the trust-fund total worth of 141.430.000 USD. All the above were made without the knowledge and the consent of the complainant.

Summary in French:
Summary in Spanish:
Summary in Arabic:
Additional facts of the case:

## Action to be taken

Locate and arrest with a view to extradition: Assurances are given that extradition will be sought upon arrest of the person, in conformity with national laws and/or the applicable bilateral and multilateral treaties.

Provisional arrest: This request is to be treated as a formal request for provisional arrest, in conformity with national laws and/or the applicable bilateral and multilateral treaties.

### Judicial information

| Information concerning a Judicial decision 1/1 | Fugitive wanted for prosecution |
| --- | --- |
| Charge(s) on which convicted: | 1. Stealing of Shares 2. Trustees fraudulently disposing of trust property. |
| Law covering the offence(s): | 1. Chapter 154, Article 255 2. Chapter 154, Article 310 and Article 5(1)(E)(VII) |
| Maximum penalty possible: | 10 Years imprisonment |
| | Details: |
| Time-limit for prosecution or expiry date of arrest warrant or judicial decision having the same effect: | |
| Arrest warrant or judicial decision having the same effect | No. No Number issued on 13/06/2019 by Nicosia District Court, Cyprus |
| Name of signatory: | Attached arrest warrant: No |

## Please send any information about this person to INTERPOL

| NCB message reference: | CYP/INT/540(257/19)AI | Of: 28/06/2019 |
| --- | --- | --- |
| Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your notice application: | No | |
| Reasons justifying Internet publication: | | |

### Signature

| Name of the officer in charge of this matter: | PC 4100 A. Ioannidou |
| --- | --- |
| Telephone and/or fax numbers of the officer in charge of this matter: | tel.: +35722607841, fax.: +35722607898 |
| E-mail address: | ncb.nicosia@cy.igcs.int |

# Exhibit I



# AG denies corruption charges



*File photo: Attorney-General George Savvides*

**Cyprus**

**Tuesday 30 January | 19:28**

8 Comments

By <u>Andria Kades</u>

Share:

      

Attorney General George Savvides strongly denied corruption charges on Tuesday after a lawyer accused his office of collaborating with a billionaire Russian oligarch to allow an allegedly illegal $113.4 million deal go unpunished.

In a lengthy letter to President Nikos Christodoulides, lawyer Efstathios Efstathiou sought to report the AG and his deputy, saying they had "cast a shield of protection" around Russian oligarch Oleg Boyko.

Prompting the complaint is Efstathiou's claim that $113.4 million worth of shares were stolen from his client Ilya Alekseevitch Surkov and illegally transferred to Boyko through Cyprus-registered companies.

  SEARCH

~~Shares in a Russian mall~~

This was achieved after Boyko allegedly used false representations to illegally transfer all the shares that Orlando Heights Ltd had in Greencat Services Ltd, to one of his own interests Finstroy Ltd, the last two of which are registered in Cyprus.

As such, he ended up holding 80 per cent of the assets Orlando Heights had in Moscow's Altufievo Mall, without Surkov knowing about it, the lawyer claims.

Nonetheless, criminal charges against Boyko were dropped by the legal service, citing insufficient witness material for a criminal prosecution in Cyprus.

**A few million to 'sort out' the case**

Efstathiou cried foul, saying this went against the public interest, He also filed three separate complaints to the anti-corruption authority.

The authority's head Charis Poyiadjis told the *Cyprus Mail* "we did not find any evidence of corruption."

Efstathiou claimed Boyko said he spent three million in Cyprus to "sort out his case" and therefore had "nothing to be afraid of".

The AG hit back, rubbishing the claims, saying the lawyer was using every means possible to exert pressure that could ultimately lead to decisions that would benefit his client.

**Fake representations**

The alleged offences took place in 2012.

Efstathiou told the *Cyprus Mail* the two businessmen had a deal allowing shares of 64,000m² of property at the mall to be transferred but 126,000m² ended up being transferred.

This was a result of false representations by Boyko's partner in Cyprus, that convinced the trustee to sign the transfer, he claimed.

**International arrest warrant**

According to Efstathiou, the oligarch avoided questioning for four years, prompting police to issue a Red Notice international arrest warrant, where Boyko became a wanted man in Cyprus.

Efstathiou claims after the arrest warrant, Boyko sent a team of his lawyers to meet with police and the legal service.

For unknown reasons, the arrest warrant was then scrapped.

The private lawsuit filed by Efstathiou over the case was also suspended following orders by the AG, citing insufficient witness material.

## Sketchy background

Both businessmen implicated in the story which Efstathiou described as "the largest in Cyprus' criminal history" have made headlines across the globe.

Surkov was wanted in Russia for alleged fraud, and is reported to hold a Greek passport. Though he was jailed in Russia, Surkov eventually made it to the UK.

