**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, et al., | No. CV-23-01186-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Alexey Kondratiev, et al., | |
| Defendants. | |

This case arises from the registration and use of the domain name <olegvboyko.website> ("Domain"). Plaintiffs Oleg Boyko and Finstar-Holding LLC ("Finstar") claim that Defendant Alexey Kondratiev registered the Domain and that Kondratiev uses it to tarnish and disparage the Oleg Boyko name ("Boyko Mark"), which Finstar registered with the Patent and Trademark Office ("PTO") as a service mark. Before the Court is Plaintiffs' motion for partial summary judgment on the issue of Defendant's liability for cybersquatting in violation of 15 U.S.C. § 1125(d)(1) (Doc. 60). The motion is fully briefed.[1] (Docs. 61, 62, 66.)[2] For the reasons set forth herein, the Court grants the motion.

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] Plaintiffs' reply requested the Court strike Kondratiev's response as unresponsive because Kondratiev did not sign it. The Court instead ordered Kondratiev to correct the deficiency on or before March 7, 2025. (Doc. 65.) Kondratiev timely refiled his reply with a signature (Doc. 66), so the Court refers to that version throughout.

**I.   Background**

   **a. Facts**

Boyko is Chairman of Finstar Financial Group ("Finstar Financial"), an international private equity and investment advisory group. (Doc. 60-4 at 9.) Boyko also owns Plaintiff Finstar, a Russian company and member of the Finstar Financial family of companies. (*Id.*) In 2015, Boyko created a website available at <https://oleg-boyko.com/.> (*Id.*) Finstar owns protectable interests in the registered international trademark consisting of the name "Oleg Boyko." (*Id.* at 192–201.) It similarly obtained a United States service mark consisting of the name "Oleg Boyko" in 2022. (*Id.* at 203–04.)

Kondratiev is a Canadian citizen who previously sued Boyko and a New York company affiliated with Finstar Financial in the Ontario Superior Court of Justice in separate but related lawsuits. (*Id.* at 184–85.) In Kondratiev's suit against Boyko, he accused Boyko of criminal conduct and sought ten million dollars in damages. (Doc. 60-2 at 28–43.) In August 2017, shortly after dismissal of Kondratiev's suit against Boyko was confirmed on appeal, the Domain was registered with Namecheap, a domain name registrar. (Doc. 60-3 at 57.) A website linked to the domain was then created and populated with information about Boyko ("Website"), including allegations of criminality. (*Id.* at 70; Doc. 60-4 at 1–2.)

Documents produced by Namecheap list "Anna Lee" as the registrant contact and show that Anna Lee made multiple payments to maintain the Domain. (Doc. 60-1 at 101, 152–54.) But the registrant's phone number is Kondratiev's phone number, and the registrant's listed address is the address of the Ontario Superior Court of Justice. (*Id.* at 101.) Since the Website's creation, two different web hosting providers have hosted it: DreamHost and Cloudflare. (*See id.* at 13, 84.) The Website is registered to user "Anna Lee." (*Id.* at 84.) But Kondratiev's phone number and home address are listed for the registrant's contact information. (*Compare id.* at 13–14, 84, *with id.* at 169–70.) While DreamHost was the provider, the registrant's Web ID was "alekon16." (*Id.* at 84.) And the Website's registrant's Web ID number on Cloudflare, the current provider, belongs to

Kondratiev. (*Id.* at 13–14.) PayPal, an online payment system company, produced documents showing that, on the date the Website was created, Kondratiev changed the name and address on his account to "Anna Lee" and the address of the Ontario Superior Court of Justice. (*Id.* at 148.) The documents also show that the Kondratiev/Lee account made several dozen payments over a period of seven years for maintenance of the Domain and Website. (*Id.* at 137–43.)

### b. Procedural Posture

Plaintiffs are suing Kondratiev and the Domain. Their complaint alleges three Counts: (1) a violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), by Finstar against Kondratiev; (2) a violation of 15 U.S.C. § 8131, by Boyko against Kondratiev; and (3) an in rem ACPA claim against the Domain, seeking transfer of the Domain to Finstar. (Doc. 1 at 6–10.) The Court granted Plaintiffs a temporary restraining order which it later converted into a permanent injunction, ordering that Kondratiev refrain from transferring the Domain from Namecheap to any other registrar. (Doc. 14 at 7.) Plaintiffs move for summary judgment on the issue of Kondratiev's liability for Count I and seek the equitable remedy of the transfer of the Domain to Finstar under Count III. (Doc. 60 at 7.)

