FENNEMORE CRAIG, P.C.
Amy Abdo (No. 016346)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: amy@fennemorelaw.com

LOEB & LOEB LLP
Oleg Stolyar (CA SBN 229265–Pro Hac Vice)
astolyar@loeb.com
Jeremy Margolis (IL SBN 1763865–Pro Hac Vice)
jmargolis@loeb.com
David J. Beddingfield (CA SBN 308491–Pro Hac Vice)
dbeddingfield@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000

*Attorneys for Plaintiffs Oleg Boyko
and Finstar-Holding LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, an individual, and Finstar-Holding LLC, a Russian limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Alexey Kondratiev, an individual, and \<olegvboyko.website\>,<br><br>Defendants. | NO. CV-23-01186-PHX-DLR<br><br>**PLAINTIFFS' MOTION FOR STATUTORY DAMAGES** |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS AND PROCEDURAL HISTORY | 1 |
| | A. Boyko and the Boyko Mark. | 1 |
| | B. Kondratiev's Prior Unsuccessful Lawsuit Against Boyko. | 2 |
| | C. After His Lawsuit Against Boyko Was Dismissed, Kondratiev – under the Alias "Anna Lee" – Registered the Infringing Domain to Tarnish and Disparage Boyko and the Boyko Mark. | 3 |
| | D. Plaintiffs Institute This Action, and the Court Finds Kondratiev Liable for Cybersquatting and Orders the Transfer of the Infringing Domain. | 5 |
| III. | PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES | 6 |
| | A. Legal Standard for Assessing the Proper Amount of Statutory Damages | 6 |
| | B. Maximum Statutory Damages of $100,000 against Kondratiev Are Warranted by, inter alia, the Egregiousness of the Cybersquatting, Kondratiev's Use of False Contact Information, and His History of Contempt for Court Proceedings Involving Boyko. | 7 |
| | 1. Kondratiev's Use of Boyko's Correctly-Spelled Name and Kondratiev's Clear Intent to Disparage and Tarnish the Boyko Mark Demonstrate the Egregiousness of His Conduct. | 7 |
| | 2. Kondratiev's Use of the "Anna Lee" Alias to Conceal His Illegal Actions Warrants the Imposition of Maximum Statutory Damages. | 8 |
| | 3. Kondratiev's Contemptuous Behavior and Conduct in This Action Warrant the Imposition of Maximum Statutory Damages. | 9 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acad. of Motion Picture Arts & Sci. v. Godaddy, Inc.*,
  2015 U.S. Dist. LEXIS 186631 (C.D. Cal. Apr. 10, 2015) ......................................... 10

*BioCryst Pharms, Inc. v. Namecheap.com, et al.*,
  2006 U.S. Dist. LEXIS 98340 (C.D. Cal. Nov. 21, 2006) .......................................... 13

*CrossFit, Inc. v. Jenkins*,
  69 F. Supp. 3d 1088 (D. Colo. 2014) ......................................................................... 12

*Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*,
  2021 U.S. Dist. LEXIS 233324 (N.D. Cal. Oct. 21, 2021) *report and
  recommendation adopted,* 2021 U.S. Dist. LEXIS 233283 (N.D. Cal.
  Nov. 16, 2021) ............................................................................................................ 13

*Facebook, Inc. v. Banana Ads LLC*,
  2013 U.S. Dist. LEXIS 65834 (N.D. Cal. Apr. 30, 2013) ........................................... 11

*Facebook, Inc. v. Onlinenic Inc.*,
  2022 U.S. Dist. LEXIS 113060 (N.D. Cal. Mar. 28, 2022) ......................................... 12

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) .......................................................................... 15

*M.I.B. Grp. LLC v. Aguilar*,
  2024 U.S. Dist. LEXIS 126132 (C.D. Cal. Jul. 16, 2024) ........................................... 11

*Platinum Props. v. Sells*,
  2021 U.S.Dist. LEXIS 203146 (S.D.Fla. Feb. 8, 2021) ................................................ 8

