1   FENNEMORE CRAIG, P.C.
    Amy Abdo (No. 016346)
2   2394 E. Camelback Road
    Suite 600
3   Phoenix, Arizona 85016
    Telephone: (602) 916-5000
4   Email: amy@fennemorelaw.com

5   LOEB & LOEB LLP
    Oleg Stolyar (CA SBN 229265–Pro Hac Vice)
6   astolyar@loeb.com
    Jeremy Margolis (IL SBN 1763865–Pro Hac Vice)
7   jmargolis@loeb.com
    David J. Beddingfield (CA SBN 308491–Pro Hac Vice)
8   dbeddingfield@loeb.com
    10100 Santa Monica Blvd., Suite 2200
9   Los Angeles, CA 90067
    Telephone: 310.282.2000

10
    *Attorneys for Plaintiffs Oleg Boyko*
11  *and Finstar-Holding LLC*

12

13

14              UNITED STATES DISTRICT COURT

15                  DISTRICT OF ARIZONA

16  Oleg Boyko, an individual, and              NO. CV-23-01186-PHX-DLR
    Finstar-Holding LLC, a Russian limited
17  liability company,
                                                **PLAINTIFFS' MOTION FOR**
18              Plaintiffs,                      **PERMANENT INJUNCTION**

19          v.

20  Alexey Kondratiev, an individual, and
    <olegvboyko.website>,
21
                Defendants.
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................. 1

       A.    Boyko and the Boyko Mark. .......................................................... 1

       B.    Kondratiev's Prior Unsuccessful Lawsuit Against Boyko. .......................... 2

       C.    After His Lawsuit Against Boyko Was Dismissed, Kondratiev –
             under the Alias "Anna Lee" – Registered the Infringing Domain to
             Tarnish and Disparage Boyko and the Boyko Mark. .................................... 3

       D.    Plaintiffs Institute This Action, and the Court Finds Kondratiev
             Liable for Cybersquatting and Orders the Transfer of the Infringing
             Domain. ................................................................................ 5

III.   PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION
       PROHIBITING KONDRATIEV FROM FURTHER INFRINGING
       UPON THE BOYKO MARK ...................................................................... 6

       A.    Legal Standard on Motions for Permanent Injunction ................................. 6

       B.    As a Matter of Law, Plaintiffs Have Already Succeeded on the
             Merits of Their Cybersquatting Claim Against Kondratiev ............................ 7

       C.    Plaintiffs Have Suffered Irreparable Injury from Kondratiev's
             Cybersquatting, and Monetary Damages Alone Are Inadequate to
             Remediate the Harm to Plaintiffs. ................................................... 8

       D.    The Balance of Hardships Favors Issuing the Proposed Injunction ............ 10

       E.    The Public Interest Would Not Be Disserved by the Proposed
             Injunction ............................................................................. 11

IV.    CONCLUSION ................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018).............................................................................................8

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*,
48 Fed. App'x 115 (9th Cir. 2018)....................................................................................10

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987).............................................................................................................7

*B & F Sys. v. Leblanc*,
2009 U.S. Dist. LEXIS 145013 (M.D. Ga. Sep. 30, 2009)..........................................11

*Beachbody, LLC v. Kteam Enters*,
2017 U.S. Dist. LEXIS 227557 (C.D. Cal. June 19, 2017) .........................................10

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006 (C.D. Cal. Sept. 23, 2013) .............................................................7

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988)........................................................................................6, 9

*Diaz v. Bautista*,
2012 U.S. Dist. LEXIS 199324 (C.D. Cal. June 29, 2012) .........................................10

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006).............................................................................................................7

*Facebook, Inc. v. Banana Ads LLC*,
2013 U.S. Dist. LEXIS 65834 (N.D. Cal. Apr. 30, 2013) .............................................6

*Geertson Seed Farms v. Johanns*,
570 F.3d 1130 (9th Cir. 2009)...........................................................................................7

*Huezo v. L.A. Cmty. Coll. Dist.*,
672 F. Supp. 2d 1045 (C.D. Cal. Sept. 9, 2008) .............................................................7

