FENNEMORE CRAIG, P.C.
Amy Abdo (No. 016346)
Taylor N. Burgoon (No. 033970)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: amy@fennemorelaw.com
Email: tburgoon@fennemorelaw.com

LOEB & LOEB LLP
Oleg Stolyar (CA SBN 229265–Pro Hac Vice)
astolyar@loeb.com
Jeremy Margolis (IL SBN 1763865–Pro Hac Vice)
jmargolis@loeb.com
David J. Beddingfield (CA SBN 308491–Pro Hac Vice)
dbeddingfield@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000

*Attorneys for Plaintiffs Oleg Boyko
and Finstar-Holding LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, an individual, and Finstar-Holding LLC, a Russian limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Alexey Kondratiev, an individual, and <olegvboyko.website>,<br><br>Defendants. | NO. CV-23-01186-PHX-DLR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR STATUTORY DAMAGES** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The sole argument in Defendant Alexey Kondratiev's opposition (the "Opposition") to Plaintiffs Oleg Boyko's and Finstar Holding LLC's Motion for Statutory Damages (the "Motion") is that Plaintiffs are not entitled to any statutory damages. But Plaintiffs' entitlement to statutory damages is not even at issue on this Motion.

Kondratiev has already been found liable to Finstar[1] for cybersquatting under 15 USC § 1125(d)(1), and the Infringing Domain that he registered. *See* ECF 67 at 10. The time for Kondratiev to ask this Court to reconsider its ruling on liability has long passed. L.R. 7.2(g)(2). In any event, 15 U.S.C. § 1117(d) clearly states that "[i]n a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect … to recover, instead of actual damages and profits, an award of statutory damages." Thus, the moment that this Court found Kondratiev liable to Plaintiffs for violating 15 U.S.C. § 1125(d)(1), Plaintiffs became entitled to elect an award of statutory damages. Plaintiffs timely made such an election, and are thus entitled to statutory damages as a matter of law. The only question at issue on this Motion is the amount of statutory damages that should be imposed.

Plaintiffs have demonstrated that an award of the maximum allowable statutory damages is justified due to: (i) the egregiousness of Kondratiev's cybersquatting, which included using Boyko's full name, correctly spelled, in the Infringing Domain, and the malice underlying the false and disparaging content displayed on the website linked to that Domain; (ii) Kondratiev's knowing and intentional use of false contact information designed to obscure and conceal his ownership of, and responsibility for, the Infringing Domain; (iii) the false testimony Kondratiev has given in this action in an effort to conceal his wrongful conduct; (iv) Kondratiev's past abuses of process and vexatious litigation against Boyko; and (v) Kondratiev's ongoing violations of Section 1125(d)(1), even after this Court issued its preliminary injunction order in this action. *See* gen. ECF 72.

---

[1] All capitalized terms herein have the same meaning as in the underlying Motion, unless otherwise indicated. All emphasis herein is added, unless otherwise indicated.

Kondratiev failed to substantively rebut Plaintiffs' showings. Instead, he has used his Opposition as yet another opportunity to attack Mr. Boyko and to try to relitigate Kondratiev's "liability" on the underlying cybersquatting claim, which has already been decided. Rather than engage with Kondratiev's meritless allegations against Boyko, which even Kondratiev previously admitted are "irrelevant" to the claims in this case (*see* ECF 23 at 8:1-3), Plaintiffs have addressed the actual issue before the Court on this Motion – why applicable case law warrants the award of maximum statutory damages in this case, now that Kondratiev's liability has already been established. *See infra*, at §§ III.A-B.

For the foregoing reasons, and for the additional reasons set forth below and in the Motion, Plaintiffs respectfully request that this Court issue an order awarding Plaintiff Finstar the maximum statutory damages of $100,000 against Defendant Kondratiev.