Russian authorities sought to extradite him, however a British court ruled he would be in danger of persecution and as such, was allowed to remain in the UK on political asylum grounds due to humanitarian protection.

Boyko had been sanctioned by Canada and Australia following Russia's invasion of Ukraine, though Canada lifted the sanctions following a lawsuit.

The US Senate Intelligence Committee reportedly said Boyko had "concerning ties" to the Russian state and criminality.

---

### Follow Cyprus Mail on Google News

---

( attorney genereal ) ( featured ) ( george savvides ) ( sanctions )

**Share:**

      

# Exhibit J

1
2
3

ALEXEY KONDRATIEV
3045 16th Sideroad,
King City, Ontario L7B1A3
Canada

4

*Pro Se Defendant*

5

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF ARIZONA

8

9

10

Oleg Boyko, et al.

11

Plaintiffs,

12

v.

13

Alexey Kondratiev, et al.

14

Defendants.

15

**No. CV-23-01186-PHX-DLR**

**DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION TO THE PLAINTIFF OLEG BOYKO**

16

17

18

19

20

21

22

23

        Pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 34, Defendant Alexey Kondratiev hereby requests that the Plaintiff Oleg Boyko produces for inspection and copying the following documents to 3045 16th Sideroad, Ontario, Canada L7B 1A3, in accordance with the Definitions and Instructions set forth below. Responses to these requests must be produced within thirty (30) days after service in accordance with FRCP 34.

24

25

26

27

28

**DEFINITIONS**

        Except as specifically defined below, the terms used in these requests shall be construed and defined in accordance with the FRCP, wherever applicable. Any terms not defined shall be given their ordinary meaning.

1. The term "Answer" means the Answer filed by You on August 9, 2023, in the above-captioned action (ECF No. 24).

2. The term "Communication(s)" means the transmittal, transfer, offer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise) by any means, and shall include, without limitation, text messages in any format (e.g., SMS, MMS, IMessage, etc.).

3. The term "Complaint" means the complaint filed on June 27, 2023, in the above-captioned action (ECF No. 1).

4. The terms "Concerning," "Reflecting," "Regarding," and "Related To" mean analyzing, describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverting, contradicting, pertaining to, made in connection with or by reason of, or derived or arising therefrom, or being in any way legally, logically, or factually concerned with the matter described, referred to, or discussed.

5. The term "Document(s)" is synonymous in meaning and scope to the term "document" as used in FRCP 34, including "writings" and "recordings" as defined in Federal Rule of Evidence 1001. It includes, but it not limited to, all written, printed, typed, recorded or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft versions) in your actual or constructive possession, custody, care or control, including without limitation all writings, correspondence, e-mails, letters, telegrams, notes, mailgrams, cellphone texts, agenda,

memoranda, inter-office communications, reports, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably useable form, computer inputs or outputs, or any other tangible thing. The term "Document(s)" includes not only originals, but also any copies or reproductions upon which notations in writing, print, or otherwise have been made which do not appear in the original.

6. The term "Person" means any individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, including its present and former officers, members, managers, directors, partners, employee, independent contractors, agents, accountants, representatives, and attorneys.

7. The terms "You" and "Your" mean Defendant Alexey Kondratiev and his agents, employees, representations, successors, predecessors, attorneys, and/or anyone acting or purporting to act on his behalf.

**INSTRUCTIONS**

1. You shall produce materials and serve responses and any objections on the Defendant within 30 days after service of these requests for production.

2. Pursuant to FRCP 34(b)(2)(B) and (C), if you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. All objections must be noted with specificity. Any ground not stated in a timely objection is waived.

3. With respect to any document withheld on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by FRCP 26(b)(5), including a description of the basis of the claimed privilege and all information necessary for Defendant to assess the claim of privilege.

4. In accordance with the FRCP, the scope of discovery sought through these requests for production extends to all relevant and non-privileged materials that might reasonably lead to the discovery of admissible evidence. You should produce all documents available to you or subject to your access or control that are responsive to the requests for production. This includes documents in your actual or constructive possession or control, as well as any non-privileged information in the actual or constructive possession or control of your attorneys, investigators, experts, agents, and any other persons acting on your behalf.

5. Documents are to be produced as they are kept in the ordinary course of business. Accordingly, documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to this request should be produced intact with the documents; and documents attached to each other should not be separated.

6. Subject to any Electronically Stored Information order subsequently entered in this case, all documents are to be produced in electronic form pursuant to these instructions. All documents, including emails, should be produced in single page .TIFF format, showing comments and track changes where applicable, with text extract and

database load files containing standard fielded information and metadata. .TIFF images shall be placed in an Images folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an .opt and .dat load files placed in a Data folder. If files are produced in native format, those natively-produced documents should be accompanied by a placeholder and OCR/extracted test file. Each page of a document should be assigned a unique production number (aka Bates number) electronically "burned" onto the image at a location that does not unreasonably conceal or interfere with information on the document. The Bates numbering convention should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a number or set of numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.