## II.     Legal Standard

Federal Rule of Civil Procedure 56(c) permits courts to award partial summary judgment on the issue of liability. *White v. Lee*, 227 F.3d 1214, 1240 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing the facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

"The moving party who has the burden of proof on the issue at trial must establish

all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law." *Holeman v. Neils*, 803 F. Supp. 237, 241 (D. Ariz. 1992). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation and citation omitted). "Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question." *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Analysis**

The Court first considers Plaintiffs' evidentiary objections to Kondratiev's exhibits before turning to the merits. The Court will then consider Kondratiev's laches defense before determining whether Plaintiffs are entitled to judgment on the liability issue.

**a. The Court will not consider the exhibits attached to Kondratiev's brief because they are inadmissible.**

Plaintiffs object to Kondratiev's exhibits for several reasons. Two of those objections do away with all of the exhibits. They first object to Kondratiev's declaration (Doc. 66-1 at 65–68) because it is an improper expert opinion. Pursuant to the Court's scheduling order, the parties were required to make "full and complete expert disclosures as required by Rule 26(a)(2)(A)–(C) of the Federal Rules of Civil Procedure no later than May 31, 2024." (Doc. 42 at 2.) Kondratiev did not disclose himself as an expert, so the Court does not consider his declaration, wherein he opines as an expert, as evidence in support of his defense. (*See* Doc. 66-1 ¶ 4.)

Plaintiffs also object to the rest of Kondratiev's exhibits (Doc. 66-1 at 1–64) because they are unauthenticated. "It is well established that unauthenticated documents cannot be considered on a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). Kondratiev's exhibits do not include the requisite affidavits necessary to authenticate them, *see id.* at 1550–51, so the Court does not consider those remaining exhibits.

### b. Kondratiev waived his laches defense by failing to raise it in his Answer.

In response to Plaintiffs' motion, Kondratiev argues that the equitable doctrine of laches bars the suit. (Doc. 66 at 3.) Plaintiffs argue that Kondratiev waived this affirmative defense by failing to plead it in his Answer. (Doc. 62 at 8.) Federal Rule of Civil Procedure 8(c) requires that a defendant "affirmatively state any avoidance or affirmative defense including . . . laches" in a responsive pleading. *See also* Fed. R. Civ. P. 12(b) ("Every defense . . . must be asserted in the responsive pleading[.]"). "As a general rule, affirmative defenses are waived if not raised in the answer or first responsive pleading." *Lexcel Sols., Inc. v. MasterCard Int'l, Inc.*, No. CV 03-1454-PHX-JAT, 2005 WL 8160871, at *2 (D. Ariz. Mar. 25, 2005) (quoting *Nardi v. Stewart*, 354 F.3d 1134, 1140 (9th Cir. 2004)). The Ninth Circuit, however, has softened this rule, holding that affirmative defense may only be raised for the first time at summary judgment if the delay does not prejudice the plaintiff. *Magana v. N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). "To determine whether a failure to plead an affirmative defense constitutes waiver, courts often examine whether the respondent had knowledge of facts necessary to make an affirmative defense and any prejudice to the adverse parties resulting from the failure to plead the defense." *Lexcel Sols.*, 2005 WL 8160871, at *2.

Plaintiffs assert that they are prejudiced by Kondratiev's failure to raise a laches defense in his Answer as they can no longer conduct discovery into the defense or prepare a rebuttal to it. (Doc. 62 at 9.) The Court agrees. Plaintiffs "did not have notice of the affirmative defenses until after the close of discovery, [so their] ability to defend against

- 5 -

such defense[] was severely hindered." *Id.* at *3. Arguably, by including a statute of limitations defense in his Answer, Kondratiev provided some notice about the possibility of raising laches, but this fact does not save him. In *Lexcel Solutions*, the plaintiff admitted to "perceiving" a potential defense that the defendant failed to raise in its answer, but the Court nonetheless found the defendant waived its defense. *Id.* Though the plaintiff "conducted some discovery on the waiver defense, because it lacked *adequate* notice . . . , it was foreclosed from conducting a more extensive and thorough range of discovery." *Id.* (emphasis added). The same is true here, and thus, Defendant may not raise his laches defense.[3]