*Translucent Communs., LLC v. Ams. Premiere Corp.*,
  2010 U.S. Dist. LEXIS 16459 (D. Md. Feb. 24, 2010) .............................................. 13

*Two Plus Two Publ'g, LLC v. Jacknames.com*,
  572 Fed. Appx. 466 (9th Cir. 2014) ........................................................................... 10

*Verizon California Inc. v. OnlineNIC, Inc.*,
  2009 U.S. Dist. LEXIS 84235 (N.D. Cal. Aug. 25, 2009) .............................. 11, 12, 14

*Yuga Labs, Inc. v. Ripps*,
  2023 U.S. Dist. LEXIS 192487 (C.D. Cal. Oct. 25, 2023) ......................................... 10

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
Phoenix

ii

**Statutes**

15 U.S.C. § 1117(d) ................................................................................................. *passim*

15 USC § 1125(d)(1) ............................................................................................. 5, 9, 10, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Oleg Boyko ("Boyko") and Finstar Holding LLC ("Finstar", and together with Boyko, "Plaintiffs") move for the imposition of the maximum allowable statutory damages of $100,000 against Defendant Alexey Kondratiev ("Kondratiev"), pursuant to 15 USC § 1125(d)(1) and 15 U.S.C. § 1117(d).

Kondratiev has already been found liable to Finstar for cybersquatting under 15 USC § 1125(d)(1), and the infringing and defamatory domain that he registered – the <olegvboyko.website> (the "Infringing Domain" or "Domain") has been ordered to be transferred to Finstar. *See* ECF 67 at 10. This motion for statutory damages is necessary to compensate Plaintiffs, as well as to deter further infringing conduct by Kondratiev.

An award of the maximum allowable statutory damages is justified here due to: (i) the egregiousness of Kondratiev's cybersquatting, which included using Boyko's full name, correctly spelled, in the Infringing Domain, and the malice underlying the false and disparaging content displayed on the website linked to that Domain; (ii) Kondratiev's knowing and intentional use of false contact information designed to obscure and conceal his ownership of, and responsibility for, the Infringing Domain; (iii) the false testimony Kondratiev has given in this action in an effort to conceal his wrongful conduct; (iv) Kondratiev's past abuses of process and vexatious litigation against Boyko; and (v) Kondratiev's ongoing violations of Section 1125(d)(1), even after this Court issued its preliminary injunction order in this action.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Boyko and the Boyko Mark.

Plaintiff Boyko is a citizen of Italy and resident of Switzerland. ECF 60-4 at Ex. 29, ¶2 (COE393). Boyko is a well-known international investor, philanthropist, and beneficial owner and Chairman of Finstar Financial Group ("Finstar Financial"), an international private equity and investment advisory firm that was established in 1996. ECF 60-4 at Ex. 29, ¶3 (COE393).

Finstar Financial manages more than $2 billion of assets and has a diversified investment footprint in more than 30 countries, including the United States. *Id.*; *see also* ECF 60-1 at Ex. 8, ¶4 (COE181). Investors who choose to invest their money with Finstar Financial do so primarily based on Boyko's reputation as a successful investor and entrepreneur. ECF 60-1 at Ex. 8, ¶10 (COE182). Boyko's name is inherently and inextricably associated with, and linked to, Finstar Financial and the Finstar Group. *Id.* As a result, Boyko's name and the Boyko Mark (and the ability to protect it) are vital not only to Boyko, but to the financial success of the Finstar Group and the entities therein. *Id.*

Plaintiff Finstar is a limited liability company, organized and existing under the law of the Russian Federation, with its principal place of business in Moscow, Russia. ECF 60-1 at Ex. 8, ¶6 (COE181). Boyko is the ultimate beneficial owner of Finstar, which is part of the same group of companies as Finstar Financial. ECF 60-1 at Ex. 8, ¶¶2, 6 (COE181); ECF 60-4 at Ex. 29, ¶2 (COE393). Finstar is the owner of protectable interests in a registered international trademark consisting of the name "Oleg Boyko." ECF 60-1 at Ex. 8, ¶7 (COE181-82); ECF 60-1 at Ex. 9 (COE189-99). Finstar applied for a United States service mark comprised of the name "Oleg Boyko" on February 8, 2020, which was registered on March 1, 2022. ECF 60-1 at Ex. 8, ¶8 (COE182); ECF 60-1 at Ex. 10 (COE200-07).