*Lawrank LLC v. Lawrankseo.Com*,
2022 U.S. Dist. LEXIS 157616 (N.D. Cal. July 26, 2022).............................................6

*M.I.B. Grp. LLC v. Aguilar*,
2024 U.S. Dist. LEXIS 126132 (C.D. Cal. Jul. 16, 2024).........................................8, 9

*Marriott v. Cnty. of Montgomery*,
    426 F. Supp. 2d 1 (S.D.N.Y. 2006)..................................................................... 7

*Panda Rest. Group v. Enymedia, Inc.*,
    2021 U.S. Dist. LEXIS 206330 (C.D. Cal. Aug. 12, 2021)......................................... 10

*Platinum Props. v. Sells*,
    2021 U.S.Dist. LEXIS 203146 (S.D.Fla. Feb. 8, 2021).................................................. 4

*Rylee & Cru, Inc. v. Hui Zhu*,
    2024 U.S. Dist. LEXIS 85480 (D. Colo. May 10, 2024).............................................. 8

*Sammartano v. First Jud. Dist. Ct.*,
    303 F.3d 959 (9th Cir. 2002)........................................................................... 8

*Skydive Ariz., Inc. v. Quattrocchi*,
    2010 U.S. Dist. LEXIS 49972 (D. Ariz. Apr. 26, 2010)..................................... 8, 9, 11

*Sleep No. Corp. v. Unknown Party*,
    2023 U.S. Dist. LEXIS 75363 (D. Ariz. Mar. 17, 2023) ............................................. 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001)........................................................................... 8

*Sulda v. Shippingquest.com, LLC*,
    2018 U.S. Dist. LEXIS 240643 (N.D. Ill. Jan. 29, 2018) ........................................... 10

*Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*,
    2013 U.S. Dist. LEXIS 191404 (S.D. Fla. Jan. 25, 2013) ......................................... 11

*Turiano v. Phoenix*,
    562 F. Supp. 3d 261 (D. Ariz. 2022)................................................................. 11

*Twitch Interactive, Inc. v. Johnston*,
    2019 U.S. Dist. LEXIS 125231 (N.D. Cal. July 26, 2019)........................................... 6

*Whaleco Inc. v. Temuapp.me*,
    2024 U.S. Dist. LEXIS 96893 (D. Ariz. May 31, 2024) .......................................... 6, 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................ 7

*Wyatt Tech. Corp. v. Smithson*,
    2006 U.S. Dist. LEXIS 109459 (C.D. Cal. Sep. 12, 2006).......................................... 11

*Yuga Labs, Inc. v. Ripps*,
    2023 U.S. Dist. LEXIS 192487 (C.D. Cal. Oct. 25, 2023).......................................... 10

**Statutes**

15 U.S.C. § 1116(a) ........................................................................................................ 6, 8

15 U.S.C. § 1125 ................................................................................................................ 6

15 U.S.C. § 1125(d) ..................................................................................................... 8, 11

15 U.S.C. § 1125(d)(1) ............................................................................................. *passim*

15 U.S.C. § 1125(d)(1)(C) ................................................................................................ 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Oleg Boyko ("Boyko") and Finstar Holding LLC ("Finstar", and together with Boyko, "Plaintiffs") move for a permanent injunction enjoining and restraining Defendant Alexey Kondratiev ("Kondratiev"), and anyone acting on his behalf or in concert with him, from registering, maintaining, and/or administering any domain name or website that utilizes or in any way employs Boyko's name or the trademark OLEG BOYKO (the "Boyko Mark").

Kondratiev has already been found liable to Plaintiffs for cybersquatting under 15 USC § 1125(d)(1), and the infringing domain that Kondratiev created, the <olegvboyko.website> (the "Infringing Domain" or "Domain"), has been ordered to be transferred to Plaintiff Finstar. *See* ECF 67 at 10. This motion for permanent injunction is necessary to ensure that Kondratiev cannot simply establish a new domain and website designed to disparage, tarnish, and exploit Boyko's name and the Boyko Mark.