## II. EVIDENTIARY OBJECTIONS TO KONDRATIEV'S OPPOSITION

<u>First</u>, as a threshold matter, Exhibits A-I are entirely irrelevant to the disposition of Plaintiffs' Motion. Kondratiev offers Exhibits A-I in an effort to demonstrate that Plaintiffs are not entitled to statutory damages because the Infringing Website's contents are purportedly true and, therefore, cannot tarnish or disparage the Boyko Mark. (Opp. at 2-9) But **this Court has already found** Kondratiev liable for violating 15 U.S.C. § 1125(d)(1), including **that the Infringing Website was "dedicated to publishing disparaging information about Boyko."** ECF 67 at 9-10. This alone should end the analysis, as "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.[2]

<u>Second</u>, the Declaration of Alexey Kondratiev ("Kondratiev Declaration") contains demonstrably false statements. Specifically, Kondratiev states in his declaration that Exhibits A-F were purportedly "downloaded on May 26, 2025" "from links from [the] website <olegvboyko.website>." Kondratiev Decl., ¶ 2. But this website was not accessible

---

[2] In any event, the truth or falsity of the information on the Infringing Website is irrelevant to the disposition of this motion, as this is an action for cybersquatting, not defamation. Kondratiev conceded as much in his earlier filings. *See, e.g.*, ECF 23 at 8:1-3 [Kondratiev's Response to Motion for Preliminary Injunction] ("the dispute regarding the contents of <olegvboyko.website> is irrelevant, since this legal action is for cybersquatting and not for defamation").

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
Phoenix

2

to the public on May 26, 2025, or at any time after Plaintiffs filed their Motion on May 19, 2025, as the Infringing Website was taken down after it was transferred to Plaintiffs following this Court's entry of summary judgment in Plaintiffs' favor.  *See* Declaration of David Beddingfield, attached as **Exhibit A**, at ¶¶ 4-6 & Ex. 1.  Thus, these exhibits are unauthenticated and fail to satisfy the requirements of Fed. Rules of Evidence 901-903.  Exhibit G is also unauthenticated, and fails to satisfy Fed. R. Evid. 901-903.

Third, Exhibits A-G and I contain out-of-court statements, made by largely unidentified non-parties, offered for their truth. This is inadmissible hearsay without statutory exception. Fed. R. Evid. 801-803. As such, these exhibits are inadmissible for the purpose for which they are being offered.

Lastly, even if the exhibits attached to his declaration were admissible (they are not), Kondratiev blatantly misstates their contents.  For example, Kondratiev falsely claims that Boyko is listed in a Report to Congress as a "potential target for US sanctions."  ECF 72 at 2:27-28.  But the document Kondratiev cites (Exhibit C to his Declaration) actually expressly states that it is "**not** a sanctions list," and that an individuals' inclusion on that list does not "indicate that the US Government has information about the individual's involvement in malign activities."  ECF 72-1, at 12 of 44.

### III.   PLAINTIFFS ARE ENTITLED TO MAXIMUM STATUTORY DAMAGES

**A.   Kondratiev's Liability Is Already Established, and Statutory Damages Do Not Require Any Proof of Injury**

Kondratiev argues that the Motion must be denied because Plaintiffs have not "provide[d] any evidence … that they have suffered any damages."  ECF 72 at 7. But Plaintiffs are not required to prove any "actual" damages to support an award of *statutory* damages.

Section 1117(d) clearly states that "[i]n a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect … to recover, instead of actual damages and profits, an award of statutory damages."  15 U.S.C. § 1117(d).  Thus, the moment that the Court found Kondratiev liable to Plaintiffs for violating 15 U.S.C. § 1125(d)(1), Plaintiffs

became entitled to elect an award of statutory damages. *See, e.g., Yuga Labs, Inc. v. Hickman*, 2023 U.S. Dist. LEXIS 143209, *10-11 (D. Nev. Aug. 16, 2023) ("Plaintiff is entitled to statutory damages since it has succeeded on its cybersquatting claim.").

In any event, it is well settled that "[s]tatutory damages may be imposed even for uninjurious and unprofitable invasions because one of the goals in imposing statutory damages is deterrence." *Las Vegas Sands Corp. v. Mir*, 2016 U.S. Dist. LEXIS 93931, at *18 (D. Nev. Mar. 17, 2016) (quoting *Hakkasan LV, LLC v. Miller*, 2016 U.S. Dist. LEXIS 34649, at *7 (D. Nev. Mar. 17, 2016)); *see also Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (accord). Thus, as a matter of law, statutory damages for cybersquatting do not depend on proof of actual injury.