7. If there are no documents responsive to a particular request, so indicate in your response.

8. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, as well as describe in full the circumstances surrounding its destruction, loss, or other disposition from your possession or control.

9. These requests for production are continuing in nature, up to and during trial.

Materials sought by these requests for production that become available after you serve your responses must be disclosed to the Defendant by supplementary response or responses.

10. Pursuant to FRCP 26(e), you are under a duty to promptly supplement or correct your responses to these requests for production if you learn that an answer is in some material respect incomplete or incorrect. If you expect to obtain further information or expect the accuracy of a response given to change between the time responses are served and the time of trial, you should state this fact in each response. Supplementary answers are to be served upon the Defendant as soon as practicable after you receive this new information, but, in any event, no later than 14 days after its receipt.

11. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any document request or any subsection thereof, then in response to the appropriate document request: (a) produce all such documents as are available to you without undertaking what you contend to be an unreasonably burdensome effort; (b) describe with particularity the efforts made by you or on your behalf to produce such documents, including identification of persons consulted, description of files, records and documents reviewed, and identification of each person who participated in the gathering of such documents, with specification of the amount of time spent and the nature of work done by such person; and (c) state with particularity the grounds upon which you contend the additional efforts to produce such documents would be unreasonably burdensome.

12. The singular shall be read to include the plural and vice versa, the gender of a

pronoun (masculine, feminine, or neutral) shall not exclude the other genders, the present tense shall be read to include the past tense and vice versa, the term "each" shall be read to include the term "every" and vice versa, the term "any" shall be read to include the term "all" and vice versa, and the term "and" shall be read to include the term "or" and vice versa, so as to encompass the broadest possible interpretation for each request.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, including communications, that confirm that Mr. Boyko is a citizen of Italy and resident of Switzerland as stated in paragraph 6 of the Complaint.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, including communications, that confirm that Mr. Kondratiev provided services to the corporations owned by Mr. Boyko as stated in paragraph 13 of the Complaint.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, including communications, that confirm that Mr. Kondratiev "also added Boyko as a cross-defendant" to the litigation with Arcadia as stated in paragraph 15 of the Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, including communications, that confirm that Mr. Kondratiev "repeatedly accused Boyko of alleged criminal conduct and engaged in efforts to injure Boyko's business reputation" as stated in paragraph 17 of the Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, including communications, that confirm that Mr. Kondratiev has extorted monetary payments from Mr. Boyko as stated in paragraph 17 of the Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, including communications, that confirm that Mr. Kondratiev registered and "repeatedly altered" <olegvboyko.website> as stated in the paragraph 18 of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, including communications, regarding allegations of Mr. Boyko engagements in illegal activity and affiliations with organized crime as stated in paragraph 19 of the Complaint.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, including communications, regarding Mr. Boyko's involvement with National Credit Bank and OLBI-USA as stated in paragraph 19 of the Complaint.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, including communications, regarding Mr. Boyko's financing of Hollywood movies as stated in paragraph 19 of the Complaint.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents, including communications, that prove that Mr. Kondratiev "has registered, trafficked in, and/or used" <olegvboyko.website> with the intent to profit from the Boyko Mark as stated in paragraph 32 of the Complaint.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, including communications, that prove that Mr. Kondratiev

"registered, trafficked in, and/or used the alleged Defendant Domain name to divert customers from the legitimate https://oleg-boyko.com website" as stated in paragraph 37 of the complaint.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, including communications, that prove that the "registrant of the alleged Defendant Domain name registered the <olegvboyko.website> with intent to divert consumers seeking information about Boyko online away from Boyko's legitimate site https://oleg-boyko.com for commercial gain" as stated in paragraphs 40-41 of the Complaint.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, including communications, regarding the claim that any potential customer has been diverted from the "legitimate" web site as stated in paragraphs 40-41 of the Complaint.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, including communications, that indicate that Mr. Kondratiev intended to profit or profited from the alleged Defendant Domain name as stated in paragraph 44-45 of the Complaint.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, including communications, that indicate that Mr. Kondratiev received any monetary or other benefits from the alleged Defendant Domain name.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, including communications, that prove that the Plaintiff Finstar has

suffered damage and/or irreparable harm as stated in paragraph 47.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, including communications, that prove that Mr. Kondratiev has used the alleged Defendant Domain name in bad faith.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, including communications, that confirm that Mr. Boyko has sustained monetary damages and irreparable injury in relation to the alleged Defendant Domain name as stated in paragraph 57.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, including communications, that indicate the number of potential customers, current customers or other people that have been diverted from the allegedly "legitimate" site https://oleg-boyko.com to the alleged Defendant Domain name.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, including communications, that confirm that Mr. Boyko, directly or indirectly, owned an apartment in Trump Tower as stated on the web site with the alleged Defendant Domain name.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, including communications, that prove or disprove information contained in Sections A, B, C and D on the web site with the alleged Defendant Domain name accessible at URL http://www.olegvboyko.website/review.html