### c. Plaintiffs are entitled to judgment as a matter of law on the issue of Kondratiev's liability under the ACPA.

Plaintiffs move for summary judgment on Count I and Count III, asserting that there is no genuine dispute of material fact as to whether Kondratiev violated the ACPA and that Finstar is entitled to have the domain name transferred to it. (Doc. 60 at 16.) The ACPA amended the Trademark Act of 1946 to create a specific remedy for cybersquatting. *Domain Name Clearing Co. v. F.C.F., Inc.*, No Civ.A. 00-CV-1305-A, 2000 WL 33950021, at *2 (E.D. Va. Oct. 20, 2000). The ACPA provides that a person is civilly liable to a registrant of a mark, including a personal name protected as a mark, if that person:

> (i) has a bad faith intent to profit from that mark, . . . and (ii) registers, traffics in, or uses a domain name that (I) in the case of a mark that is distinctive at the time of registration of the domain name is identical or confusingly similar to that mark; [or] (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark[.]"

15 U.S.C. § 1125(d)(1)(A). Thus, the plaintiff in a cybersquatting action must show that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name

---

[3] In any event, the Court has already decided it cannot consider the exhibit Kondratiev submitted in support of his laches defense (Doc. 66-1 at 1–9). *See supra* Section III.A. Besides being inadmissible for lack of foundation, there is no certified translation for the document, which appears to be written in Russian. *See Heary Bros Lightning Prot. Co., Inc. v. Lightning Prot. Inst.*, 287 F. Supp. 2d 1038, 1074 (D. Ariz. 2003), *aff'd in part, rev'd in part on other grounds by,* 262 Fed. App'x 815 (9th Cir. 2008) (striking evidence as inadmissible for lack of certified translation).

is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)(i))). The Court examines each element in turn.

*Element one.* Plaintiffs' evidence demonstrates that Kondratiev is the registrant of the Domain and the Website. They have shown through documents produced by Cloudflare, DreamHost, and Namecheap that "Anna Lee," the name associated with the Domain, is Kondratiev's alias.

Cloudflare documents show that the User ID number of the registrant of the Website belongs to Kondratiev. (Doc. 60-1 at 13–14.) The same documents also list Kondratiev's email as "alrapu@proton.me." (*Id.* at 14.) The Cloudflare billing account information lists Kondratiev as the "Responsible Party" with the associated email address "annalee_rapu@gmx.com." (*Id.* at 21.) DreamHost's account information lists "Anna Lee" as the registrant, but the Web ID name is "alekon16"—the first three letters of the first and last name Alexey Kondratiev. (*Id.* at 84.) The associated email addresses are "annalee_rapu@gmx.com" and "alrapu@proton.me." (*Id.*) Under a section titled "Payment Information," the owner is listed as "alekon16" with the "Payment Account Email" listed as "akondratiev@mac.com." (*Id.*) Namecheap records show that "Bei Wang" with the email address "billyzodiac100@gmail.com" registered the domain. But the same records list the Domain's registrant contact as Anna Lee and the address as the address of the Ontario Superior Court of Justice. (*Id.* at 101.) Notably, this is the same address Kondratiev listed on his PayPal account after the name on the account was changed to Anna Lee. (*See id.* at 148.) PayPal documents connect Kondratiev with the "annalee_rapu" and "akondratiev" email addresses and confirm Kondratiev made payments to Cloudflare, Dreamhost, and Namecheap to create and maintain the Domain and Website. (*Id.* at 137–42, 158–60.) Altogether, Plaintiffs have carried their burden to show that Kondratiev is the true registrant.

"When the moving party has carried its burden under Rule 56(c), its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (quoting Fed. R. Civ. P. 56(c), (e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287 (1968)). Kondratiev's response has not shown a *genuine* dispute of fact. Kondratiev does not seriously dispute that he is behind the "Anna Lee" alias. He provided his phone number and address in his deposition, and they are the same as those listed for Anna Lee's contact information on every account. He offers no evidence of fraud or mistake. Instead, he argues that "Bei Wang" is the true registrant of the Domain, and the registration has remained in that name since its creation. (Doc. 66 at 10–11.) He highlights the lack of evidence connecting him to the "Bei Wang" name. (*Id.* at 11.) While it is true that Namecheap's records show that "Bei Wang" initially, the registrant contact is Anna Lee, and the "Anna Lee" name is indisputably Kondratiev's alias.