**B.     Kondratiev's Prior Unsuccessful Lawsuit Against Boyko.**

From 2006 to 2008, Kondratiev (a Canadian citizen) provided certain services to several companies in Brazil and the United States in connection with the creation of software for electronic bingo machines. ECF 60-1 at Ex. 8, ¶11 (COE182). In 2008, Kondratiev was sued in Ontario, Canada by one of those companies, Arcadia Participatoes Ltda. ("Arcadia") for, *inter alia*, injunctive relief and damages concerning Kondratiev's false representations to certain customers that Kondratiev owned the bingo machines that Arcadia provided to those customers. ECF 60-1 at Ex. 8, ¶12 (COE182-83).

Kondratiev cross-claimed against Arcadia for $10 million in damages, and eventually added several other cross-defendants, including Finstar Financial Group LLC, a New York company. Kondratiev claimed that both Arcadia and Finstar Financial Group were owned

by Boyko.  ECF 60-1 at Ex. 8, ¶¶13-15 (COE183); ECF 60-1 – ECF 60-2 at Exs. 12-14 (COE210-64).  In 2015, in the same Ontario Court, Kondratiev instituted a related action against Boyko claiming $10 million in damages against Boyko (the "Canada Lawsuit").  ECF 60-1 at Ex. 8, ¶16 (COE183-84); ECF 60-2 at Ex. 15 (COE265-81).

During the Canada Lawsuit, Kondratiev repeatedly accused Boyko of alleged criminal conduct and engaged in efforts to injure Boyko's business reputation.  ECF 60-1 at Ex. 8, ¶17 (COE 84).  Kondratiev's meritless claims against Boyko, as well as the Finstar Financial Group, in the Canada Lawsuit were ultimately dismissed.  ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-19 (COE282-308).  In its dismissal order, the Ontario Court referred to Kondratiev's claims against Boyko as "an abuse of process," and in a separate order pertaining to Kondratiev's cross-claims, the Ontario Court ***found Kondratiev to have been a vexatious litigant*** and ordered him to pay several hundred thousand dollars in costs.  *See* ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-17, 19 (COE282-289 & COE305-308).

### C. After His Lawsuit Against Boyko Was Dismissed, Kondratiev – under the Alias "Anna Lee" – Registered the Infringing Domain to Tarnish and Disparage Boyko and the Boyko Mark.

On or about August 23, 2017 – shortly after the dismissal of Kondratiev's lawsuit against Boyko was affirmed on appeal – the domain name <olegvboyko.website> was registered with Namecheap.  ECF 60-1 at Ex. 8, ¶19 (COE185); ECF 60-1 at Ex. 4 at COE100-01.

Subsequently, a website linked to the domain – https://olegvboyko.website (the "Infringing Website") – was created and populated with disparaging information concerning Boyko, including the same types of false allegations of "criminality" that Kondratiev had previously unsuccessfully alleged in the Canada Lawsuit in an effort to maliciously injure Boyko's business reputation.  ECF 60-1 at Ex. 8, ¶20 (COE185).

For example, the Infringing Website asserted, *inter alia*, that Boyko purportedly is (i) a career criminal with a "propensity to engage in illegal activity"; (ii) affiliated with "organized crime"; (iii) laundering money through the "National Credit Bank and his

company OLBI-USA"; (iv) laundering money through the financing of Hollywood movies; and (v) responsible for "the collapse of the Bangkok Bank of Commerce in 1994," which "[i]n turn … contributed to the 1998 Asian financial crisis." ECF 60-1 at Ex. 8, ¶21 (COE 185); ECF 60-2 at Ex. 20 (COE309-11).