Kondratiev's past conduct makes clear that his crusade to harm Boyko's business reputation and the Boyko Mark cannot be dissuaded or deterred by mere litigation losses, even when such litigation losses are accompanied by financial penalties. Plaintiffs therefore ask the Court to issue a permanent injunction preventing any further such wrongful conduct.

### II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

#### A.    Boyko and the Boyko Mark.

Plaintiff Boyko is a citizen of Italy and resident of Switzerland. ECF 60-4 at Ex. 29, ¶2 (COE393). Boyko is a well-known international investor, philanthropist, and beneficial owner and Chairman of Finstar Financial Group ("Finstar Financial"), an international private equity and investment advisory firm that was established in 1996. ECF 60-4 at Ex. 29, ¶3 (COE393).

Finstar Financial manages more than $2 billion of assets and has a diversified investment footprint in more than 30 countries, including the United States. *Id.*; *see also* ECF 60-1 at Ex. 8, ¶4 (COE181). Investors who choose to invest their money with Finstar

Financial do so primarily based on Boyko's reputation as a successful investor and entrepreneur. ECF 60-1 at Ex. 8, ¶10 (COE182). Boyko's name is inherently and inextricably associated with, and linked to, Finstar Financial and the Finstar Group. *Id.* As a result, Boyko's name and the Boyko Mark (and the ability to protect it) is vital not only to Boyko, but to the financial success of the Finstar Group and the entities therein. *Id.*

Plaintiff Finstar is a limited liability company, organized and existing under the law of the Russian Federation, with its principal place of business in Moscow, Russia. ECF 60-1 at Ex. 8, ¶6 (COE181). Boyko is the ultimate beneficial owner of Finstar, which is part of the same group of companies as Finstar Financial. ECF 60-1 at Ex. 8, ¶¶2, 6 (COE181); ECF 60-4 at Ex. 29, ¶2 (COE393). Finstar is the owner of protectable interests in a registered international trademark consisting of the name "Oleg Boyko." ECF 60-1 at Ex. 8, ¶7 (COE181-82); ECF 60-1 at Ex. 9 (COE189-99). Finstar applied for a United States service mark comprised of the name "Oleg Boyko" on February 8, 2020, which was registered on March 1, 2022. ECF 60-1 at Ex. 8, ¶8 (COE182); ECF 60-1 at Ex. 10 (COE200-07).

### B. Kondratiev's Prior Unsuccessful Lawsuit Against Boyko.

From 2006 to 2008, Kondratiev (a Canadian citizen) provided certain services to several companies in Brazil and the United States in connection with the creation of software for electronic bingo machines. ECF 60-1 at Ex. 8, ¶11 (COE182). In 2008, Kondratiev was sued in Ontario, Canada by one of those companies, Arcadia Participatoes Ltda. ("Arcadia") for, *inter alia*, injunctive relief and damages concerning Kondratiev's false representations to certain customers that Kondratiev owned the bingo machines that Arcadia provided to those customers. ECF 60-1 at Ex. 8, ¶12 (COE182-83).

Kondratiev cross-claimed against Arcadia for $10 million in damages, and eventually added several other cross-defendants, including Finstar Financial Group LLC, a New York company. Kondratiev claimed that both Arcadia and Finstar Financial Group were owned by Boyko. ECF 60-1 at Ex. 8, ¶¶13-15 (COE183); ECF 60-1 – ECF 60-2 at Exs. 12-14 (COE210-64). In 2015, in the same Ontario Court, Kondratiev instituted a related action against Boyko claiming $10 million in damages against Boyko (the "Canada Lawsuit").

ECF 60-1 at Ex. 8, ¶16 (COE183-84); ECF 60-2 at Ex. 15 (COE265-81).