### B.  Maximum Statutory Damages against Kondratiev Are Warranted.

As explained in the Motion (ECF 70 at 6), in determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), "courts generally consider a number of factors …, including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, … and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings." *Verizon California Inc. v. OnlineNIC, Inc.*, 2009 U.S. Dist. LEXIS 84235, at *8-9 (N.D. Cal. Aug. 25, 2009).

Here, Plaintiffs have demonstrated why each of the above factors supports the imposition of the maximum amount of statutory damages authorized under 15 U.S.C. § 1117(d) – *i.e.*, $100,000 – against Kondratiev. ECF 70 at 7-11. Notably, Kondratiev does not seriously contest any of Plaintiffs' arguments. ECF 72 at 7-9. Instead, Kondratiev attempts to relitigate the Court's findings on summary judgment that "Kondratiev acted with a bad faith intent to profit," including because the Infringing Website was "dedicated to publishing disparaging information about Boyko" and because of "the history of Kondratiev's conflict with and litigation against Plaintiffs." ECF 67 at 9-10.

However, any deadline for Kondratiev to seek reconsideration of this Court's summary judgment order has long passed. And in attempting to now relitigate the merits of

this action (and the actions in Canada), Kondratiev's Opposition actually demonstrates precisely why maximum amount of statutory damages are necessary and appropriate, as a deterrent to Kondratiev's unrelenting vendetta against Boyko and vexatious conduct.

    **1. Kondratiev's Use of Boyko's Correctly-Spelled Name, and Kondratiev's Clear Intent to Disparage and Tarnish the Boyko Mark, Demonstrate the Egregiousness of His Conduct.**

  One of the key factors that courts consider in determining the proper amount of statutory damages to award under 15 U.S.C. § 1117(d), is "the egregiousness or willfulness of the defendant's cybersquatting." *Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9. In the Motion, Plaintiffs set forth several reasons why Kondratiev's cybersquatting was particularly egregious, and why each of those reasons justifies the imposition of the maximum statutory penalty. ECF 70 at 7-8.

  <u>First</u>, Plaintiffs demonstrated that the Infringing Domain consisted entirely of the correct spellings of Boyko's first name, middle initial, and last name – *i.e.*, <olegvboyko.website>, and that courts typically consider **the use of a correct spelling of a protected mark to be a more "egregious" form of cybersquatting**. *See* ECF 70 at 7-8 (citing *Facebook, Inc. v. Banana Ads LLC*, 2013 U.S. Dist. LEXIS 65834, at *44 (N.D. Cal. Apr. 30, 2013), *R. & R. adopted*, 2013 U.S. Dist. LEXIS 203354 (N.D. Cal. June 24, 2013); *Facebook, Inc. v. Onlinenic Inc.*, 2022 U.S. Dist. LEXIS 113060, at *50 (N.D. Cal. Mar. 28, 2022); and *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102 (D. Colo. 2014)).

  In his Opposition, Kondratiev argues that the Infringing Website "does not use the correct spelling of [the] Boyko Mark" because Kondratiev used Boyko's middle initial in the domain name, which is excluded from the Boyko Mark. ECF 72 at 8. In addition to being facetious, that mistakes the law. It is well settled that cybersquatting need not consist solely of the correctly-spelled trademark to implicate this factor. Rather, registering a domain name by incorporating the correctly-spelled infringing mark with other words is evidence of malicious conduct. *See, e.g.*, *Onlinenic Inc.*, 2022 U.S. Dist. LEXIS 113060, at *51 (citing "buy**instagram**fans.com" and "www-**facebook**-pages.com" as examples of "Infringing Domain Names [that] include correct spellings of Plaintiffs' Marks," along with

other words in the domain name, as "evidence of malicious conduct.")

Notably, the focus is on the intent to deceive because "domain names which incorporate the correctly-spelled trademark alongside other correctly-spelled common words are even more malicious . . . because it is indicative of conduct aimed to deceive by promoting legitimacy." *Myron L Co. v. Kilby Doss Inc.*, 2016 U.S. Dist. LEXIS 206467, *14-15 (S.D. Cal. Mar. 28, 2016). Here, the use of the correct spellings of Boyko's first name, middle initial, and last name in the Infringing Domain (i.e., the <olegvboyko.website>), which Infringing Domain fully incorporated the Boyko Mark, was clearly aimed to deceive by promoting the legitimacy of the Infringing Website.