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, including communications, regarding relationship with

Trincher/Nahman gambling ring as stated on the web site with the alleged Defendant Domain name.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, including communications, regarding Mr. Boyko's relationship with 4finance as stated on the web site using the alleged Defendant Domain name.


Dated November 6, 2023

By: /s/ Alexey Kondratiev
Alexey Kondratiev
Pro Se *Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of November 2023, I served a copy of Defendant's First Set of Requests for Production on the Attorneys for Plaintiffs Oleg Boyko and Finstar-Holding LLC via electronic mail – from my e-mail address <akondratiev@mac.com> to the following e-mail addresses:

<astolyar@loeb.com>

<dbeddingfield@loeb.com>

<jmargolis@loeb.com>

<amy@fennemorelaw.com>

<bgilmore@fennemorelaw.com>

By: /s/ Alexey Kondratiev
Alexey Kondratiev

DE64

# Exhibit K

1  ALEXEY KONDRATIEV
2  3045 16th Sideroad,
   King City, Ontario L7B1A3
3  Canada

4  *Pro Se Defendant*

5

6                    UNITED STATES DISTRICT COURT

7                        DISTRICT OF ARIZONA

8

9

10  Oleg Boyko, et al.                    | **No. CV-23-01186-PHX-DLR**

11              Plaintiffs,               | **DECLARATION OF ALEXEY**
                                          | **KONDRATIEV IN SUPPORT OF**
12        v.                              | **HIS RESPONSE TO THE MOTION**
                                          | **FOR PARTIAL SUMMORY**
13  Alexey Kondratiev, et al.             | **JUDJEMENT**

14              Defendants.

15

16

17              **<u>DECLARATION OF ALEXEY KONDRATIEV</u>**

18
19        I, Alexey Kondratiev, hereby declare and swear as follows:

20        1.      I am an individual residing in King City, Ontario, Canada. I make this

21  Declaration in support of my response to the motion for Preliminary Injunction that was

22  brought forward by the Plaintiffs.

23
24        2.      I graduated from Moscow Aviation Institute, a Russian technical university,

25  in 1987 with a master's degree in computer science and I have over 35 years of professional

26  experience in this field.

27        3.      Presently, I am a Senior Software Engineer at Advanced Micro Devices, Inc.
28

("AMD") where I have been working full-time since October 16, 2012. AMD is an American multinational corporation and semiconductor company based in Santa Clara, California, that develops computer processors and related technologies for business and consumer markets.

4.    I believe that my training and experience allow me to make the following statements as an expert.

5.    On or about Mach 21, 2024, I received a file named "BOYKO00000963.mbox" amongst other files produced by the Plaintiffs in their response to the Second Request for Production.

6.    I have personally examined this file using computer tools and am qualified to make the following statements regarding this file.

7.    The file "BOYKO00000963.mbox" is a text file with the size of 61.8 Megabytes. Any attempt to print this file would yield more than fifteen thousand pages.

8.    Upon visual inspection of this file with a text editor, I can conclude that this file contains meta-data generated by Google from a mailbox that belongs to the account "billyzodiac100@gmail.com".

9.    The file is organized into records that are separated by two empty lines. Each record corresponds to an email message that is stored in the mailbox and has a unique identifier. The records do not contain subject lines or message contents. Instead, the records only contain the "From:" field, the "Reply-to:" field, the date of each message and other meta-data that can identify an email exchange server, spam filters, content language, etc.

10.    Using computer tools, I counted 19,953 unique message identifiers that

correspond to the same number of messages contained in that mailbox. The first message was created on August 11, 2014 and the last message was created on November 9, 2023. The even distribution of the messages across those years is consistent with normal business practices. There were no indications that this mailbox was specifically created for one-time use in order to register a domain in or around 2017.

11.    I searched for the following case-insensitive text strings in a text editor used to open the file for and found no matches for "alexey", "kondratiev", "akondratiev", or "akond".

12.    I have searched my own computers and found no records matching "billyzodiac100@gmail.com". To my best knowledge, I have never communicated with this account and am not aware of any person who could be associated with it.


I declare under penalty of perjury under the laws of the United States and the State of Arizona that the foregoing is true and correct.

Executed on June 5, 2024, at King City, Ontario, Canada


_____

Alexey Kondratiev