In any event, ACPA liability extends to a person who merely *uses* a domain name as long as he is the "registrant's authorized licensee." 15 U.S.C. §§ 1125(d)(1)(D). And "the language of the ACPA does not limit an 'authorized licensee' to only those explicitly called licensees in the agreement." *Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWx), 2010 WL 11463697, at *5 (C.D. Cal. Sept. 20, 2010). Because "use alone is enough to support a verdict," *Nahum*, 624 F.3d at 1219, and Kondratiev does not seriously dispute his *use* of the domain, he would be liable to Finstar even if the evidence did not conclusively demonstrate he was the registrant. Plaintiffs have satisfied element one of their claim.

*Element two*. Plaintiffs have shown that the domain name is identical or confusingly similar to Plaintiffs' protected mark. They have also demonstrated that their mark is both distinctive and famous. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009).

Registration of a mark supports a finding of distinctiveness, and indeed in some cases, "[r]egistration alone may be sufficient . . . to satisfy a determination of distinctiveness." *Id.* at 1199; *see also* 15 U.S.C. § 1115(a) (PTO registration is "prima facie

evidence of the validity of the registered mark."). Plaintiffs provide the Boyko Mark's registration with the PTO, which alone may suffice, but they also provide evidence of the importance of Boyko's name to Finstar's business. (Doc. 60-1 at 183, 203–04.) Kondratiev does not contest the distinctiveness or famousness of the mark.

The Domain and the Boyko Mark are almost identical. The Domain name is Boyko's full legal name, and Boyko's name is the protected mark that Finstar owns. The Domain is also exceedingly similar to the domain name of Boyko's website. Again, Defendant does not rebut this point. The second element is satisfied.

*Element three.* Lastly, Plaintiffs have shown Kondratiev acted with a bad faith intent to profit. Courts consider several factors to determine whether a registrant acts with "bad faith intent to profit," including: (1) whether the registrant has a trademark or other intellectual property rights in the domain name; (2) whether the domain name consists of a legal name of the registrant; (3) whether the registrant previously used the domain name in the bona fide offering of goods and services; (4) whether the registrant intends to divert consumers from the mark owner's online location to a site accessible under the domain name, whether for commercial gain or to tarnish or disparage the mark; (5) whether the registrant offers to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain; and (6) whether the registrant registered or acquired multiple domain names which he knows are identical, confusingly similar to, or dilutive of other marks. 15 U.S.C. § 1125(d)(1)(B)(V)–(VIII). And "intent to profit" includes "highly offensive conduct, wherein the central purpose of acquiring the domain name[ is] to harass the mark holder[]." *Blair v. Automobili Lamborghini SpA*, No. CV-22-01439-PHX-ROS, 2024 WL 4528164, at *5 (D. Ariz. Oct. 17, 2024); *see also Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1131–32 (D. Colo. 2000); *E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1045 (S.D. Tex. 2001).

The Domain does not consist of Kondratiev's name. Instead, the Domain name is Boyko's full legal name, and Kondratiev cannot have intellectual property rights in it, as it is Finstar's registered service mark. The Domain has never been used in connection with a

bona fide offering of goods or services. The Domain leads to the Website, and the Website is dedicated to publishing disparaging information about Boyko. (Docs. 60-3 at 70; 60-4 at 1–2.) The Domain name is exceedingly similar to the name of Boyko's legitimate website, such that someone looking for information about Boyko would likely end up on the Website or confuse the Website with Boyko's website. (*See* Doc. 60-1 at 178–80.) And because the enumerated factors are not an exhaustive list of what courts can consider in deciding cybersquatting claims, the Court has also chosen to consider, in this instance, the history of Kondratiev's conflict with and litigation against Plaintiffs. *See Sporty's Farm L.L.C. v. Sportman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000). Kondratiev has failed to rebut any of the evidence demonstrating bad faith intent. Plaintiffs have satisfied the third element.

There is no genuine dispute of fact as to Kondratiev's liability under 15 U.S.C. § 1125(d)(1). For the foregoing reasons, Plaintiffs are entitled to judgment as a matter of law on the issue of liability. The Court orders Kondratiev to transfer ownership of the Domain to Finstar.

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Doc. 60) is **GRANTED**. Kondratiev shall, within fourteen (14) days of the entry of this order, transfer the Domain, <olegvboyko.website>, to Finstar.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **April 15, 2025, at 11:00 a.m. (Arizona time)**. Call-in instructions will be provided to the parties via separate email.

Dated this 12th day of March, 2025.

Douglas L. Rayes
Senior United States District Judge