To be clear, there is not a shred of truth to any of these malicious and defamatory statements. ECF 60-4 at Ex. 29, ¶6 (COE393-94). Indeed, these same false allegations on the same Infringing Website have already been found "inaccurate" and "denigrating" by the courts in Italy, a member of the European Union. Specifically, on July 6, 2023, the Guarantor for the Protection of Personal Data (a type of judicial body in Italy), granted Boyko's petition to order Google to remove the olegvboyko.website from its platform in Italy, noting "the need to … de-index[] … information that gives rise to 'an inaccurate, inadequate or misleading impression with respect to the data subject'" and that the website is "clearly intended to denigrate" Boyko. ECF 60-1 at Ex. 8, ¶22 (COE185-86); ECF 60-3 at Ex. 21 at COE320. This decision was then affirmed on appeal by the Court of Como, Italy. ECF 60-1 at Ex. 8, ¶22 (COE185-86); ECF 60-3 at Ex. 22 at COE367.[1]

Notably, **Kondratiev registered the Infringing Domain under an alias, so as to conceal the fact that he is the registrant**. As this Court has already found, while the Infringing Domain had "Anna Lee" as the purported "registrant contact," the documents obtained from Namecheap, including the contact info for the registrant, show that "Anna Lee," the name associated with the Domain, is Kondratiev's alias." ECF 67, at 2-3, 7.

This Court also found that the web address for the Infringing Website (https://olegvboyko.website) was confusingly similar to the legitimate website for Mr. Boyko (https://oleg-boyko.com) (see ECF 67, at 2, 9), and was used to divert consumers

---

[1] In any case, as Kondratiev concedes in his earlier filings, the truth or falsity of the information on the Infringing Website is **irrelevant** to the cybersquatting claim. See ECF 23 at 8:1-3 ("the dispute regarding the contents of <olegvboyko.website> is irrelevant since this legal action is for cybersquatting and not for defamation."); see also *Platinum Props. v. Sells*, 2021 U.S.Dist. LEXIS 203146, at *19, 37 (S.D.Fla. Feb. 8, 2021) (holding that defendant's "bad faith" intent to "disparage" plaintiffs was established by his "use of the infringing domain names and the Websites" that contained "derogatory" information regarding plaintiffs' mark, granting summary judgment on cybersquatting).

from the legitimate website to the Infringing Website, where derogatory statements concerning Boyko's character and business practices were made in an effort to tarnish and disparage Boyko's name and the Boyko Mark. Indeed, when a user performed a search on Google for "Oleg Boyko" the Infringing Website was prominently displayed on Google next to pictures of Boyko as one of the first available links regarding Boyko. ECF 60-1 at Ex. 1, ¶13 (COE004-05); ECF 60-1 at Ex. 8, ¶32 (COE188); ECF 60-1 at Ex. 7 (COE175-78).

### D. Plaintiffs Institute This Action, and the Court Finds Kondratiev Liable for Cybersquatting and Orders the Transfer of the Infringing Domain.

On June 27, 2023, Plaintiffs initiated this action against Kondratiev, asserting, *inter alia*, a claim for violation of the Federal Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1)) and seeking, *inter alia*, the transfer of the Infringing Domain to Finstar, and a permanent injunction ordering Kondratiev to cease and refrain from using the Boyko Mark. *See generally* ECF 1. That same day, Plaintiffs moved this Court for an *ex parte* temporary restraining order and an order to show cause why a preliminary injunction through the final resolution of this action should not issue. *See generally* ECF 2.

On July 14, 2023, this Court granted a temporary restraining order and enjoined "Kondratiev ... from taking any actions to transfer the <olegvboyko.website> domain name from its current registrar, Namecheap, to any other registrar." ECF 14 at 7. In that order, the Court found that "Plaintiffs are likely to succeed on [their cybersquatting] claim." *Id.* at 3. On August 28, 2023, this Court converted the above-described TRO into a preliminary injunction that extended the above-described relief through "the pendency of this case." ECF 35 at 5. In that order, the Court again found that "Plaintiffs are likely to succeed on [their cybersquatting] claim." *Id.* at 4.