During the Canada Lawsuit, Kondratiev repeatedly accused Boyko of alleged criminal conduct and engaged in efforts to injure Boyko's business reputation.  ECF 60-1 at Ex. 8, ¶17 (COE 84).  Kondratiev's meritless claims against Boyko, as well as the Finstar Financial Group, in the Canada Lawsuit were ultimately dismissed.  ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-19 (COE282-308).  In its dismissal order, the Ontario Court referred to Kondratiev's claims against Boyko as "an abuse of process," and in a separate order pertaining to Kondratiev's cross-claims, the Ontario Court **found Kondratiev to have been a vexatious litigant** and ordered him to pay several hundred thousand dollars in costs.  *See* ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-17, 19 (COE282-289 & COE305-308).

**C.    After His Lawsuit Against Boyko Was Dismissed, Kondratiev – under the Alias "Anna Lee" – Registered the Infringing Domain to Tarnish and Disparage Boyko and the Boyko Mark.**

On or about August 23, 2017 – shortly after the dismissal of Kondratiev's lawsuit against Boyko was affirmed on appeal – the domain name <olegvboyko.website> was registered with Namecheap.  ECF 60-1 at Ex. 8, ¶19 (COE185); ECF 60-1 at Ex. 4 at COE100-01.

Subsequently, a website linked to the domain – https://olegvboyko.website (the "Infringing Website") – was created and populated with disparaging information concerning Boyko, including the same types of false allegations of "criminality" that Kondratiev had previously unsuccessfully alleged in the Canada Lawsuit in an effort to maliciously injure Boyko's business reputation.  ECF 60-1 at Ex. 8, ¶20 (COE185).

For example, the Infringing Website asserted, *inter alia*, that Boyko purportedly is (i) a career criminal with a "propensity to engage in illegal activity"; (ii) affiliated with "organized crime"; (iii) laundering money through the "National Credit Bank and his company OLBI-USA"; (iv) laundering money through the financing of Hollywood movies; and (v) responsible for "the collapse of the Bangkok Bank of Commerce in 1994," which "[i]n turn … contributed to the 1998 Asian financial crisis."  ECF 60-1 at Ex. 8, ¶21 (COE

185); ECF 60-2 at Ex. 20 (COE309-11).

To be clear, there is not a shred of truth to any of these malicious and defamatory statements.  ECF 60-4 at Ex. 29, ¶6 (COE393-94).  Indeed, these same false allegations on the same Infringing Website have already been found "inaccurate" and "denigrating" by the courts in Italy, a member of the European Union.  Specifically, on July 6, 2023, the Guarantor for the Protection of Personal Data (a type of judicial body in Italy), granted Boyko's petition to order Google to remove the olegvboyko.website from its platform in Italy, noting "the need to … de-index[] … information that gives rise to 'an inaccurate, inadequate or misleading impression with respect to the data subject'" and that the website is "clearly intended to denigrate" Boyko.  ECF 60-1 at Ex. 8, ¶22 (COE185-86); ECF 60-3 at Ex. 21 at COE320.  This decision was then affirmed on appeal by the Court of Como, Italy.  ECF 60-1 at Ex. 8, ¶22 (COE185-86); ECF 60-3 at Ex. 22 at COE367.[1]

Notably, **Kondratiev registered the Infringing Domain under an alias, so as to conceal the fact that he is the registrant**.  As this Court has already found, while the Infringing Domain had "Anna Lee" as the purported "registrant contact," the documents obtained from Namecheap, including the contact info for the registrant, show that "Anna Lee," the name associated with the Domain, is Kondratiev's alias."  ECF 67, at 2-3, 7.

This Court also found that the web address for the Infringing Website (https://olegvboyko.website) was confusingly similar to the legitimate website for Mr. Boyko (https://oleg-boyko.com) (see ECF 67, at 2, 9), and was used to divert consumers from the legitimate website to the Infringing Website, where derogatory statements concerning Boyko's character and business practices were made in an effort to tarnish and disparage Boyko's name and the Boyko Mark.  Indeed, when a user performed a search on

---

[1] In any case, as Kondratiev concedes in his earlier filings, the truth or falsity of the information on the Infringing Website is **irrelevant** to the cybersquatting claim. See ECF 23 at 8:1-3 ("the dispute regarding the contents of <olegvboyko.website> is irrelevant since this legal action is for cybersquatting and not for defamation."); see also *Platinum Props. v. Sells*, 2021 U.S.Dist. LEXIS 203146, at *19, 37 (S.D.Fla. Feb. 8, 2021) (holding that defendant's "bad faith" intent to "disparage" plaintiffs was established by his "use of the infringing domain names and the Websites" that contained "derogatory" information regarding plaintiffs' mark, granting summary judgment on cybersquatting).