<u>Second</u>, Plaintiffs explained that – consistent with the Court's summary judgment findings of fact (ECF 67, at 10:1-2) – the Infringing Website was "dedicated to publishing disparaging information about Boyko," that was designed to maliciously injure Boyko's business reputation and the Boyko Mark, and noted that in evaluating the proper amount of statutory damages, a defendant's intent and behavior are part of the Court's consideration. ECF 70 at 4, 8 (citing *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102 (D. Colo. 2014)).

In his Opposition, Kondratiev argues that because Plaintiffs have not proved the falsity of each salacious allegation that appears on the Infringing Website, Kondratiev could not have possessed intent to disparage and tarnish the Boyko Mark. ECF 72 at 8:10-18. That is nonsense. This is not a defamation case. The pertinent question on this Motion is whether Kondratiev cybersquatted on the Boyko Mark with the intent to tarnish and disparage Boyko's business reputation and the Boyko Mark – which issue of liability has already been adjudicated by this Court against Kondratiev. *See* ECF 67, at 9-10.[3]

---

[3] In any case, as discussed above, the truth or falsity of the contents of the Infringing Website is irrelevant to the disposition of this Motion. This is because even true statements can be disparaging. *See, e.g.*, *USA Techs., Inc. v. Tirpak*, 2012 U.S. Dist. LEXIS 72318, at *9 (E.D. Pa. May 24, 2012) (explaining that"[t]ruth is not the test" as to "whether … statements constitute 'disparaging' remarks"); *Orchestratehr, Inc. v. Trombetta*, 2015 U.S. Dist. LEXIS 179784, at *25 (N.D. Tx. July 15, 2015) ("[e]ven true disparaging comments could be relevant evidence as to a business disparagement claim").

### 2. Kondratiev's Use of the "Anna Lee" Alias to Conceal His Illegal Actions Warrants the Imposition of Maximum Statutory Damages.

Another key factor that courts consider in determining the proper amount of statutory damage is "the **defendant's use of false contact information to conceal its infringing activities**." *Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9. This Court has already found that the record "evidence demonstrate[s] that Kondratiev is the registrant of the [Infringing] Domain and the Website" and "that 'Anna Lee,' the name associated with the Domain, is Kondratiev's alias." ECF 67 at 7. As explained in the Motion, Kondratiev's use of an alias also substantially increased the costs associated with Plaintiffs' pre-litigation investigative efforts as well as with this litigation, and courts confronted with such behavior have awarded statutory damages at the high end of the spectrum. ECF 70 at 9.

In his Opposition, Kondratiev attempts to relitigate the issue of whether or not he actually used the "Anna Lee" alias. ECF 72 at 8-9. But the time for Kondratiev to ask this Court to reconsider that finding has long passed. *See* L.R. 7.2(g)(2) ("[a]bsent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the Motion."). Importantly, Kondratiev does not challenge the authority cited in the Motion demonstrating that courts confronted with similar concealment efforts have awarded statutory damages at the high end of the spectrum. By failing to challenge this authority, Kondratiev has effectively conceded that **cybersquatting in a clandestine manner by employing an alias supports the imposition of maximum statutory damages**. *Thompson v. Isagenix Int'l, LLC*, 2020 U.S. Dist. LEXIS 50571 at *11 (D. Ariz. Mar. 24, 2020) ("It is a well-settled principle that by failing to address arguments in an opposition, a party effectively concedes a claim.") (citing *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)).

### 3. Kondratiev's Behavior and Conduct in This Action Further Warrant the Imposition of Maximum Statutory Damages.

Another key factor that courts consider in determining the proper amount of statutory damage is the degree to which "behavior by the defendant evidenc[es] an attitude of

contempt towards the court or the proceedings." *Verizon*, 2009 U.S. Dist. LEXIS 84235, at *8-9. In the Motion, Plaintiffs identified several actions taken by Kondratiev in litigation which evidence his attitude of contempt towards courts generally, and these legal proceedings specifically. ECF 70 at 10-11.