On May 28, 2024, Plaintiffs filed a motion seeking partial summary judgment as to (i) liability in favor of Plaintiff Finstar on its cybersquatting claim (Count I of the Complaint), and (ii) the remedy of the transfer of the Infringing Domain to Plaintiff Finstar, under 15 USC § 1125(d)(1)(C

On March 13, 2025, this Court entered an order (dated March 12, 2025) granting Plaintiffs' motion for partial summary judgment, finding that Plaintiffs are entitled to judgment as a matter of law on the issue of Kondratiev's liability under 15 USC § 1125(d)(1), and ordering Kondratiev to transfer the Infringing Domain, <olegvboyko.website>, to Finstar within 14 days. *See* ECF 67 at 10. In that Order, the Court found, among other things, that Kondratiev had registered the Infringing Domain and Website and used an alias – "Anna Lee" – to obscure his ownership of same. *Id.* at 7-8. The Court also found that Kondratiev acted with a bad faith intent to profit from the Boyko Mark. *Id*. at 9-10. The Court also found that the Website was "dedicated to publishing disparaging information about Boyko," and that the evidence shows a "history of Kondratiev's conflict with and litigation against Plaintiffs. *Id.*, at 10.

## III.     PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES

### A.     Legal Standard for Assessing the Proper Amount of Statutory Damages

Pursuant to 15 U.S.C. § 1117(d), "[i]n a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of st0atutory damages of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

Importantly, the **Court may award statutory damages without conducting a jury trial**. *See Yuga Labs, Inc. v. Ripps*, 2023 U.S. Dist. LEXIS 192487, at *41 (C.D. Cal. Oct. 25, 2023) ("[T]he Court, rather than a jury, may calculate the amount of statutory damages for Defendants' violations of the ACPA and is not limited to awarding the minimum amount of statutory damages."); *see also Two Plus Two Publ'g, LLC v. Jacknames.com*, 572 Fed. Appx. 466, 467 (9th Cir. 2014) ("The district court did not err in calculating statutory damages rather than holding a jury trial on that issue because the ACPA allows for statutory damages between $1,000 and $100,000, 'as the court considers just.'" (quoting 15 U.S.C. § 1117(d))); *Acad. of Motion Picture Arts & Sci. v. Godaddy, Inc.*, 2015 U.S. Dist. LEXIS 186631, at *11 (C.D. Cal. Apr. 10, 2015) (accord).

**B.     Maximum Statutory Damages of $100,000 against Kondratiev Are Warranted by, inter alia, the Egregiousness of the Cybersquatting, Kondratiev's Use of False Contact Information, and His History of Contempt for Court Proceedings Involving Boyko.**

In determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), "courts generally consider a number of factors …, including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, … and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings." *Verizon California Inc. v. OnlineNIC, Inc.*, 2009 U.S. Dist. LEXIS 84235, at *8-9 (N.D. Cal. Aug. 25, 2009); *M.I.B. Grp. LLC v. Aguilar*, 2024 U.S. Dist. LEXIS 126132, at *68 (C.D. Cal. Jul. 16, 2024) (same).

Here, each of these factors supports the maximum amount of statutory damages authorized under 15 U.S.C. § 1117(d) – *i.e.*, $100,000 – against Kondratiev.

**1.     Kondratiev's Use of Boyko's Correctly-Spelled Name and Kondratiev's Clear Intent to Disparage and Tarnish the Boyko Mark Demonstrate the Egregiousness of His Conduct.**

As discussed above, a key factor that courts consider in determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), is "the egregiousness or willfulness of the defendant's cybersquatting." *Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9. Here, Kondratiev's cybersquatting was particularly egregious for several reasons, each of which justifies the imposition of the maximum statutory penalty – *i.e.*, $100,000.