Google for "Oleg Boyko" the Infringing Website was prominently displayed on Google next to pictures of Boyko as one of the first available links regarding Boyko. ECF 60-1 at Ex. 1, ¶13 (COE004-05); ECF 60-1 at Ex. 8, ¶32 (COE188); ECF 60-1 at Ex. 7 (COE175-78).

### D.  Plaintiffs Institute This Action, and the Court Finds Kondratiev Liable for Cybersquatting and Orders the Transfer of the Infringing Domain.

On June 27, 2023, Plaintiffs initiated this action against Kondratiev, asserting, *inter alia*, a claim for violation of the Federal Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1)) and seeking, *inter alia*, the transfer of the Infringing Domain to Finstar, and a permanent injunction ordering Kondratiev to cease and refrain from using the Boyko Mark. *See generally* ECF 1. That same day, Plaintiffs moved this Court for an *ex parte* temporary restraining order and an order to show cause why a preliminary injunction through the final resolution of this action should not issue. *See generally* ECF 2.

On July 14, 2023, this Court granted a temporary restraining order and enjoined "Kondratiev ... from taking any actions to transfer the <olegvboyko.website> domain name from its current registrar, Namecheap, to any other registrar." ECF 14 at 7. In that order, the Court found that "Plaintiffs are likely to succeed on [their cybersquatting] claim." *Id.* at 3. On August 28, 2023, this Court converted the above-described TRO into a preliminary injunction that extended the above-described relief through "the pendency of this case." ECF 35 at 5. In that order, the Court again found that "Plaintiffs are likely to succeed on [their cybersquatting] claim." *Id.* at 4.

On May 28, 2024, Plaintiffs filed a motion seeking partial summary judgment as to (i) liability in favor of Plaintiff Finstar on its cybersquatting claim (Count I of the Complaint), and (ii) the remedy of the transfer of the Infringing Domain to Plaintiff Finstar, under 15 USC § 1125(d)(1)(C). *See* ECF 60 (Motion and Memorandum of Law); ECF 60-1 – ECF 60-4 (Supporting Evidence).

On March 13, 2025, this Court entered an order (dated March 12, 2025) granting Plaintiffs' motion for partial summary judgment, finding that Plaintiffs are entitled to judgment as a matter of law on the issue of Kondratiev's liability under 15 USC §

1125(d)(1), and ordering Kondratiev to transfer the Infringing Domain, <olegvboyko.website>, to Finstar within 14 days. *See* ECF 67 at 10. In that Order, the Court found, among other things, that Kondratiev had registered the Infringing Domain and Website and used an alias – "Anna Lee" – to obscure his ownership of same. *Id.* at 7-8. The Court also found that Kondratiev acted with a bad faith intent to profit from the Boyko Mark. *Id.* at 9-10. The Court also found that the Website was "dedicated to publishing disparaging information about Boyko," and that the evidence shows a "history of Kondratiev's conflict with and litigation against Plaintiffs. *Id.*, at 10.

## III.    PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION PROHIBITING KONDRATIEV FROM FURTHER INFRINGING UPON THE BOYKO MARK

### A.    Legal Standard on Motions for Permanent Injunction

Pursuant to 15 USCS § 1116(a), district courts "have power to grant injunctions[] … to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USCS § 1125]." *See* 15 USCS § 1116(a); *see also Whaleco Inc. v. Temuapp.me*, 2024 U.S. Dist. LEXIS 96893, *24-26 (D. Ariz. May 31, 2024).