<u>First</u>, Plaintiffs put forth evidence that **Kondratiev had repeatedly lied under oath in this action about his use of the "Anna Lee" alias** and his responsibility for the Infringing Website. *See* Motion (ECF 70) at 10 (citing evidence). While Kondratiev baldly denies providing false testimony in the body of his unsworn brief (ECF 72 at 9), he tellingly did not include those denials in his sworn declaration filed in opposition to the Motion (*see gen.* ECF 72-1). As "arguments in briefs are not evidence," *Comstock*, 786 F.3d at 709, the Court should not even consider Kondratiev's unsworn, and self-serving denials.

<u>Second</u>, Plaintiffs put forth evidence of Kondratiev's similarly contemptuous conduct in the Canada Lawsuit, in which the Ontario Court referred to claims that Kondratiev had asserted against Boyko as "**an abuse of process**," and in a separate order, deemed Kondratiev a **vexatious litigant**. ECF 70 at 10 (citing evidence).

In response, Kondratiev blames his lawyer, whom he is purportedly "now suing" for negligence. ECF72, at 9. Ironically, Kondratiev's *pro se* complaint[4] against his lawyer itself serves to illustrate Kondratiev's abuse of the courts to engage in vexatious litigation. Specifically, Kondratiev's *pro se* complaint seeks more than **$140 million** in damages for legal malpractice. ECF72-1, at 42. This is vexatious, considering that the underlying lawsuit in which that malpractice purportedly occurred requested only $10 million in damages. *See* ECF 60-1 at Ex. 8, ¶16 (COE183-84); ECF 60-2 at Ex. 15 (COE265-81).[5]

---

[4] Kondratiev implies that this pro se lawsuit will vindicate his status as a vexatious litigant. Oddly, however, just a few sentence earlier, Kondratiev "attribute[d] the unfavorable rulings" in this litigation "to his inability to secure a US lawyer." ECF 72 at 9.

[5] Kondratiev also argues that the "abuse of process" finding was overruled on appeal, but fails to submit or cite to any evidence to support that contention. *See* ECF 72 at 9. In fact, the Canada appeals court allowed the action to continue as to only one narrow allegation (i.e., one paragraph out of the entire complaint), and did not disturb the Ontario Court's finding of an abuse of process. *See* ECF 60-2 at Ex. 17 (COE 287-89).

<u>Third</u>, Plaintiffs emphasized that even after the issuance of the preliminary injunction in this action, Kondratiev continued to modify and add content to the Infringing Website – all while falsely denying he was the registrant – and provided authority that such conduct strongly implies willfulness and warrants an award of maximum statutory damages. ECF 70 at 10-11. In response, Kondratiev merely states that he "firmly denies any violation of the Preliminary Injunction Order as" purportedly "alleged by Plaintiffs."

As an initial matter, Kondratiev makes this argument only in his brief (ECF 72 at 9), and refused to include it in his sworn declaration (*see gen.* ECF 72-1). Again, "arguments in briefs are not evidence," *Comstock*, 786 F.3d at 709, and the statements in Kondratiev's brief lack any evidentiary value. In any event, Plaintiffs do not contend that Kondratiev violated the Preliminary Injunction Order. Rather, Plaintiffs pointed to the simple fact that Kondratiev brazenly modified and added content to the Infringing Website, **while simultaneously and contemporaneously lying to this Court** about his connection to, and involvement with, the Infringing Website. ECF 70, at 10-11.

In sum, nothing whatsoever in Kondratiev's Opposition does anything to undermine Plaintiffs' showing (ECF 70 at 2-6, 9-11) that throughout this action, and in prior actions involving Plaintiffs, Kondratiev has exhibited a general attitude of contempt for the Court and the ethical obligations associated with court proceedings, and that such conduct justifies the imposition of the maximum allowable statutory penalty of $100,000.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, in lieu of actual damages and lost profits, this Court issue an order awarding Plaintiff Finstar the maximum statutory damages of $100,000, available under 15 U.S.C. § 1117(d), against Defendant Kondratiev for Kondratiev's violations of 15 U.S.C. § 1125(d)(1).