First, the domain for the Infringing Website consisted entirely of the correct spellings of Boyko's first name, middle initial, and last name – *i.e.*, <olegvboyko.website>. Notably, in assessing the egregiousness of defendant's cybersquatting, courts typically consider "whether the correct spelling of Plaintiff's trademark is contained in the infringing domain names" because **the use of a correct spelling is a more "egregious" form of cybersquatting**. *See Facebook, Inc. v. Banana Ads LLC*, 2013 U.S. Dist. LEXIS 65834, at *44 (N.D. Cal. Apr. 30, 2013) (holding that that include the correct spellings of plaintiffs' trademarked names" are more "egregious" then cases that involve "typosquatting"), *R. & R.*

*adopted*, 2013 U.S. Dist. LEXIS 203354 (N.D. Cal. June 24, 2013)); *Facebook, Inc. v. Onlinenic Inc.*, 2022 U.S. Dist. LEXIS 113060, at *50 (N.D. Cal. Mar. 28, 2022) ("The Court finds that **domains containing the correctly-spelled ... marks are more malicious** than those misspelling the marks.").

In other words, cybersquatting using correctly-spelled trademarks – as opposed to typosquatting – generally support more severe awards of statutory damages. *See, e.g.*, *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102 (D. Colo. 2014) (holding that where defendant used the "entirety" of plaintiff's trademark in the infringing domain name, "maximum" statutory damages of $100,000 were warranted).

Second, in evaluating the proper amount of statutory damages, a defendant's "intent and behavior are the foremost consideration." *See CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102 (D. Colo. 2014). Here, as this Court has already found, the Infringing Domain and Website was "dedicated to publishing disparaging information about Boyko." ECF 67, at 10:1-2. Indeed, the Infringing Website consisted solely of disparaging information concerning Boyko, including the same types of false allegations of "criminality" that Kondratiev had previously unsuccessfully alleged in the Canada Lawsuit in an effort to maliciously injure Boyko's business reputation. ECF 60-1 at Ex. 8, ¶20 (COE185).

Thus, Kondratiev's use of the correct spelling of the Boyko Mark in the Infringing Domain and linked Website, and Kondratiev's clear intent to disparage and tarnish the Boyko Mark, justify the maximum amount of $100,000 in statutory damages.

### 2. Kondratiev's Use of the "Anna Lee" Alias to Conceal His Illegal Actions Warrants the Imposition of Maximum Statutory Damages.

As discussed above, another primary factor that courts consider in determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), is "the **defendant's use of false contact information to conceal its infringing activities**." *Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9.

Here, this Court has already found that the record "evidence demonstrate[d] that Kondratiev is the registrant of the [Infringing] Domain and the Website" and "that 'Anna

Lee,' the name associated with the Domain, is Kondratiev's alias." ECF 67 at 7. Kondratiev's use of the "Anna Lee" alias to conceal his ownership of, and responsibility for, the Infringing Domain substantially increased the cost of Plaintiffs' pre-litigation investigative efforts and the cost associated with this litigation. For example, Plaintiffs were forced to subpoena various third parties, including the registrar of the Infringing Domain (Namecheap), and the web hosting providers of the Infringing Website (DreamHost and Cloudflare), as well as PayPal (which was used to pay for the registration of the Infringing Domain and the hosting of the Website) to obtain the information necessary to prove that Kondratiev was behind the "Anna Lee" alias.  See ECF 60, at 6-9; ECF 67, at 2-3.

Courts confronted with similar behavior have awarded statutory damages at the high end of the spectrum.  For example, in *BioCryst Pharms, Inc. v. Namecheap.com, et al.*, 2006 U.S. Dist. LEXIS 98340 (C.D. Cal. Nov. 21, 2006), the district court imposed the maximum statutory damages award of $100,000 per domain name where the defendant "knowingly provided false contact information concealing his registration and use of [the domain name]." *Id.* at *5.  *See also Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 2021 U.S. Dist. LEXIS 233324, at *15 (N.D. Cal. Oct. 21, 2021) (awarding "statutory damages in the maximum amount of $100,000 per infringing domain name" where defendants "used false contact information to conceal their activities") (quotes omitted), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 233283 (N.D. Cal. Nov. 16, 2021); *Translucent Communs., LLC v. Ams. Premiere Corp.*, 2010 U.S. Dist. LEXIS 16459, *54-55 (D. Md. Feb. 24, 2010) (awarding "the maximum statutory damages of $ 100,000" where "Defendant … intentionally and willfully provided false information to Register.com."). The same result should follow here.