This includes the power to enjoin and prohibit future incidents of cybersquatting. *See, e.g.*, *Facebook, Inc. v. Banana Ads LLC*, 2013 U.S. Dist. LEXIS 65834, *57-58 (N.D. Cal. Apr. 30, 2013) (granting permanent injunction against future infringement); *Lawrank LLC v. Lawrankseo.Com*, 2022 U.S. Dist. LEXIS 157616, *13 (N.D. Cal. July 26, 2022) (same); *Twitch Interactive, Inc. v. Johnston*, 2019 U.S. Dist. LEXIS 125231, *36 (N.D. Cal. July 26, 2019) (same). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

The standard for granting a permanent injunction is essentially the same as for granting a preliminary injunction, except that the party seeking a permanent injunction must prove actual success on the merits as opposed to merely showing a likelihood of success on

the merits. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Therefore, a plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Geertson Seed Farms v. Johanns*, 570 F.3d 1130, 1136 (9th Cir. 2009) (applying the four-part test for permanent injunctive relief).

**B.    As a Matter of Law, Plaintiffs Have Already Succeeded on the Merits of Their Cybersquatting Claim Against Kondratiev**

On March 13, 2025, this Court entered an order (dated March 12, 2025) finding Kondratiev liable to Plaintiffs under 15 U.S.C. § 1125(d)(1). *See* ECF 67 at 10.

It is well settled that a grant of summary judgment in favor of plaintiff on liability issues constitutes actual success on the merits for the purposes of adjudicating a request for the entry of a permanent injunction. *See, e.g.*, *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1018, n. 13 (C.D. Cal. Sept. 23, 2013) ("Because the Court has granted summary judgment in favor of [plaintiff], [plaintiff] has not only a likelihood of success on the merits but also actual success on the merits of its claims."); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1051 (C.D. Cal. Sept. 9, 2008) (same); *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 11 (S.D.N.Y. 2006) ("By succeeding on their motion for partial summary judgment, plaintiffs have also demonstrated actual success on the merits of their claim[.] . . . Thus, plaintiffs have demonstrated that a permanent injunction is warranted."). Therefore, as a matter of law, Plaintiffs have already succeeded on the merits of their cybersquatting claim against Kondratiev.

. . .

### C.    Plaintiffs Have Suffered Irreparable Injury from Kondratiev's Cybersquatting, and Monetary Damages Alone Are Inadequate to Remediate the Harm to Plaintiffs.

First, and as a threshold matter, 15 U.S.C. § 1116(a) provides that a cybersquatting plaintiff "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of, *inter alia*, 15 U.S.C. § 1125(d).  Here, this Court has already found that Kondratiev violated 15 U.S.C. § 1125(d)(1) as a matter of law.  *See* ECF 67 at 10.

Thus, pursuant to 15 U.S.C. § 1116(a), plaintiffs are entitled to a rebuttable **presumption of irreparable harm** from Kondratiev's cybersquatting.  *See, e.g.*, *Rylee & Cru, Inc. v. Hui Zhu*, 2024 U.S. Dist. LEXIS 85480, at *11 (D. Colo. May 10, 2024) ("Because the Court has found that www.rylee-cru.com is in violation of the ACPA, R&C is entitled to the presumption of irreparable harm."); *M.I.B. Grp. LLC v. Aguilar*, 2024 U.S. Dist. LEXIS 126132, at *66 (C.D. Cal. Jul. 16, 2024) (accord); *Whaleco*, 2024 U.S. Dist. LEXIS 96893, at *25 (accord).

Second, it is black letter law that "**loss of control over business reputation and damage to goodwill constitute[s] irreparable harm.**"  *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (cites omitted);[2] *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (same).  "Intangible injuries, such as loss of goodwill, are irreparable because quantifying their harm is, in most cases, impractical or impossible, and, as a result, such injuries cannot be fully remedied with a financial award."  *Skydive Ariz., Inc. v. Quattrocchi*, 2010 U.S. Dist. LEXIS 49972, at *5 (D. Ariz. Apr. 26, 2010).