DATED this 9th day of June, 2025.

FENNEMORE CRAIG, P.C.

By: *s/ Amy Abdo*
    Amy Abdo
    Taylor N. Burgoon

LOEB & LOEB LLP

By: *s/ Oleg Stolyar*
    Oleg Stolyar

*Attorneys for Plaintiffs Oleg Boyko and Finstar-Holding LLC*

# EXHIBIT A

FENNEMORE CRAIG, P.C.
Amy Abdo (No. 016346)
Taylor N. Burgoon (No. 033970)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: amy@fennemorelaw.com
Email: tburgoon@fennemorelaw.com

LOEB & LOEB LLP
Oleg Stolyar (CA SBN 229265–Pro Hac Vice)
astolyar@loeb.com
Jeremy Margolis (IL SBN 1763865–Pro Hac Vice)
jmargolis@loeb.com
David J. Beddingfield (CA SBN 308491–Pro Hac Vice)
dbeddingfield@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000

*Attorneys for Plaintiffs Oleg Boyko and Finstar-Holding LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Oleg Boyko, an individual, and Finstar-Holding LLC, a Russian limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Alexey Kondratiev, an individual, and <olegvboyko.website>,<br><br>Defendants. | NO. CV-23-01186-PHX-DLR<br><br>**DECLARATION OF DAVID J. BEDDINGFIELD IN SUPPORT OF (1) PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STATUTORY DAMAGES, AND (2) PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION** |

# DECLARATION OF DAVID BEDDINGFIELD

I, David J. Beddingfield, hereby declare and swear as follows:

1.  I am licensed to practice law in the States of California and New York, and am a partner at the law firm of Loeb & Loeb LLP ("Loeb"), attorneys of record for Plaintiffs Oleg Boyko ("Boyko") and Finstar Holding LLC ("Finstar," and together with Boyko, "Plaintiffs") in the above-captioned action. I make this Declaration in support of (i) Plaintiffs' Reply in support of Plaintiffs' Motion for Statutory Damages; and (ii) Plaintiffs' Reply in support of Plaintiffs' Motion for Permanent Injunction. I have personal knowledge of the facts set forth herein and, if called upon as a witness, I could and would testify competently thereto under oath.

2.  On March 13, 2025, this Court entered an order that, *inter alia*, required Defendant Alexey Kondratiev ("Kondratiev") to transfer the domain, <olegvboyko.website> (the "Infringing Domain" or "Domain"), to Finstar. *See* ECF 67 at 10.

3.  I, on behalf of Plaintiffs, then participated in communications with Namecheap, Inc. ("Namecheap"), as the registrar of the Domain, concerning the effectuation of the transfer of ownership of the Infringing Domain to Finstar. On or about April 9, 2025, the ownership of the Infringing Domain was successfully transferred to Finstar.

4.  On or about April 14, 2025, the website located at the Infringing Domain was taken down and was no longer accessible to the public. On the same day, I personally verified that the website located at the Infringing Domain was no longer accessible to the public by attempting to visit the website in several different web browsers. Each time I attempted to visit the website, the page displayed stated that "This site can't be reached".

5.  Between April 14, 2025, and the present, I repeatedly confirmed that the website located at the Infringing Domain was unavailable to the public, by attempting to visit the website several times each week. Each time I attempted to visit the website, I received only a page that stated "This site can't be reached". A true and correct copy of the printout from my most recent attempt to visit the website located at the Infringing Domain

is attached hereto as **Exhibit 1**.

      6.    To my knowledge, no aspect of the website located at the Infringing Domain has been publicly accessible since at least April 14, 2025.

      I declare under penalty of perjury under the laws of the United States and the State of Arizona that the foregoing is true and correct.

      Executed on June 9, 2025, at Los Angeles, California.

                                      s/ *David J. Beddingfield*
                                      David J. Beddingfield

# EXHIBIT 1



## This site can't be reached

Check if there is a typo in olegvboyko.website.

If spelling is correct, try running Windows Network Diagnostics.

DNS_PROBE_FINISHED_NXDOMAIN

Reload