### 3. Kondratiev's Contemptuous Behavior and Conduct in This Action Warrant the Imposition of Maximum Statutory Damages.

Another factor that courts consider in determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), is the degree to which "behavior by the defendant evidenc[es] an attitude of contempt towards the court or the proceedings."

*Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9.  Here, several of the actions taken by Kondratiev – both in this action and in the prior Canada Lawsuit – evidence Kondratiev's attitude of contempt towards courts generally, and these legal proceedings specifically.

<u>First</u>, Kondratiev repeatedly provided false testimony in this action.  For example, at his deposition, Kondratiev falsely testified under penalty of perjury that, *inter alia*, he:

- never "used the name Anna Lee as an alias" and never "used the name Anna Lee to communicate with any other person or entity" (ECF 60-1 at Ex. 6 at 92:3-12 (COE171));
- "never used the name Anna Lee to open an account with Namecheap or Cloudflare or DreamHost" (ECF 60-1 at Ex. 6 at 95:13-17 (COE172)); and
- never registered or renewed the registration for the Domain (ECF 60-1 at Ex. 6 at 73:15-74:6 (COE169)).

By finding that Kondratiev used "Anna Lee as an alias" (ECF 67, at 7), this Court has already necessarily and implicitly found that Kondratiev's above-referenced testimony was false and contrary to the record evidence.  *See* ECF 67 at 7-8.

<u>Second</u>, Kondratiev's conduct in prior litigation involving Boyko clearly shows Kondratiev's longstanding contempt for court proceedings and the ethical obligations associated therewith.  Indeed, in the Canada Lawsuit, the Ontario Court referred to claims that Kondratiev had asserted against Boyko as "**an abuse of process**," and in a separate order, deemed Kondratiev a **vexatious litigant**.  *See* ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-17, 19 (COE282-289 & COE305-308).  Kondratiev's conduct in this action, as demonstrated by his false discovery responses and false testimony, has been similarly abusive and improper.

<u>Third</u>, even after the issuance of the preliminary injunction in this action (ECF 35), Kondratiev continued to modify and add content to the Infringing Website – all while falsely denying he was the registrant – in an effort to tarnish and disparage Boyko and the Boyko Mark.  Specifically, shortly after the Court tissued its preliminary injunction order, a description of this litigation and a link to Kondratiev's declaration filed to oppose Plaintiffs'

Motion for Preliminary Injunction – which is replete with disparaging content about Boyko – was added to the Infringing Website. ECF 60-1 [Ex. 8, ¶¶ 29-31], ECF 60-3 – 60-4 [Exs. 27-28]; see also ECF 30-1. See, e.g., *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice," and holding that such conduct justifies the maximum $100,000 statutory damages award).

In sum, throughout this action and in prior actions involving Plaintiffs, Kondratiev has exhibited a general attitude of contempt for the Court and the ethical obligations associated with court proceedings. Kondratiev's conduct in this proceeding, thus, further justifies the imposition of the maximum allowable statutory penalty of $100,000.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, in lieu of actual damages and lost profits, this Court issue an order awarding Plaintiff Finstar the maximum statutory damages of $100,000, available under 15 U.S.C. § 1117(d), against Defendant Kondratiev for his violations of 15 U.S.C. § 1125(d)(1).

DATED this 19th day of May, 2025.

FENNEMORE CRAIG, P.C.

By: *s/ Amy Abdo*
    Amy Abdo

LOEB & LOEB LLP

By: *s/ Oleg Stolyar*
    Oleg Stolyar

*Attorneys for Plaintiffs Oleg Boyko and Finstar-Holding LLC*