Here, in addition to the presumption of irreparable harm (which Kondratiev cannot rebut), Plaintiffs have also submitted substantial evidence demonstrating that the Infringing Domain and Website served to tarnish Boyko's business reputation and the Boyko Mark.  See gen. ECF 60-60.4  Indeed, this Court has already repeatedly found that the Infringing "Website is dedicated to publishing disparaging information about Boyko." See ECF 14

---

[2] All emphasis herein is added, unless otherwise indicated.

[TRO], at 2:5-9, 3:14-17; ECF 35 [Order Granting Preliminary Injunction], at 4; ECF 67 [Order granting partial summary judgment], at 10:1-3.  Such harm cannot be adequately compensated by monetary damages.  See, e.g., *Skydive Ariz., Inc.*, 2010 U.S. Dist. LEXIS 49972, at \*5 ("Injuries to goodwill and business reputation are generally considered to be intangible and, as a result, irreparable.")

Third, other district courts in the Ninth Circuit have found that a history of disputes between the parties can support a permanent injunction to prevent additional disputes.  See, e.g., *M.I.B. Grp. LLC v. Aguilar*, 2024 U.S. Dist. LEXIS 126132, at \*4-10, 66-67 (C.D. Cal. July 16, 2024) (holding that "the parties' extensive history" of disputes and litigation "support[ed] the imposition of an injunction against further infringement.")  Here, as this Court acknowledged in its summary judgment order, there is a long "history of Kondratiev's conflict with and litigation against Plaintiffs." ECF 67, at 10.  Thus, this too weighs in favor of a permanent injunction.

Fourth, in 2016, a court in Canada deemed Kondratiev a vexatious litigant and ordered him to pay several hundred thousand dollars in costs in connection with claims against Boyko.  *See* ECF 60-1 at Ex. 8, ¶¶17-18 (COE 84); ECF 60-4 at Exs. 16-17, 19 (COE282-289 & COE305-308).  However, less than two months after the imposition of costs against Kondratiev was affirmed on appeal, Kondratiev registered the Infringing Domain to tarnish and disparage the Boyko Mark.  *See* ECF 60 at 3; *see also* ECF 60-1 at Ex. 8, ¶19 (COE 84); ECF 60-1 at Ex. 4 at COE100-101; ECF 60-4 at Exs. 16-17 (COE282-289).  Mere monetary penalties are, thus, unlikely to temper Kondratiev's nearly two-decade long crusade to harm Boyko by trying to tarnish his business reputation.

Fifth, it is well settled that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21*, 846 F.2d at 1180.  Indeed, "[w]here, as here, injury to goodwill and weakening of a trade name are alleged, it would be impossible to quantify the monetary loss, if any, suffered by the plaintiff[,]" which in turn, "renders the legal remedy inadequate." *Panda Rest. Group v. Enymedia, Inc.*, 2021 U.S. Dist. LEXIS

206330, at *17 (C.D. Cal. Aug. 12, 2021); *Beachbody, LLC v. Kteam Enters*, 2017 U.S. Dist. LEXIS 227557, at *9-10 (C.D. Cal. June 19, 2017) (same).

Notably, this is true even if a "[d]efendants contend they are no longer infringing" because "there is **nothing to prevent [d]efendants from future infringing activity unless [plaintiff] brings another lawsuit**." *Diaz v. Bautista*, 2012 U.S. Dist. LEXIS 199324, at *9 (C.D. Cal. June 29, 2012). Here, similarly, absent the requested injunctive relief, there would be nothing to prevent Kondratiev from engaging in further cybersquatting.

Indeed, given the long history of Kondratiev's conflict and litigation with Plaintiffs, it is likely that following the conclusion of this lawsuit, Kondratiev will simply establish a new infringing domain through which to tarnish and disparage Boyko and the Boyko Mark. Kondratiev has already demonstrated he is likely to do so, by hiding behind an alias in setting up the Infringing Domain, after he lost his prior litigation with Plaintiffs in Canada. *See* ECF 67, at 2-3, 7-8. A permanent injunction would serve as a deterrent to any such future unlawful conduct, without imposing any ongoing burden on Kondratiev or the Court.

### D.       The Balance of Hardships Favors Issuing the Proposed Injunction

In a cybersquatting action, "[t]he balance of hardships [] weighs heavily in favor of" the plaintiff, which "has a strong interest in being protected from [d]efendants' illegal conduct that continues to harm its reputation and goodwill." *Yuga Labs, Inc. v. Ripps*, 2023 U.S. Dist. LEXIS 192487, at *46 (C.D. Cal. Oct. 25, 2023) (citing *JUUL Labs, Inc. v. Chou*, 676 F. Supp. 3d 827, 849 (C.D. Cal. 2023)). This is because a "[d]efendant 'faces no hardship' from refraining from its willful cybersquatting and otherwise unlawful activity." *Sleep No. Corp. v. Unknown Party*, 2023 U.S. Dist. LEXIS 75363, at *11 (D. Ariz. Mar. 17, 2023) (cites omitted); *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 48 Fed. App'x 115, 120 (9th Cir. 2018) (same); see also *Sulda v. Shippingquest.com, LLC*, 2018 U.S. Dist. LEXIS 240643, at *8 (N.D. Ill. Jan. 29, 2018) (accord).

Here, the balance of hardships weighs heavily in Plaintiffs' favor. The requested injunctive relief merely prohibits Kondratiev from further unlawful conduct that infringes upon or tarnishes the Boyko Mark. In contrast, if the permanent injunctive relief is not

granted, given Kondratiev's long history of conflict with the Plaintiffs and his prior course of conduct following his loss in the Canada Lawsuit – after which Kondratiev registered the Infringing Domain, it is likely that Kondratiev will simply register new infringing domains and websites designed to tarnish and disparage the Boyko Mark.

Thus, absent a permanent injunction prohibiting Kondratiev from engaging in further cybersquatting involving the Boyko Mark, it is likely that Plaintiffs will be forced to suffer and incur the expense of having to file additional lawsuits to stop such cybersquatting. A permanent injunction will be a substantial deterrent to any such future unlawful conduct.

### E.    The Public Interest Would Not Be Disserved by the Proposed Injunction

"The public interest factor, unlike the balance of hardships, primarily addresses the injunction's impact on non-parties rather than parties." *Turiano v. Phoenix*, 562 F. Supp. 3d 261, 282 (D. Ariz. 2022) (citing *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). And the public has a clear interest in preventing and deterring cybersquatting.

Indeed, "the public, not just the private litigant, is harmed by an inadequate response to trademark infringement or other Lanham Act violations." *Skydive Ariz.*, 2010 U.S. Dist. LEXIS 49972, at *11 (citing *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982)).[3] "**A great public interest exists in deterring cyberpiracy**." *B & F Sys. v. Leblanc*, 2009 U.S. Dist. LEXIS 145013, at *25 (M.D. Ga. Sep. 30, 2009); *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 2013 U.S. Dist. LEXIS 191404, at *33 (S.D. Fla. Jan. 25, 2013) ("[I]t is in the public interest to enforce the trademark laws against cybersquatting and appropriation of others' marks in domain names.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order permanently enjoining and restraining Alexey Kondratiev, and anyone acting on his behalf or in concert with him, from registering, maintaining, and/or administering any domain name or website that utilizes or in any way employs Mr. Boyko's name or the Boyko Mark.

---

[3] The ACPA (15 U.S.C. § 1125(d)) is a part of the Lanham Act. *See, e.g.*, *Wyatt Tech. Corp. v. Smithson*, 2006 U.S. Dist. LEXIS 109459, at *20 (C.D. Cal. Sep. 12, 2006).

1      DATED this 19th day of May, 2025.

2            FENNEMORE CRAIG, P.C.

3

4            By: *s/ Amy Abdo*

5                    Amy Abdo

6            LOEB & LOEB LLP

7

8            By: *s/ Oleg Stolyar*
                   Oleg Stolyar

9            *Attorneys for Plaintiffs Oleg Boyko*
           *and Finstar-Holding LLC*

10   51878719

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28